# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

TENNESSEE STATE CONFERENCE )
OF THE N.A.A.C.P., DEMOCRACY )
NASHVILLE-DEMOCRATIC )
COMMUNITIES, THE EQUITY )
ALLIANCE, and ANDREW )
GOODMAN FOUNDATION, )
                                )    **Case No. 3:19-CV-00365**
    **Plaintiffs,**       )    **Judge Aleta A. Trauger**
                                )
**v.**                                  )
                                )
TRE HARGETT, in his official capacity )
as Secretary of State of the State of )
Tennessee, MARK GOINS, in his )
official capacity as Coordinator of )
Elections for the State of Tennessee, )
HERBERT SLATERY III, in his official )
Capacity as Attorney General of the State )
of Tennessee, the STATE ELECTION )
COMMISSION, and DONNA )
BARRETT, JUDY BLACKBURN, )
GREG DUCKETT, MIKE )
MCDONALD, JIMMY WALLACE, )
TOM WHEELER, and KENT )
YOUNCE, in their official capacities as )
members of the State Election )
Commission, )
                                )
    **Defendants.**      )

---

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS

---

      The Attorney General, on behalf of the above-captioned defendants, in their official

capacities only, moves this Court to dismiss Plaintiffs' Complaint (DE 1) pursuant to Fed. R. Civ.

P. 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which

relief can be granted.  Plaintiffs challenge certain provisions of Public Chapter 250 (the "Act") on

1

grounds that the Act allegedly violates the First and Fourteenth Amendments to the United States Constitution.  As set forth below, this matter should be dismissed because Plaintiffs have failed to demonstrate ripeness and standing to challenge the Act; the Complaint is thus non-justiciable and deprives this Court of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Further, Plaintiffs' challenges fail as a matter of law as the Act neither violates the United States Constitution nor is unconstitutionally vague.  Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Except where noted, the following recitation of facts is taken from Plaintiffs' Complaint solely for the purposes of this Motion to Dismiss.  Facts adduced from Plaintiffs' Complaint are not otherwise admitted.  This motion to dismiss will confine its scope to the plain language of Public Chapter 250 and not the Complaint's characterizations of it.

On May 2, 2019, Governor Bill Lee signed the Act into law.  As pertinent to the allegations of the Complaint, the Act provides for the creation of three new sections in Title 2, Chapter 9 of the Tennessee Code.

The first new section, Tenn. Code Ann. § 2-2-142, provides:

> (a) A person or organization who has not been designated by the county election commission under § 2-2-111 and who conducts a supplemental voter registration drive in which the person or organization attempts to collect voter registration applications of one hundred (100) or more people must comply with the following conditions: (1) Prior to conducting a voter registration drive, the person or agent of an organization shall:

> (A) Provide the coordinator of elections with the name, address, and contact phone number of the person conducting the voter registration drive or the names, addresses, and contact phone numbers of the officers of the organization conducting the voter registration drive;

> (B) Provide the names of the county or counties in which the voter registration drives will be held;

2

(C) Complete training, which is administered by the coordinator of elections, on the laws and procedures governing the voter registration process;

(D) File a sworn statement stating that the person or organization shall obey all state laws and procedures regarding the registration of voters; and

(E) Ensure that individuals, whether volunteer or paid, who conduct voter registration drives for an organization have completed the training administered by the coordinator of elections; and

(2) The person or organization shall deliver or mail completed voter registration forms within ten (10) days of the date of the voter registration drive; provided, that if the date of the voter registration drive is within ten (10) days of the voter registration deadline, the completed forms must be delivered or mailed no later than the voter registration deadline.

(b) Any person or organization conducting a voter registration drive is prohibited from copying, photographing, or in any way retaining the voter information and data collected on the voter registration application, unless the applicant consents. However, the social security number provided on the voter registration application is confidential and must not be retained by any person other than election officials in their official capacity.

(c) No person or organization shall employ or compensate any person, nor shall any person receive any wages or compensation for registering voters based on the number of voters registered. Nothing in this section prohibits a person from being paid on an hourly or salaried basis to register voters.

(d) No person or organization shall establish quotas or a minimum number of completed voter registration forms to be collected by individuals conducting a voter registration drive.

(e) The coordinator of elections may adopt policies or procedures to effectuate the provisions of this section, including, but not limited to, a form on which the required information may be provided and certified by interested parties. The form adopted by the coordinator of elections may be provided electronically. The coordinator of elections shall, at a minimum, offer the training online and shall not charge a fee for the training.

3

(f) Any person who intentionally or knowingly violates any provision of this section commits a Class A misdemeanor and each violation constitutes a separate offense.

(g) This section does not apply to individuals who are not paid to collect voter registration applications or to organizations that are not paid to collect voter registration applications and that use only unpaid volunteers to collect voter registration applications.

Pub. Ch. 250, § 1.

The second new section, Tenn. Code Ann. § 2-2-143, provides:

(a) If any person or organization conducts voter registration drives under § 2-2-142 and, within a calendar year, files one hundred (100) or more incomplete voter registration applications with one (1) or more county election commissions, the person or organization is subject to a civil penalty under the procedures of this section.

(b) For purposes of this section, "incomplete voter registration application" means any application that lacks the applicant's name, residential address, date of birth, declaration of eligibility, or signature. A person or organization who collects an application that only contains a name or initial is not required to file the application with the election commission.

(c)

(1) The state election commission may impose a civil penalty for a violation of this section as provided in this subsection (c).

(2) The county election commission shall file notice with the state election commission, along with a copy of each voter registration application deemed to be incomplete and identifying information about the person or organization that filed the incomplete applications.

(3) The state election commission shall review each voter registration application presented by the county election commission and shall make a finding on the number of incomplete forms filed. Based on the finding, the state election commission may impose civil penalties for Class 1 and Class 2 offenses. The state election commission may combine the number of incomplete forms filed by a person or organization in multiple counties when determining the total number of incomplete forms filed.

4

(4) As used in this section

(A) "Class 1 offense" means the filing of one hundred (100) to five hundred (500) incomplete voter registration applications. A Class 1 offense is punishable by a civil penalty of one hundred fifty dollars ($150), up to a maximum of two thousand dollars ($2,000), in each county where the violation occurred; and

(B) "Class 2 offense" means the filing of more than five hundred (500) incomplete voter registration applications. A Class 2 offense is punishable by a civil penalty of not more than ten thousand dollars ($10,000) in each county where the violation occurred.

(5) For any offense, the state election commission shall send, by return mail, receipt requested, an assessment letter to the person or organization in a form sufficient to advise the person or organization of the factual basis of the violation, the maximum penalty and the date a response to the letter must be filed. Failure to timely claim an assessment letter sent by return mail, receipt requested, constitutes acceptance of the assessment letter.

(6) To request a waiver, reduction, or to in any way contest a penalty imposed by the state election commission, a person or organization shall file a petition with the state election commission. Such petition may be considered as a contested case proceeding under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.

(d) Penalties imposed under this section by the state election commission must be deposited into the general fund of the county or counties in which the violation occurred. When there are multiple counties involved, the penalty money must be divided pro rata based on the number of incomplete registration applications submitted in each county.

(e) This section does not apply to individuals who are not paid to collect voter registration applications or to organizations that are not paid to collect voter registration applications and that use only unpaid volunteers to collect voter registration applications.

(f) The state election commission may promulgate rules and procedures to implement the provisions of this section.

Pub. Ch. 250, § 2.

The third new section, Tenn. Code Ann. § 2-19-145, provides as follows:

5

(a)

(1) A public communication regarding voter registration status made by a political committee or organization must display a disclaimer that such communication is not made in conjunction with or authorized by the secretary of state.

(2) As used in this subsection (a), "public communication" includes communications made using newspapers or magazines, mass mailings, phone bank or text messages, electronic mail systems, or websites.

(b)

(1) A person or organization that establishes a website for voter registration purposes must display on such website a disclaimer that the voter registration is not made in conjunction with or authorized by the secretary of state.

(2) A person or organization that establishes a voter registration website and captures or collects the voter's information or data must disclose on the website the person's or organization's name and the purpose for which the voter information is captured or collected.

(3) Voter registration includes any method by which a voter may attempt to register to vote or change information on an existing voter registration.

(c)

(1) A person or organization that establishes a voter lookup website must display on such website a disclaimer that the voter lookup is not made in conjunction with or authorized by the secretary of state.

(2) A person or organization that establishes a voter lookup website and captures or collects the voter's information or data must disclose on the website the person's or organization's name and the purpose for which the voter information is captured or collected.

(3) Voter lookup includes any method by which a voter may check the voter's registration status or polling location.

(d) The disclaimer must be clear and conspicuous and prominently placed. A disclaimer is not clear and conspicuous if it is difficult to read or hear, or if its placement can be easily overlooked.

6

(e) Any person who intentionally and knowingly violates any provision of this section commits a Class A misdemeanor and each violation constitutes a separate offense.

(f) This section does not apply to a county election commission website.

Pub. Ch. 250, § 6.

Each of these new sections will take effect on October 1, 2019. Pub. Ch. 250, § 9.

On May 2, 2019, Plaintiffs filed their Complaint seeking a declaration that provisions of the Act violate the First and Fourteenth Amendments and an injunction prohibiting enforcement of the Act. (DE 1, p. 37-38).

## ARGUMENT

Actions are subject to dismissal when the court lacks subject-matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1). When a defendant challenges the court's exercise of subject-matter jurisdiction, the plaintiff bears the burden of establishing it. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Actions are also subject to dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). However, this deference to the allegations in the complaint is not without limits. First, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Second, a plaintiff must plead facts that make his or her right to relief more than merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Simply pleading facts

7

that are *consistent* with a defendant's liability or that permit the court to *infer* misconduct is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Generally, the Court is limited to facts contained in the pleadings when deciding a motion to dismiss. Fed. R. Civ. P. 12(d). However, a court may properly consider documents that are referred to in a complaint that are central to the plaintiff's claims. *Armengau v. Cline*, 7 Fed. Appx. 336, 343-44 (6th Cir. 2001). Additionally, a court may consider public records and matters of which the court may take judicial notice without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *Id.*; *Jones v. City of Cincinnati,* 521 F.3d 555, 562 (6th Cir. 2008).

## I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFFS' COMPLAINT.

The threshold issue in every case filed in the federal courts is whether the court has jurisdiction to hear the case.  *Evans v. Allen*, No. 3:13-CV-480-TAV-CCS, 2014 WL 585392, at *1 (E.D. Tenn. Feb. 14, 2014).  Under Article III of the United States Constitution, federal courts have jurisdiction only over those claims which present actual "cases and controversies"—those which are "capable of resolution through the judicial process," or "justiciable." *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Standing is "an essential and unchanging part" of a federal court's Article III jurisdiction.  *Hooker v. Sasser*, 893 F.Supp. 764, 766 (M.D. Tenn. 1995) (quoting *Lujan*, 504 U.S. at 560).  Ripeness, also drawn from Article III limitations on judicial power, is another prerequisite for justiciability.  *Nat'l Park Hospitatlity Assn. v. Dep't of the* Interior, 538 U.S. 803, 807-808 (2003).

As Plaintiffs have failed to demonstrate standing and ripeness, this Court lacks jurisdiction.

### A. Plaintiffs Have Failed to Demonstrate Standing.

The Supreme Court has enumerated three elements of "the irreducible constitutional minimum of standing":

> First, and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or hypothetical." Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998) (internal citations omitted). Plaintiffs bear the burden of demonstrating standing and must plead each of these components with specificity. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

Plaintiffs' lack of standing stems from the Complaint's failure to demonstrate an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560). An injury in fact must be "certainly impending," not merely possible at some point in the future. *Whitmore*, 495 U.S. at 158. Plaintiffs whose fears are "imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 (1971).

Here, Plaintiffs seek relief from a law which has yet to take effect. Pub. Ch. 250, § 9. The Complaint fails to name any individual or organization that has ever been penalized under the Act or any imminent threat by Defendants of future enforcement against them. The Act bestows upon the State Election Commission the power to use civil penalties for enforcement within its discretion. *See* Pub. Ch. 250 § 2 (future Tenn. Code Ann. § 2-2-143(c) ("may impose a civil penalty")). As the State Election Commission has not yet promulgated rules governing

9

enforcement to indicate how it will exercise its statutorily-granted discretion, Plaintiffs cannot identify an imminent threat of civil penalty justifying pre-enforcement relief. Likewise, enforcement of the disclaimer provisions of Section 6 of Public Chapter 250 are not left to the discretion of Defendants, but to Tennessee's district attorneys. Pub. Ch. 250, § 6 (future Tenn. Code Ann. § 2-19-145(e) (violation of the section is a misdemeanor offense). And there is no indication in Plaintiffs' Complaint as to how the district attorneys will use their broad prosecutorial discretion. *See Dearborne v. State*, 575 S.W.2d 259, 262 (Tenn. 1978) (quoting *Pace v. State*, 566 S.W.2d 861, 866 (Tenn. 1978) (Henry, C.J., concurring)).

Additionally, while Plaintiffs have discussed the activities in which they engage that they fear might make them subject to some of the Act's provisions, Plaintiffs have not alleged that they intend to or will in fact violate these provisions. It is "not require[d] [for] a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat" of state action. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129 (2007). But a plaintiff attempting to challenge a law pre-enforcement must demonstrate that enforcement is "sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). To do so, the plaintiff must allege an intent "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). Here, Plaintiffs have not alleged that they intend to refuse to train workers, "intentionally or knowingly" turn in over 100 incomplete forms, or refuse to use disclaimers, nor have they alleged that it is inevitable that they will run afoul of these provisions by mistake. Consequently, Plaintiffs have not established an injury-in-fact sufficient to bestow them with standing and their claims should be dismissed.

Plaintiffs have not alleged what enforcement actions the Defendants may take, nor have they illuminated whether they have or will engage in actions that could give rise to enforcement. They have failed to describe an imminent harm, and thus have not presented the Court with an injury in fact sufficient to render this case justiciable. By failing to do so, Plaintiffs have deprived this Court of jurisdiction. The Complaint should be dismissed.

**B. This Matter is Not Ripe for Review**

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993)). Ripeness "prevent[s] the courts. . . from entangling themselves in abstract disagreements" and protects against "judicial interference until a[] . . .decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). A claim is not ripe where "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted).

In assessing the ripeness of a case, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott*, 387 U.S. at 149. Here, the issue is not fit for a judicial decision because Plaintiffs' claims are based on contingent future events that may never occur. *See Texas*, 523 U.S. 296, 300. The Act has never been enforced because it has yet to even take effect. Rulemaking necessary to implement the Act has not occurred yet. None of the Defendants have indicated how they will utilize their discretion in enforcement. Plaintiffs' Complaint does not indicate that they will perform an act that could lead to enforcement. *See National Rifle Ass'n of America v. Magaw*, 132 F. 3d 272, 284

(6th Cir. 1997) (ripeness requires an allegation of intention to refuse to comply with the challenged enactment).

Plaintiffs are asking this Court to make a great many assumptions. But where a court "has no idea whether or when" a penalty will be ordered "the issue is not fit for adjudication." *Id.* (quoting *Toilet Goods Assn., Inc. v. Gardner*, 387 U.S. 158, 163 (1967)). It is too early for this Court to intervene as "the operation of [a] statute is better grasped when viewed in light of a particular application," and "[d]etermination of the scope. . .of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Id.* (quoting *Longshoremen v. Boyd*, 347 U.S. 222, 224 (1954)). Postponing a decision in this case "until a more concrete controversy arises, also has the advantage of permitting the state courts further opportunity to construe" the statute's provisions. *Id.* (quoting *Renne v. Geary*, 501 U.S. 312, 323 (1991)). It would also give the opportunity for the promulgation of rules that would further detail implementation of the process.

Given that Plaintiffs' Complaint does little more than identify the Plaintiffs and characterize the Act, they have failed to demonstrate ripeness and have deprived this Court of jurisdiction. The Complaint should be dismissed..

## II.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

### A.     Count 1-Vagueness.

For their first count, Plaintiffs strain to divest themselves of their ordinary understanding of language in order to argue that they cannot comprehend several parts of the Act. For example, Plaintiffs cannot parse "individuals who are not paid to collect voter registration applications" and "organizations that are not paid to collect voter registration applications and that use only unpaid volunteers to collect voter registration applications." (DE 1, ¶ 64). They also allegedly cannot

comprehend the words "incomplete" and "lacking," (DE 1, ¶ 67), even though "incomplete voter registration application" is a defined term and the word "lacking" appears nowhere in the Act. *See* Pub. Ch. 250, § 2 (future Tenn. Code Ann. § 2-2-143).

Plaintiffs also cannot apparently understand:

- The sentence "A person or organization who collects an application that only contains a name or initial is not required to file the application with the election commission." (DE 1, ¶ 68)

- The word "complete" when compared to its opposite in the defined term "incomplete voter registration application." (DE 1, ¶ 69).

- The phrase "public communication regarding voter registration status." (DE 1, ¶ 71)

- The phrase "public communication" even though it is defined by the Act. (DE 1, ¶71)

- The phrase "regarding voter registration status." (DE 1, ¶ 71).

- And finally, the word "includes." (DE 1, ¶ 72).

Despite the relatively straightforward vocabulary chosen here by the General Assembly (to be made even easier to digest with future rulemaking once the law becomes effective), Plaintiffs contend that this language is vague—and unconstitutionally so.

To succeed on a vagueness challenge, Plaintiffs must demonstrate either that the Act (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"; or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Johnson v. United States*, 135 S.Ct. 2551, 2566 (2015). But courts should not go so far as to require "perfect clarity and precise guidance," *Holder v. Humanitarian Law Project*,

561 U.S. 1, 19 (2010), because laws marked by "flexibility and reasonable breadth, rather than meticulous specificity" are not vague. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 246 (6th Cir. 2018). "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99. A statute will be struck down as facially vague only if the plaintiff has "demonstrate[d] that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates*, 455 U.S. at 497. Furthermore, a litigant raising a vagueness challenge must show that the statute in question is vague as applied to his own conduct, without regard to its potentially vague application in other circumstances. *U.S. v. McKinnon Bridge Co., Inc*. 514 F.Supp. 546, 548 (M.D. Tenn. 1981) (citing *Parker v. Levy*, 417 U.S. 733, 755-56 (1974); L. Tribe, *American Constitutional Law*s 12-29 (1978)).

It is abundantly clear what each of the challenged terms mean. The language is neither complex nor confusing, and is either defined in *Black's Law Dictionary* or by the Act itself. And while Plaintiffs can argue hypotheticals, that is not constitutionally sufficient: almost all statutes are "susceptible to clever hypotheticals testing its reach." *Platt*, 894 F.3d 235 at 251. It is incomprehensible how Plaintiffs can use the word "includes" fifteen times in their Complaint and yet not understand its meaning within the Act.

If Plaintiffs require further assistance to cure their misapprhension, Tennessee can provide it; Plaintiffs can avail themselves of upcoming training, Pub. Ch. 250, § 1, or participate in the rulemaking process, Pub. Ch. 250, § 2. Based upon a plain reading of the Act, without improperly

isolating terms, Plaintiffs have failed to adequately allege the Act is vague as applied to their own conduct, let alone potentially vague in other circumstances. *McKinnon Bridge Co., Inc*. 514 F.Supp. 546, 548 (M.D. ten. 1981). Plaintiffs' claims of unconstitutional vagueness should be dismissed.

### B.    Count 2-1st Amendment Rights for Paid Workers and Paying Organizations.

In count 2, Plaintiffs complain that they will be subject to burdensome pre-registration and trainings that violate their "First Amendment rights of paid voter registration workers and the organizations, such as Plaintiffs, with whom they are affiliated." (DE 1, ¶ 78).

First, Plaintiffs do not enjoy standing to assert the rights of paid voter registration workers. They are not individual workers, but organizations. (DE 1, ¶ 18-25). Parties can only assert their own legal rights, so Plaintiffs again lack standing to argue as to the voter registration workers. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

Second, Plaintiffs do not identify the First Amendment right they claim the Act allegedly infringes. The First Amendment contains a number of distinct fundamental rights, and Defendants should not be required to guess which one applies or properly answer whether the Act violates an unidentified right. Absent identification of the right, Defendants cannot assume the appropriate constitutional standard and this Court could not, without great assumption, begin to analyze the constitutional claims. Thus this count fails to satisfy the standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (requiring that the pleading contain more than labels and conclusions and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

15

Regardless, the First Amendment does not prohibit differentiating between groups, nor does it require a rational basis for enactments. This count should therefore be dismissed.

### C.      Count 3-Free Speech Clause.

Plaintiffs in this count argue that the disclaimer that will be required by future-Tenn. Code Ann. § 2-19-145 (Pub. Ch. 250, § 6) violates the Free Speech Clause of the First Amendment. (DE 1, ¶ 79-84). They argue that strict scrutiny is the appropriate constitutional test. (DE 1, ¶ 81). They are wrong on both counts.

First, strict scrutiny is the incorrect standard here because the disclosure required by the Act is not opinion speech but factual, commercial speech. Our Constitution differentiates between requiring a person or organization to affirmatively state a specific opinion and requiring a person or organization to state a fact. *Discount Tobacco City & Lottery, Inc. v, U.S.*, 674 F.3d 509, 554 (6th Cir. 2012) (contrasting compelled speech under *Wooley v. Maynard*, 430 U.S. 705 (1977) with commercial-speech under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985)). Our constitutional also distinguishes between laws that restrict speech and laws that require disclosures. *Id.* at 509 (comparing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980) to *Zauderer*, 471 U.S. 626).

Here, the Act does not restrict speech. It merely requires that public communications regarding voter registration status and voter registration websites display a disclaimer that informs the viewer that the website/communication is not affiliated with or authorized by the Secretary of State. Pub. Ch. 250, § 6. This information is plainly factual, and does not hinder the speaker from stating opinion or otherwise engaging in free speech. Under the Sixth Circuit's precedents, this is not considered compelled speech but commercial speech; the appropriate test is thus rational-basis

16

review. *See Discount Tobacco*, 674 F.3d at 559 (factual and accurate disclosures require rational-basis review under *Zauderer*).

The disclosure requirement certainly has a rational basis in law. Under rational-basis review, a law is presumed constitutional, and "[t]he burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotations omitted); *see also Walker v. Bain*, 257 F.3d 660, 668 (6th Cir. 2001) (stating that a statute is subject to a "strong presumption of validity" under rational-basis review and will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis.").

A court conducting a rational-basis review does not sit "as a super legislature to judge the wisdom or desirability of legislative policy determinations" but asks only whether there is some conceivable rational basis for the challenged statute. *Heller,* 509 U.S. at 319. Under rational-basis review, it is "'constitutionally irrelevant [what] reasoning in fact underlays the legislative decision.'" *R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). In enacting the Act, the General Assembly had "absolutely no obligation to select the scheme" that a court might later conclude was best. *Nat'l R.R. Passenger Corp. v. A.T. & S.F.R. Co.*, 470 U.S. 451, 477 (1985). *See McGowan v. Maryland*, 366 U.S. 420, 425-426 (1961) ("State legislatures are presumed to have acted within their constitutional power despite the fact that in practice, their laws result in some inequality."). And Tennessee "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

Again, a court does not review a statute's wisdom or desirability but considers only whether it has a rational basis. To conclude otherwise is to impose one's own view of what a State *ought* to do. *See Bruning*, 455 F.3d at 867-68 ("Whatever our personal views regarding this political and sociological debate, we cannot conclude that the State's justification 'lacks a rational relationship to legitimate state interest.'") (internal quotations omitted).

Here, the disclosure is designed to limit the risk of disenfranchisement by voters who could mistakenly believe that by completing a voter registration form with a third-party organization they are all set to vote in Tennessee. For example, a qualified voter must register at least 30 days prior to an election. The election commission will process any voter registration form that has been postmarked at least thirty days before an election. Tenn. Code Ann. § 2-2-109. But what if a Tennessee prospective voter waits until the last day to register and mails a form, not to the election commission, but to a third-party voter registration organization misapprehending that the organization is not part of the secretary of state? Or if a third-party voter registration organization creates an unofficial voter lookup that prospective voters rely upon to see if they are eligible to vote even though there might be errors? Tennessee citizens may be disenfranchised.

That outcome is unconscionable. And the disclosure is designed to safeguard against such a situation by ensuring that a prospective voter does not rely upon a voter registration organization by believing that it is synonymous with the election commission and the secretary of state.

Avoiding disenfranchisement of Tennessee voters is clearly a legitimate state interest, and the disclosure is rationally related to that outcome. This count should be dismissed as a matter of law.

18

### D. Count 4-Fundamental Right to Vote.

Plaintiffs lastly argue that the Act violates the First Amendment by restricting the exercise of the fundamental right to vote. (DE 1, ¶ 85-93).

While the right to vote is fundamental, Plaintiffs have no right to vote. They are not individual citizens, but organizations. (DE 1, ¶ 18-25). As only citizens enjoy the constitutionally protected right to vote, *see Reynolds v. Sims*, 377 U.S. 533, 567-68 (1964), Plaintiffs again lack standing to raise this argument. *See Johnson v. Bredesen*, No. 3:07-0372, 2007 WL 1387330 at * 1 (M.D. Tenn. May 8, 2007) (finding that since non-profit organization may not exercise a right to vote in any election, organization has no standing to assert the loss of a right to vote if injunction is not granted); *Warth*, 422 U.S. at 498 (a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

Moreover, Plaintiffs do not even define the First Amendment rights they claim are deprived by the Act. They characterize what the law does, and argue that it violates "the exercise of First Amendment rights in connection with the fundamental right to vote," (DE 1, ¶ 93), but do not attempt to define what right under the First Amendment is infringed. The First Amendment contains a number of distinct fundamental rights, and Defendants cannot guess which one applies or properly answer whether the Act violates an unidentified right. Thus this count also fails to satisfy the standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (requiring that the pleading contain more than labels and conclusions and must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This count should therefore be dismissed.

## CONCLUSION

Plaintiffs clearly disagree with the policy expressed by the Act. Having lost the legislative battle, they now appeal to this Court to intercede and overrule the will of the Tennessee General Assembly. But federal courts may not do so unless the challenged enactment fails to satisfy the minimum constitutional requirements. Even if Plaintiffs could remedy standing and ripeness to present this Court with a justiciable case, the Act meets the constitutional minimums and does not violate the First and Fourteenth Amendments. Accordingly, Plaintiffs' Complaint should be dismissed.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

JANET M. KLEINFELTER
Deputy Attorney General

/s/Alexander S. Rieger
ALEXANDER S. RIEGER
KELLEY. L. GROOVER
Assistant Attorneys General
Public Interest Division
War Memorial Bldg, 3rd Floor
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
alex.rieger@ag.tn.gov

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing documents have been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

TAYLOR A. CATES
BURCH, PORTER, & JOHNSON, PLLC
130 N. Court Avenue
Memphis, TN 38103
(901) 524-5165
tacates@bpjlaw.com
wirvine@bpjlaw.com

JON GREENBAUM
EZRA D. ROSENBERG
JULIE HOUK
POOJA CHAUDHURI
LAWYERS'COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

IRA M. FEINBERG
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3509
ira.feinberg@hoganlovells.com

ALLISON M. RYAN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5600
allison.holt@hoganlovells.com

YAEL BROMBERG
BROMBERG LAW LLC
The Andrew Goodman Foundation
10 Mountainview Road
Upper Saddle River, NJ 07458

(202) 995-1808
yaelbromberglaw@gmail.com

DANIEL AYOADE YOON, BPR No. 028798
2004 8th Ave S
Nashville, TN 37204
(615) 541-5141
danielayoadeyoon@gmail.com

on this 3rd day of June, 2019.

/s/Alexander S. Rieger
ALEXANDER S. RIEGER
Assistant Attorney General