**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

TENNESSEE STATE CONFERENCE OF
THE N.A.A.C.P., DEMOCRACY
NASHVILLE-DEMOCRATIC
COMMUNITIES, THE EQUITY ALLIANCE,
and THE ANDREW GOODMAN
FOUNDATION,

          Plaintiffs,

v.

TRE HARGETT, in his official capacity as
Secretary of State of the State of Tennessee,
MARK GOINS, in his official capacity as
Coordinator of Elections for the State of
Tennessee, HERBERT SLATERY III, in his
official capacity as Attorney General of the
State of Tennessee, the STATE ELECTION
COMMISSION, and DONNA BARRETT,
JUDY BLACKBURN, GREG DUCKETT,
MIKE MCDONALD, JIMMY WALLACE,
TOM WHEELER, and KENT YOUNCE, in
their official capacities as members of the State
Election Commission,

          Defendants.

Case No. 3:19-cv-00365
Judge Aleta A. Trauger

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

I.     THE ALLEGATIONS OF THE COMPLAINT ................................................. 1

II.    THE GOVERNING LEGAL STANDARDS ..................................................... 5

III.   PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS TO ESTABLISH STANDING AND RIPENESS. ................................................. 6

      A.    The Complaint Adequately Pleads the Basis for Standing. ..................... 6

      B.    Plaintiffs' Challenges to the Law Are Ripe for Review. ....................... 13

IV.   PLAINTIFFS' CLAIMS STATE VALID CAUSES OF ACTION. ................. 15

      A.    Count I States a Valid Void-for-Vagueness Claim. ............................... 15

      B.    Count II States a Valid Cause of Action for Alleged Violation of Plaintiffs' First and Fourteenth Amendment Rights. .............................. 20

      C.    Count III States a Valid Cause of Action that the State-Mandated Disclaimer Is Unconstitutional. .............................................................. 23

      D.    Count IV Alleges a Valid Claim that the Law Impermissibly Burdens Plaintiffs' First and Fourteenth Amendment Rights to Free Speech and Association. .......................................................................................... 27

CONCLUSION ................................................................................................................ 30

CERTIFICATE OF SERVICE ........................................................................................ 33

Case 3:19-cv-00365   Document 31   Filed 06/20/19   Page 2 of 40 PageID #: 180

# TABLE OF AUTHORITIES

**Page(s)**

## CASES:

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)...................................................................................22, 27, 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................5

*Ass'n of Cmty. Orgs. for Reform Now v. Cox*,
No. 1:06-CV-1891-JTC, 2006 WL 6866680 (N.D. Ga. Sept. 28, 2006)................27

*Babbitt v. United Farm Workers Nat. Union*,
442 U.S. 289 (1979)............................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................5, 27

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)..............................................................................................25

*Brandywine, Inc. v. City of Richmond, Ky.*,
359 F.3d 830 (6th Cir. 2004) ..............................................................................17

*Buckley v. Am. Constitutional Law Found.*,
525 U.S. 182 (1999)............................................................................................10

*Burdick v. Takushi*,
504 U.S. 428 (1992).................................................................................22, 27, 29

*Cali. Pacific Bank v. Fed. Deposit Ins. Corp.*,
885 F.3d 560 (9th Cir. 2018) ..............................................................................12

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980)............................................................................................25

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)............................................................................................25

*City of Chicago v. Morales*,
527 U.S. 41 (1999)..............................................................................................16

*Columbia Nat. Res., Inc. v. Tatum*,
58 F.3d 1101 (6th Cir. 1995) ..............................................................................16

Case 3:19-cv-00365   Document 31   Filed 06/20/19   Page 3 of 40 PageID #: 181

*Davis v. Mich. Dep't of Treasury*,
    489 U.S. 803 (1989)...............................................................................................18

*Doe v. Haslam*,
    Nos. 3:16-CV-02862, 3:17-CV-00264, 2017 WL 5187117 (M.D. Tenn. Nov.
    9, 2017) ...................................................................................................................19

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)...............................................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000).................................................................................................6

*Fritz v. Charter Twp. of Comstock*,
    592 F.3d 718 (6th Cir. 2010) ...................................................................................5

*Garner v. City of Cuyahoga Falls*,
    311 F. App'x 896 (6th Cir. 2009) .............................................................................6

*Georgia v. Pruitt*,
    326 F. Supp. 3d 1356 (S.D. Ga. 2018)...................................................................14

*Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*,
    56 F.3d 710 (6th Cir. 1995) ...................................................................................21

*Green Party of Tenn. v. Hargett*,
    767 F.3d 533 (6th Cir. 2014) ...................................................................................8

*Harper v. Va. State Bd. of Elections*,
    383 U.S. 663 (1966)...............................................................................................28

*Hill v. Snyder*,
    878 F.3d 193 (6th Cir. 2017) .................................................................................13

*Hindel v. Husted*,
    875 F.3d 344 (6th Cir. 2017) .................................................................................29

*James v. United States*,
    550 U.S. 192 (2007)...............................................................................................18

*Johnson v. United States*,
    135 S. Ct. 2551 (2015)....................................................................................17, 18

*Kolender v. Lawson*,
    461 U.S. 352 (1983)...............................................................................................16

*Kusper v. Pontikes*,
    414 U.S. 51 (1973).................................................................................................11

Case 3:19-cv-00365   Document 31   Filed 06/20/19   Page 4 of 40 PageID #: 182

*League of Women Voters of Fla. v. Cobb,*
    447 F. Supp. 2d 1314 (S.D. Fla. 2006) .................................................................10, 24, 27

*League of Women Voters v. Browning,*
    575 F. Supp. 2d 1298 (S.D. Fla. 2008) ..........................................................................10, 27

*Longshoremen's Union v. Boyd,*
    347 U.S. 222 (1954)..............................................................................................................14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................................................................6

*MacDonald v. Bd. of Election Comm'rs of Chicago,*
    394 U.S. 802 (1969)..............................................................................................................28

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995)..........................................................................................................24, 25

*Meyer v. Grant,*
    486 U.S. 414 (1988)........................................................................................9, 10, 23, 24

*Miller v. City of Wickliffe, Ohio,*
    852 F.3d 497 (6th Cir. 2017) ..............................................................................................13

*Mitchell v. Int'l Bhd. of Teamsters,*
    No. 08-2767, 2009 WL 10701232 (W.D. Tenn. Apr. 23, 2009) ..............................................6

*Morse v. McWhorter,*
    290 F.3d 795 (6th Cir. 2002) ................................................................................................6

*N.H. Right to Life Political Action Comm. v. Gardner,*
    99 F.3d 8 (1st Cir. 1996)........................................................................................................8

*NAACP v. Alabama ex rel. Patterson,*
    357 U.S. 449 (1958)..............................................................................................................11

*Nat'l Inst. of Family & Life Advocates v. Becerra (NIFLA),*
    138 S. Ct. 2361 (2018)......................................................................................................24, 26

*Nat'l Rifle Ass'n of Am. v. Magaw,*
    132 F.3d 272 (6th Cir. 1997) ..........................................................................................8, 15

*Obama for Am. v. Husted,*
    697 F.3d 423 (6th Cir. 2012)................................................................................................28

*Pactiv Corp. v. Chester,*
    419 F. Supp. 2d 956 (E.D. Mich. 2006).................................................................................15

iv

*Parsons v. U.S. Dep't of Justice*,
    801 F.3d 701 (6th Cir. 2015) ...............................................................7

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988).............................................................................8

*Phil. Indem. Ins. Co. v. Youth Alive, Inc.*,
    732 F.3d 645 (6th Cir. 2013) ...............................................................6

*Project Vote v. Blackwell*,
    455 F. Supp. 2d 694 (N.D. Ohio 2006)........................................... *passim*

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999)................................................................13

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015)......................................................................24

*Renne v. Geary*,
    501 U.S. 312 (1991)..........................................................................14

*Reno v. Am. Civil Liberties Union*,
    521 U.S. 844 (1997)..........................................................................16

*Riley v. Nat'l Fed. of Blind of N.C., Inc.*,
    487 U.S. 781 (1988)......................................................................24, 26

*Riva v. Massachusetts*,
    61 F.3d 1003 (1st Cir. 1995)..............................................................14

*Roe v. Snyder*,
    240 F. Supp. 3d 697 (E.D. Mich. 2017)................................................11

*Rose v. Hartford Underwriters Ins. Co.*,
    203 F.3d 417 (6th Cir. 2000) ...............................................................6

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) .............................................................12

*Springfield Armory, Inc. v. City of Columbus*,
    29 F.3d 250 (6th Cir. 1994) ...............................................................16

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)......................................................................11, 15

*Susan B. Anthony List v. Driehaus*,
    814 F.3d 466 (6th Cir. 2016) .............................................................24

*Terry v. Tyson Farms, Inc.*,
  604 F.3d 272 (6th Cir. 2010) ................................................................6

*Toilet Goods Ass'n., Inc. v. Gardner*,
  387 U.S. 158 (1967) ........................................................................13

*In re Travel Agent Comm'n Antitrust Litig.*,
  583 F.3d 896 (6th Cir. 2009) ............................................................6

*Tyler v. Cain*,
  533 U.S. 656 (2001) ........................................................................18

*United States v. Stevens*,
  559 U.S. 460 (2010) ........................................................................19

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
  425 U.S. 748 (1976) ........................................................................25

*Vill. of Bensenville v. F.A.A.*,
  376 F.3d 1114 (D.C. Cir. 2004) ........................................................14

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates*,
  455 U.S. 489 (1982) ..................................................................12, 16

*Yates v. United States*,
  135 S. Ct. 1074 (2015) ....................................................................18

**RULE:**

Fed. R. Civ. P. 15(a) ........................................................................6

vi

**INTRODUCTION**

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss. Defendants move to dismiss for lack of jurisdiction on the grounds that Plaintiffs allegedly lack standing and their claims are not ripe. Defendants also contend that Plaintiffs have failed to state a claim upon which relief can be granted.

Defendants' motions should be denied. Plaintiffs have alleged standing, and their claims are clearly ripe in light of the imminent threat of civil penalties and criminal prosecution that they face under the new law. Plaintiffs have also alleged sufficient facts to show that the new law burdens their rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs have sufficiently alleged that the undue burdens, overbreadth, and vagueness of the law have the impact of chilling their constitutionally-protected voter registration efforts.

**I.      THE ALLEGATIONS OF THE COMPLAINT**

The Complaint challenges the constitutionality of several provisions of Tennessee's new law that places restrictions on community-based voter registration, signed into law by Governor Bill Lee on May 2, 2019, and designated as Public Chapter 250 (the "Law"). The Law imposes unnecessary, burdensome and unreasonable restrictions on organizations like Plaintiffs that help Tennessee citizens register to vote. The Law threatens these organizations with potentially crippling financial penalties and the threat of prosecution for engaging in core First Amendment activities—their right to associate with community members and convey the message that voter registration and voting are important to participating in the nation's democracy.

The Complaint challenges three provisions of the Law. First, Section 2-2-142 requires any organization that conducts a "supplemental voter registration drive" and "attempts" to collect more than 100 voter registration applications to provide the coordinator of elections advance

notice, presumably before each "voter registration drive," of the names, addresses, and contact phone numbers of all the organization's officers, and identify the counties in which the drive will be held; file a sworn statement that the organization will obey state law and procedures regarding the registration of voters; and ensure that any participant complete state-mandated training before participating in any voter registration activity, among other requirements. § 2-2-142(a)(1)(A)–(E). Failure to comply with this Section may lead to criminal prosecution. § 2-2-142(f). Second, Section 2-2-143 imposes civil penalties ranging from $150 to $10,000 per county on any organization that submits more than 100 "incomplete" voter registration applications in a calendar year. § 2-2-143(a)–(c). The provisions in Sections 2-2-142 and 2-2-143 do not apply to organizations "that are not paid to collect voter registration applications and that use only unpaid volunteers to collect voter registration applications," subjecting only those organizations that are "paid" or use "paid" workers to collect voter registration applications to comply with the Law's requirements or face the threat of criminal and civil penalties. §§ 2-2-142(g), 2-2-143(e). Third, Section 2-19-145 requires any organization, regardless of whether they pay their workers, that makes a "public communication" regarding "voter registration status" to include a state-mandated disclosure that the communication "is not made in conjunction with or authorized by the secretary of state." § 2-19-145(a)(1). Failure to comply with this Section may also result in criminal prosecution. § 2-19-145(e).

Plaintiffs are four non-partisan organizations—the Tennessee State Conference of the N.A.A.C.P. ("Tennessee NAACP"); Democracy Nashville-Democratic Communities ("Democracy Nashville"); The Equity Alliance; and the Andrew Goodman Foundation—that are active in encouraging greater civic engagement by citizens, primarily in the African-American and other traditionally disenfranchised communities and students, including but not limited to

getting these individuals registered to vote. The Complaint alleges in detail the potentially devastating effect that the Law will have on Plaintiffs' voter registration efforts. Compl. ¶¶ 4, 6, 7–11, 19, 21, 23, 25, 44–61. The Complaint alleges that the Law is burdensome and vague, and compels Plaintiffs to speak a particular message, that Plaintiffs further risk exposure to the imposition of criminal and civil penalties for non-compliance—and that together, these requirements will force Plaintiffs to cut back substantially or terminate their voter registration activity. Compl. ¶¶ 19, 21, 23, 25.

Specifically, the Complaint alleges, much of Plaintiffs' voter registration activity involves seizing last-minute opportunities and using volunteers attracted on short notice, but the Law's burdensome advance notice, training, and submission of sworn oath requirements would make it infeasible, if not impossible, for Plaintiffs to continue to take advantage of these last-minute opportunities and would only permit Plaintiffs to recruit volunteers and engage with prospective voters in activities that are planned and organized well in advance. Compl. ¶¶ 4–6, 7–11, 18, 20, 22, 24, 36–38, 76. These burdensome requirements will especially impact Plaintiffs when they conduct any large-scale voter registration activity, because there is enormous uncertainty about what will be deemed an "incomplete" application, and Plaintiffs like the Tennessee NAACP, which has multiple branches across the state, may face aggregate fines for "incomplete" applications collected by all of its branches.[1] Compl. ¶¶ 19–20, 47–56. The Law further forces Plaintiffs to add a message that undermines their credibility in every communication that they make to voters about voter registration; this provision will also impose substantial costs on Plaintiffs and make some particularly effective means of communication,

_____

[1] Section 2-2-143 imposes fines based on an absolute number of "incomplete" applications – and a low number at that. As a result, for an organization that helps gather more than 10,000 applications, even the tiniest error rate, less than 1 percent, can lead to an enormous fine.

like text messages, unwieldy or prohibitively expensive. Compl. ¶¶ 18–25, 57–61. As the Complaint alleges, the Law's exclusion of organizations using exclusively "unpaid" volunteers and are not "paid" to do voter registration work is irrational and undermines the Law's alleged purposes, since there is no reason to differentiate between paid and unpaid workers or organizations or to believe that "unpaid" volunteers will be more careful than "paid" volunteers or staff. Compl. ¶¶ 44–46, 78.

As to vagueness, the Complaint alleges that many of the terms in the Law are hopelessly vague and greatly exacerbate the Law's chilling effect on the exercise of fundamental First Amendment rights. Compl. ¶¶ 45, 47–52, 55–56, 60–61. For example, does the Law apply to an organization that has staff members who are paid a salary to perform many tasks, including voter registration activities, or to organizations that give volunteers a small daily stipend or reimburses them for expenses? Compl. ¶ 45. Is a communication that urges people in general terms to register to vote a communication about "voter registration status"? Compl. ¶¶ 60–61. Is an application "incomplete" if the registrant uses a nickname ("Mike") instead of their legal name (Michael), or omits a ZIP code or apartment number, or fails to check off "Mr. or Ms."? Compl. ¶¶ 50–51. The Complaint challenges the vagueness of these and many other terms in the Law. Absent a court ruling, however, Plaintiffs will be forced to drastically limit their voter registration efforts or abandon them altogether in order to mitigate the risk of civil liability and criminal prosecution. Compl. ¶¶ 19, 21, 23, 25.

As to the compelled disclosure in Section 2-19-145, the Complaint alleges that the state-mandated disclosure violates their right to free speech because it alters the content of their speech every time they make a public communication about voter registration status. Compl.

¶¶ 80–81. The Complaint alleges that this type of forced disclosure is an infringement of the Free Speech Clause of the First Amendment. Compl. ¶¶ 79–84.

The Complaint includes four causes of action. In Count I, Plaintiffs allege that Sections 2-2-142, 2-2-143, and 2-19-145 violate the Due Process Clause because they are unconstitutionally vague. Compl. ¶¶ 62–74. In Count II, Plaintiffs allege that Sections 2-2-142 and 2-2-143 violate their First Amendment rights to speech and association by subjecting only organizations that use "paid" staff and volunteers to onerous requirements without a rational basis for distinguishing unpaid volunteers from those who are paid. Compl. ¶¶ 75–78. In Count III, Plaintiffs allege that Section 2-19-145 violates their First Amendment rights by compelling them to deliver a state-mandated message in every communication with voters regarding voter registration. Compl. ¶¶ 79–84. And in Count IV, Plaintiffs allege that the Law violates the First and Fourteenth Amendments by imposing unjustified burdens on their constitutionally-protected activity seeking to advance the right to vote. Compl. ¶¶ 85–93.

## II.  THE GOVERNING LEGAL STANDARDS

Motions to dismiss are governed by the facial plausibility standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To establish "facial plausibility," the complaint need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678–79. Examining whether a complaint states a "plausible claim for relief" is a "context-specific task." *Id.* A court must take all of the factual allegations in the complaint as true. *Ashcroft* 556 U.S. at 678; *Twombly*, 550 U.S. at 572; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 720, 722 (6th Cir. 2010).

A court may dismiss a complaint as a matter of law only if the complaint (1) lacks a cognizable legal theory or (2) fails to contain sufficient facts to support a cognizable legal claim.

*Garner v. City of Cuyahoga Falls*, 311 F. App'x 896, 900 (6th Cir. 2009); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902–03 (6th Cir. 2009). When a complaint "contains . . . 'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory," it is considered well-pled. *Phil. Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 275–76 (6th Cir. 2010).

As set forth below, Plaintiffs' Complaint alleges cognizable legal theories and sufficient facts to support a cognizable legal claim. Thus, Defendant's Motion to Dismiss should be denied.[2]

## III. PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS TO ESTABLISH STANDING AND RIPENESS.

### A. The Complaint Adequately Pleads the Basis for Standing.

Standing, for Article III purposes, requires (1) an "injury in fact," *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical;" (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is "likely" the likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). When challenged at the pleading stage, the allegations of the

---

[2] Although Plaintiffs are confident that their claims are well-pled, should this Court grant Defendants' Motion to Dismiss, in whole or in part, Plaintiffs request leave to file an Amended Complaint. Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Courts in this Circuit liberally and freely grant leave to amend a complaint. *See Morse v. McWhorter*, 290 F.3d 795, 799–800 (6th Cir. 2002); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *Mitchell v. Int'l Bhd. of Teamsters*, No. 08-2767, 2009 WL 10701232, at *1–2 (W.D. Tenn. Apr. 23, 2009).

complaint as to standing must be construed generously. "At the pleading stage, general factual allegations of injury arising from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015).

Here, Plaintiffs have alleged that, as a result of the Law's criminal and civil penalties, absent relief, Plaintiffs will be forced to significantly curtail or terminate their year-round voter registration activity, despite their wish to continue registering potential voters in the future. Compl. ¶¶ 19, 21, 22, 23, 24–25, 28, 36–38. Plaintiffs allege that Sections 2-2-142 and 2-2-143 single out a selected group of persons—"paid" volunteers and staff—for civil and criminal penalties that will cause Plaintiffs to scale back their registration efforts or halt their registration activities altogether. Compl. ¶¶ 8, 19, 21, 23, 25, 36–38. Plaintiffs allege that complying with the administrative, training, and oath requirements will make it difficult for them to register prospective voters, on short notice, as they have in the past—by meeting potential voters where they are. Compl. ¶¶ 4–6, 7–11, 18, 20, 22, 24. And Plaintiffs allege that the Law's compelled disclosure requirement will distort and undermine their message, impose substantial costs, making some particularly effective means of communication, like text messages, unwieldy or prohibitively expensive, and force Plaintiffs to curtail their voter registration, education, and election protection work. Compl. ¶¶ 18–25, 57–61, 80-84.

Having to reduce significantly or terminate their voter registration and civic engagement activities will harm Plaintiffs by preventing them from achieving their core mission of empowering, mobilizing, and engaging the most disenfranchised communities through voter registration, election protection, and get out the vote efforts. Compl. ¶¶ 19–25. These allegations are more than sufficient to demonstrate "imminent harm" for purposes of a motion to

dismiss. *See Nat'l Rifle Ass'n of Am. v. Magaw* ("*NRA*"), 132 F.3d 272, 276 (6th Cir. 1997) (denying motion to dismiss as to standing and ripeness because plaintiffs alleged that passage of new law would cause immediate harm, forcing them to "either terminate a line of business, make substantial expenditures in order to comply with the Act, or willfully violate the statute and risk serious criminal penalties").

Despite these clear averments of injury, Defendants argue that Plaintiffs have not demonstrated injury because the Law is "not yet in effect" and "Plaintiffs have not alleged that they intend to or will in fact violate" the Law. Defs.' Memorandum of Law in Support of the Motion to Dismiss ("Defs.' Mem.") at 9–10. The controlling law is to the contrary: Plaintiffs' allegations that they would face a substantial risk of civil penalties and potential criminal prosecution were they to continue their voter registration activity gives them standing to challenge the Law. *See*, *e.g.*, *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) ("likelihood of enforcement . . . is a sufficient threat of actual injury to satisfy Art. III's requirement"). Moreover, the Sixth Circuit recently made clear that to support standing in a case involving constitutionally-protected political rights, it is sufficient that the Plaintiffs have "articulated 'a factual showing of perceptible harm' resulting from the state's regulations." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 544 (6th Cir. 2014).

This is particularly so when, as here, the challenged statute will chill activity protected by the First Amendment. *NRA*, 132 F.3d at 285 ("Parties not yet affected by the actual enforcement of the statute are allowed to challenge actions under the First Amendment in order to ensure that an overbroad statute does not act to chill the exercise of free speech and expression, a constitutionally protected right.") (internal quotation omitted); *see also N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) ("When dealing with pre-

enforcement challenges to recently enacted . . . statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."). As alleged in Plaintiffs' Complaint, the Law violates Plaintiffs' core First Amendment rights to speech and association because it places heavy burdens on them to comply with a whole host of requirements before they can even begin providing voter registration assistance to Tennessee citizens. Compl. ¶¶ 6–11, 21, 23, 25, 87–90.

First, providing voter registration assistance implicates Plaintiffs' right to free speech because, in helping fellow community members register to vote and engaging them in conversations about civic participation, Plaintiffs express a clear political and civic message that registering to vote and voting are essential to meaningful participation in our democracy. Compl. ¶¶ 5, 24, 38. To bolster this message, Plaintiffs circulate voter registration applications, have the potential voter fill them out on the spot, collect those applications, and submit them to the local county election commission. Compl. ¶¶ 6, 19–25. Ahead of an election, Plaintiffs also engage in election protection work to help voters at the polls determine whether they are registered to vote or whether they are at the correct polling location. Compl. ¶¶ 19–25.

This is quintessential free speech activity. *See Meyer v. Grant*, 486 U.S. 414, 422 (1988) (striking down a law restricting petition-circulating activity because the restriction necessarily burdened the speech associated with such activity). Similarly here, Plaintiffs' voter registration activities are inherently intertwined with their political speech. Communicative interaction with voters and promoting voter registration share the same attributes as circulating a petition or soliciting charitable contributions, because each activity is an endeavor that "of necessity involve[s] both the expression of a desire for political change and a discussion of the merits of the proposed change." *Id.* at 421. It is not surprising, therefore, that courts have uniformly

recognized that voter registration activity such as that conducted by Plaintiffs implicates the free speech rights of those who, like Plaintiffs, expend substantial efforts going out into the community, spreading the message that voting is crucial, and helping fellow community members register to vote. *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 706 (N.D. Ohio 2006) ("The interactive nature of voter registration drives is obvious: they convey the message that participation in the political process through voting is important to a democratic society."); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1333 (S.D. Fla. 2006) (noting that law restricting third-party voter registration activity "reduced the total quantum of speech" because as part of their voter registration drives, [the plaintiffs] persuade others to vote, educate potential voters about upcoming political issues, communicate their political support for particular issues, and otherwise enlist like-minded citizens in promoting shared political, economic, and social positions"); *League of Women Voters v. Browning*, 575 F. Supp. 2d 1298, 1322 (S.D. Fla. 2008) ("Undoubtedly, Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity.").

In conducting voter registration activities, Plaintiffs are also exercising their First Amendment right to associate with each other and with potential voters to engage in political conversations about voting and to broaden the public's participation. Compl. ¶¶ 3–6, 36–38. The primary focus of Plaintiffs' voter registration activity is in the African-American community and among low-income citizens. Compl. ¶ 5. As alleged in the Complaint, Plaintiffs' efforts to expand the franchise constitute an exercise of Plaintiffs' right to association. Compl. ¶¶ 33–35, 36–38. In *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999), the Supreme Court held a Colorado statute that required ballot-initiative petition circulators to register with a

political party, wear identification badges, and be eighteen years or older violated the individuals' right to "associate for political purposes" and freely engage with members of the public, because these restrictions decreased the pool of potential petition circulators and discouraged participation in the petition process. *Id.* at 215. In other contexts as well, such as where an organization is compelled to make public its membership lists, the Supreme Court has consistently held that "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment." *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460 (1958); *see Kusper v. Pontikes,* 414 U.S. 51, 56–57 (1973) ("There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments") (internal quotation omitted).

Not only does the Law implicate Plaintiffs' core First Amendment activities, it carries with it a "threat of criminal enforcement" and "administrative sanctions" that makes judicial review imperative. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014) (holding that denying prompt judicial review would impose a "substantial hardship" on petitioners, "forcing them to choose between refraining from core political speech on the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other"); *see also Roe v. Snyder*, 240 F. Supp. 3d 697, 704 (E.D. Mich. 2017) ("[A]n actual arrest or prosecution is not necessary to establish standing when the credible threat of such is sufficiently imminent.") (internal quotation omitted).

Defendants argue that Plaintiffs' injury is not imminent until the Coordinator of Elections or the State Election Commission promulgates regulations to enforce the Law. *See* Defs.' Mem.

11

at 9.  However, Defendants fail to point to a single case where a court has delayed hearing a challenge based on a law's chilling effect on constitutional rights in order to wait until clarifying regulations were promulgated.  Indeed, cases that hold that implementing regulations may cure vagueness typically concern statutes regulating *economic* activity, not statutes, as here, that chill First Amendment activity and which impose potential civil as well as criminal penalties on plaintiffs for engaging in constitutionally-protected conduct.  *See, e.g., Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982) ("[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."); *Speet v. Schuette*, 726 F.3d 867, 879 (6th Cir. 2013) (finding a city ordinance regulating begging would not benefit from any further "limiting construction" because it simply "ban[ned] an entire category of activity the First Amendment protects"); *Cali. Pacific Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 571 (9th Cir. 2018) (reasoning that "where economic regulation is involved," the regulated enterprise may await clarification of the meaning of the regulation by administrative process).[3]

Similarly, Defendants argue that enforcement of the compelled disclaimer provision is left to Tennessee's district attorneys, not to Defendants, and that "there is no indication . . . as to how the district attorneys will use their broad prosecutorial discretion."  Defs.' Mem. at 10.  But these points merely reinforce the urgent need for this Court's review and highlight the great danger to Plaintiffs created by the Law's vagueness, rather than alleviating any constitutional concern.

---

[3]  Even if the prospect of clarifying regulations were relevant to Plaintiffs' standing in this case, it would not apply to Plaintiffs' claims under Section 2-19-145, the compelled disclosure provision, because the Law does not authorize any state agency to implement regulations as to that provision.

12

Finally, Defendants appear to argue that Plaintiffs, as organizations, have no standing to assert the rights of voter registration workers, and do not identify the First Amendment rights of their own that they are seeking to protect. Defs.' Mem. at 15. But the new Law is squarely focused on restricting the activities of organizations, like Plaintiffs, that are engaged in voter registration activity. As discussed above, the Complaint explains in detail how the First Amendment rights of the organizations themselves are severely threatened by the Law.

### B.       Plaintiffs' Challenges to the Law Are Ripe for Review.

As the Sixth Circuit has noted, the "line between Article III standing and ripeness . . . has evaporated." *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 506 (6th Cir. 2017). A case is ripe for review when the issue presented is not premature for the court's consideration and withholding immediate judicial consideration "will cause hardship to the parties." *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017); *see R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 34 (1st Cir. 1999). Under Defendants' view of the world, this Court lacks jurisdiction to hear any pre-enforcement challenge to a statute that imposes severe civil and criminal sanctions on persons undertaking constitutionally protected activities, unless and until those persons actually say they intend to break the law and the State actually enforces the law against them. Defs.' Mem. at 9–12. As discussed above, this is not what the law requires when viewed through the prism of standing. Nor is it the law when viewed through the prism of ripeness.

When a statute carries with it criminal and civil penalties and implicates First Amendment freedoms, there is no basis for the Court to deny review on ripeness grounds. Defendants have not pointed to a single case that suggests otherwise. Defendants cite three cases in support of their ripeness argument, Defs.' Mem. at 12, but the first two did not involve the potential for chilling core First Amendment activity, and none of them carried the threat of criminal and/or civil penalties. *See Toilet Goods Ass'n., Inc. v. Gardner*, 387 U.S. 158, 164–66

(1967) (involving FDA regulation concerning power of government inspectors to examine factories, warehouses, and other equipment); *Longshoremen's Union v. Boyd*, 347 U.S. 222, 224 (1954) (concerning whether Immigration and Nationality Act could be interpreted to treat aliens returning to the United States for temporary work as entering the country for the first time); *cf. Renne v. Geary*, 501 U.S. 312, 323 (1991) (challenge to state statute that prohibited political parties from endorsing political candidates for nonpartisan office held not ripe only because plaintiffs had not alleged an intention to endorse such candidates in the future).

This case is not premature. A mere three months remain before the Law goes into effect. Plaintiffs want to continue to help register voters and must begin planning for their voter registration activity now, as well as make major financial decisions prior to the effective date of the Law. Compl. ¶¶ 36–38. Indeed, other courts have rejected ripeness arguments even though the statutes at issue would not be enforced from nineteen months to years after plaintiffs filed their complaint, due to the immediate harm plaintiffs would face in preparing for when the statute went into effect. *See Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1368–69 (S.D. Ga. 2018) ("The Court finds that the occurrence of actual irreparable harm in nineteen months is sufficiently imminent to weigh this factor in favor of the States."); *Riva v. Massachusetts*, 61 F.3d 1003, 1011 (1st Cir. 1995) (finding statutory challenge ripe, even though plaintiff would not be subject to statute until he turned sixty-five, because of "relative certainty of the statute's application" and "hardship" to plaintiff should "immediate review be denied"); *Vill. of Bensenville v. F.A.A.*, 376 F.3d 1114, 1120 (D.C. Cir. 2004) (finding statutory challenge ripe although statute would not go into effect for thirteen years, because FAA's decision to collect fees in thirteen years was final). Denying Plaintiffs prompt judicial review will cause Plaintiffs substantial hardship, "forcing them to choose between refraining from core political speech on

the one hand, or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other." *Driehaus*, 573 U.S. at 168.

Similar to their argument on standing, Defendants argue that the case is not ripe because the Law has not been enforced against Plaintiffs yet. Defs' Mem. at 11. But it is well settled that, when a plaintiff is contesting the constitutionality of a criminal statute, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). The same considerations apply in the context of administrative enforcement, where a fear of enforcement is credible and a statute "imposes costly, self-executing compliance burdens." *Pactiv Corp. v. Chester*, 419 F. Supp. 2d 956, 962 (E.D. Mich. 2006) (quoting *NRA*, 132 F.3d at 279). Further, the Supreme Court has specified that challenges to "election procedures" do not typically raise justiciability concerns, because if the challenge is delayed, the case will not be concluded in time for the next election and the plaintiff will be left without a remedy. *Babbitt*, 442 U.S. at 300 n.12. The same reasoning applies with full force to the facts here, where Plaintiffs' constitutional right to engage in free speech and associational activities to register voters so as to allow them to influence the next election will be irrevocably lost without the relief requested in the Complaint.

## IV. PLAINTIFFS' CLAIMS STATE VALID CAUSES OF ACTION.

### A. Count I States a Valid Void-for-Vagueness Claim.

Defendants argue that Count I fails to state a cognizable claim, essentially, because Defendants think the challenged terms have plain meaning. Defs.' Mem. at 12–15. Defendants' argument ignores controlling precedent, and relies on a legal standard for a void-for-vagueness claim that the Supreme Court has already rejected.

15

A law is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment when the Law (1) fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" and (2) "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). In challenges involving First Amendment claims like Plaintiffs', the State's conduct is subject to an even more-searching inquiry, because of the potential "chilling effect" on constitutionally protected activity, given the "special First Amendment concerns" and the "severity of criminal sanctions" at issue. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871–872 (1997); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–254 (2012) (requiring "rigorous adherence" to the void-for-vagueness doctrine "[w]hen speech is involved"); *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 252 (6th Cir. 1994) (applying a "relatively strict test" for vagueness challenges where criminal penalties at issue). Against these standards, Defendants' various arguments can be summarily rejected.

*First*, Defendants rely upon a legal standard that is not a correct statement of the law. Defendants argue that: "A statute will be struck down as facially vague *only if* the plaintiff has 'demonstrate[d] that the law is impermissibly vague in all of its applications.'" Defs.' Mem. at 14 (quoting *Hoffman Estates*, 455 U.S. at 498–99). But that overbroad language was not the holding of *Hoffman Estates*; instead, the Court held that Plaintiffs must show only that the challenged law implicates a "substantial amount of constitutionally protected conduct," 455 U.S. at 494, which the Law at issue here surely does. Indeed, *Hoffman Estates* stated explicitly that the "impermissibly-vague-in-all-of-its-applications" standard applies only where, unlike here,

"the enactment implicates no constitutionally protected conduct." *Id*. at 494–95. And the Supreme Court has more recently rejected Defendants' claim that the "impermissibly-vague-in-all-of-its-applications" provides the governing standard. *See Johnson v. United States*, 135 S. Ct. 2551, 2560–61 (2015). As Justice Scalia, writing for the Court in *Johnson*, explained, "our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct [that could constitutionally be prohibited] that clearly falls within the provision's grasp." *Id*. at 2561. Also wrong is Defendants' blanket assertion that "a litigant raising a vagueness challenge must show that the statute in question is vague as applied to his own conduct, without regard to its potentially vague application in other circumstances." Defs.' Mem. at 14. That assertion ignores that Plaintiffs are bringing a facial challenge, not an as-applied challenge. *See Brandywine, Inc. v. City of Richmond, Ky.*, 359 F.3d 830, 835 (6th Cir. 2004) (recognizing special justiciability rules "in vagueness and overbreadth challenges," including that plaintiffs may assert claims based on third-party standing where vagueness and overbreadth implicated).[4] In any event, Plaintiffs have, throughout the Complaint, alleged how their vagueness concerns pertain to their own conduct. Compl. ¶¶ 44–61.

*Second*, Defendants have failed to show that the challenged provisions are susceptible to a definite, knowable, and non-arbitrary meaning when read in context. Instead, applying their misstated standard, Defendants argue that it is "abundantly clear what each of the challenged terms mean" because, given "the relatively straightforward vocabulary," the language "is neither complex nor confusing, and is either defined in *Black's Law Dictionary* or by the Act itself." Defs.' Mem. at 13–14. That, too, misses the point and the controlling law. Plaintiffs have not

---

[4] We note that Plaintiffs' facial challenge raises overbreadth as well as vagueness arguments concerning the critical voting, speech, associational, and liberty interests at stake. *See, e.g.*, Compl. ¶¶ 1 ("vague and overbroad terms and standards"), 10 ("vagueness and overbreadth"), 11 ("vagueness, overbreadth, and undue burden").

alleged that terms like "incomplete," "paid," "regarding voter registration status," or "includes" are inherently uncertain or necessarily incapable of definition when viewed *in isolation*. Rather, Plaintiffs have alleged that *in context* it is objectively unclear what they must do to comply, and when they may be made subject to enforcement, based on Tennessee's use of these terms in light of the purposes and structure of Sections 2-2-142, 2-2-143, and 2-19-145. *See, e.g.*, Compl. ¶¶ 64, 67–72.

Indeed, because courts "do not 'construe the meaning of statutory terms in a vacuum,'" the mere fact that there exists a "dictionary definition of a disputed term cannot," as Defendants would have it, "control." *See Yates v. United States*, 135 S. Ct. 1074, 1092 (2015) (quoting *Tyler v. Cain*, 533 U.S. 656, 662 (2001)); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Or, put more colorfully, "[t]he phrase 'shades of red,' standing alone, does not generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, navy blue, or colors that otherwise involve shades of red' assuredly does so." *Johnson*, 135 S. Ct. at 2561 (quoting *James v. United States*, 550 U.S. 192, 231 n.7 (2007) (Scalia, J., dissenting)).

Thus, for example, Defendants facetiously argue that Plaintiffs "cannot apparently understand" a number of commonly used words. Defs.' Mem. at 13. Obviously, Plaintiffs know what these words mean. What is vague is how they are used in the context of the statute as a whole and its legislative history. When and how is the "attempt" to register 100 or more voters – the trigger for the pre-registration and training requirements – determined? Does "incomplete" mean completely missing a required piece of information or, as the statements of the Law's sponsors and Commissioner Goins might indicate, inaccuracies in that information? Does "paid"

cover situations where organizations use salaried employees for a variety of jobs that include helping to register voters?  Does it include situations where organizations reimburse volunteers for expenses?  Similarly, the phrase, "regarding voter registration status" in the same section, is vague not because any of these words are objectively vague in isolation, but because, for example, an ordinary person would not know whether the requirement of a disclaimer in connection with such communications is intended to cover only discussions of a specific individual's voter registration status or any general discussion of voter registration status, such as instructions as to how to check one's voter registration status.

Defendants all but concede the point that the statutory language, when read together, is impermissibly uncertain on its face.  Defendants speculate about a "future rulemaking" that will make the law "easier to digest," as well as suggest the possibility of further, unspecified informal guidance from individual state officials at similarly unspecified "upcoming trainings."  *See* Defs.' Mem. at 13–14.  These assurances, Defendants posit, will fill any gaps in statutory meaning.  That, of course, is not how the Due Process Clause works, particularly when it comes to protection of First Amendment activity.  The Constitution "does not leave us at the mercy of *noblesse oblige*" of state officials, and the courts will "not uphold an unconstitutional statute merely because the Government promised to use it responsibly."  *United States v. Stevens*, 559 U.S. 460, 480 (2010).  There is no basis to dismiss Plaintiffs' vagueness claim on such flimsy allusions to possible future clarity.

*Third*, Defendants fail to account for the early procedural posture that this case now occupies.  At this stage of the proceedings, the Court need identify only a single valid vagueness claim in order to reject the motion to dismiss, and need not parse the full statute.  *See Doe v. Haslam*, Nos. 3:16-CV-02862, 3:17-CV-00264, 2017 WL 5187117, at *18 n.4 (M.D. Tenn. Nov.

9, 2017).  Further, determining the merits of Plaintiffs' facial challenge would benefit from development of a factual record because the legislative history in this case indicates that the Defendant Goins and the legislators who drafted this bill themselves did not know what the key terms in the statute meant or how they would be implemented.  Compl. ¶ 19.

For example, legislators made inconsistent statements as to the meaning of "incomplete" and "unpaid"—as alleged in the Complaint, some legislators suggested that the Law would not apply to Plaintiff Tennessee NAACP, but did not address the fact that the Tennessee NAACP receives grants and pays stipends to volunteers to collect voter registration applications, conduct which on its face, would appear to make the organization subject to the Law.  Compl. ¶ 19. Moreover, as alleged in the Complaint, legislators and Defendant Goins were unable to clearly explain what "incomplete" applications meant, specifically whether "incomplete" encompasses "inaccurate" information provided by voter registration applicants.  Inconsistency and contradictions abound in the statute, as illustrated by its legislative history, and further factual development is necessary to understand how Defendants will plan to enforce this overbroad and vague statute.  Compl. ¶¶ 48, 55.

**B.  Count II States a Valid Cause of Action for Alleged Violation of Plaintiffs' First and Fourteenth Amendment Rights.**

Count II of the Complaint alleges that the Law imposes impermissible "burdens on the First Amendment rights of . . . the organizations, like Plaintiffs," that use "paid" voter registration workers.  Compl. ¶ 78.  These impermissible burdens are set out in great detail throughout the Complaint, and are also addressed in Count IV, discussed below.[5]  Count II focuses on the fact that the Law imposes these burdens solely on organizations that "are not paid to collect voter registration applications and that use only unpaid volunteers to collect voter

_____

[5]  The vagueness of the term "paid" is addressed in Count I of the Complaint, discussed above.

20

registration applications," §§ 2-2-142(g), 2-2-143(e), and alleges that there is no rational basis for the Law's distinction between paid and unpaid voter registration workers, Compl. ¶ 77.

First, as noted above, Defendants' argument that Plaintiffs' allegations are asserting the rights of third parties, *i.e.*, paid voter registration workers, is wrong. The Complaint is replete with allegations that each of the Plaintiffs may—depending on how the phrase "paid" is applied—use "paid" workers, and Count II specifically avers that the First Amendment rights of "organizations, such as Plaintiffs, with whom [paid workers] are affiliated" are in issue. Compl. ¶¶ 43, 45, 75–78.

Further, Plaintiffs can properly assert this claim to the extent that any "paid" workers were members of their organization. The law is clear that an organization can sue on behalf of its members as long as their members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim nor the relief requires participation by the individual members in the lawsuit. *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 717–18 (6th Cir. 1995). Plaintiffs can assert the rights of those individuals who receive stipends or expense money and may arguably be considered "paid" workers under the Law, because, as alleged in the Complaint, these workers are volunteer members of Plaintiffs organizations who enhance Plaintiffs' voter registration work. Compl. ¶¶ 8, 19–25. Plaintiffs' volunteers and staff would have standing to sue in their own right because they arguably could be considered "paid" under the Law; voter registration activity is a core mission of Plaintiffs; and neither the claim nor relief would require an individual's participation because Plaintiffs rely on individuals to register voters.

Defendants also argue that Plaintiffs do not sufficiently allege the nature of the First Amendment rights they are asserting. Defs.' Mem. at 15. However, as discussed in detail above,

the Complaint makes clear that Plaintiffs are asserting their First Amendment right to speech and association in conjunction with their ongoing efforts to speak with voters and urge them to get involved in the democratic process through registering to vote.

Finally, in the only argument that is addressed to the merits of Plaintiffs' contentions in Count II, Defendants argue that "the First Amendment does not prohibit differentiating between groups, nor does it require a rational basis for enactments." Defs' Mem. at 16. Leaving aside for a moment Defendants' remarkable notion that the state is permitted to act irrationally, as discussed below with respect to Count IV, the burdens imposed on Plaintiff organizations for conduct that is core First Amendment advocacy relating to voting rights are tested under the standards announced by the Supreme Court in two decisions involving the validity of state laws relating to elections and voting, *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). We discuss the application of those standards to the Law at issue here in great detail below, and explain why, because of the significant voting and First Amendment interests at stake and the extent of the burdens imposed by the Law, a significant level of constitutional scrutiny is required, well above rational basis.

However, even if rational basis were the appropriate test to apply to the legislative choice to differentiate between "paid" workers and other people, Defendants do not explain what the alleged rational basis is for their singling out "paid" registration workers, so there is no need for this Court to decide that issue on this motion. Were it necessary to reach that issue, the distinction between "paid" and other volunteers does not meet constitutional muster, even under a rational basis test. In *Project Vote v. Blackwell*, 455 F. Supp. 2d at 700–05, the court preliminarily enjoined a similar Ohio law that required paid voter registration workers–but not unpaid volunteers–to pre-register with the Secretary of State, undergo online training and

provide a sworn statement each time they submit voter registration forms, among other restrictions. In finding that plaintiffs had a probability of success on the merits of their claim, the *Project Vote* court reasoned: "Defendants also failed to show how the State's articulated interests, outlined above, are served by these restrictions. There was no evidence presented to indicate how compensated workers, in contrast to their volunteer counterparts, would be more in need of state-mandated voter registration training." *Id.* at 703. The court ultimately concluded that there appeared to be "no rational basis for the differentiation between compensated and uncompensated voter registration workers for purposes of pre-registration, training, and affirmation." *Id.* at 704. So too here. Plaintiffs have alleged sufficient facts that the Law, by singling out organizations and individuals who are paid to conduct voter registration activity, unreasonably burdens Plaintiffs' ability to help others register to vote. Compl. ¶¶ 19, 21, 23, 24–25, 75–78. And Defendants have not articulated a single interest, let alone evidence justifying that interest, that would support dismissal of this claim on 12(b)(6) grounds.

### C. Count III States a Valid Cause of Action that the State-Mandated Disclaimer Is Unconstitutional.

In Count III of the Complaint, Plaintiffs allege that Section 2-19-145, which requires that "any public communications regarding voter registration status" include a state-mandated disclaimer, is an improper content-based restriction on speech and compels Plaintiffs to make state-mandated speech in violation of the First Amendment. The compelled-disclaimer provision implicates two central concerns in First Amendment jurisprudence: the protection of core political speech and the prohibition of state-mandated speech.

First, when a statute regulates core political speech, "the importance of First Amendment protections is at its zenith." *Meyer*, 486 U.S. at 425 (quotation omitted). A law that impinges on core political speech relating to voting rights may be upheld only "if it is narrowly tailored to

23

serve an overriding state interest." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). Here, public communications regarding voter registration status are core political speech because, through these messages, Plaintiffs convey to voters that voting is important and that their registration is a necessary prerequisite to exercising their right to vote. *See Cobb*, 447 F. Supp. 2d at 1332 ("the 'inevitable effect' of the [regulations on third-party voter registration drives] was to 'reduc[e] the total quantum of speech on a public issue'") (quoting *Meyer*, 486 U.S. at 422–23). This message constitutes core political speech. *Project Vote*, 455 F. Supp. 2d at 706.

Second, when a statute "compels" speech by requiring the speaker to convey a certain message, it is subject to strict scrutiny under the First Amendment. Statutes that compel speech are considered content-based restrictions on speech, which single out particular communications based on the idea or message expressed, and therefore require strict scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) ("[A] law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed."); *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) (laws prohibiting dissemination of false information are content-based restrictions subject to strict scrutiny because they "only govern speech about political candidates during an election"). Moreover, laws that compel speakers to add a state-mandated message "necessarily alter the content of the speech" that the speaker intended, and are therefore subject to strict scrutiny on that ground. *Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988); *Nat'l Inst. of Family & Life Advocates v. Becerra* (*NIFLA*), 138 S. Ct. 2361, 2371 (2018).

Defendants make no effort to argue either that the State's interests in the mandated disclosure are compelling, or that the disclaimer requirement is narrowly tailored. Instead, Defendants argue, without basis in fact, that the disclaimer provision is "factual, commercial speech," that is subject to a rational basis standard. Defs.' Mem. at 16. Commercial speech jurisprudence concerns government regulations on commercial activity such as advertising or consumer products—regulations of this kind are afforded lower First Amendment protections because the government has an interest in protecting consumers from misleading commercial messages. Commercial speech is "'speech which does no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976)); *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 560 (1980) ("commercial speech" is "expression related solely to the economic interests of the speaker and its audience"). The disclaimer requirement here is not commercial speech because it has nothing to do with products or misleading messages to consumers—statements about voter registration and voting are core political speech, not commercial speech.

Defendants also argue that the statement required by the state-mandated disclaimer is "plainly factual, and does not hinder the speaker from . . . engaging in free speech," because it only requires Plaintiffs to add a disclaimer to any voter registration communications that they are "not affiliated with or authorized by the Secretary of State." Defs.' Mem. at 16. While disclaimer requirements "do not prevent anyone from speaking," they still "may burden the ability to speak," *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366 (2010); *see also McIntyre*, 514 U.S. at 345 (striking down ordinance requiring mandatory identification disclaimers on issue advocacy expenditures), and would "alter" Plaintiffs' communications with

25

voters in a way that the Supreme Court has held invalid in *NIFLA* and *Riley*. The State's compelled-disclosure requirement would require Plaintiffs to alter their speech–in text messages, phone communications, published flyers, on websites, signs, and every other platform–to add this state-mandated disclaimer, and to do so in a way that ensures that the State's message is "prominently" displayed. § 2-19-145(d). To do so would not only change Plaintiffs' message, it would impermissibly call into question that message's truth and accuracy and undercut the power of any communications Plaintiffs make to encourage voter registration and voting.

Clinging to the inapplicable rational basis standard, Defendants can muster only the rationale that the disclosure requirement is needed to prevent voter disenfranchisement because, absent the disclosure, prospective voters might rely on a third-party voter lookup website or erroneous information about voter registration. Defs.' Mem. at 18. Even if voter confusion of the sort invoked by Defendants were a serious problem in Tennessee, the two hypothetical examples cited by Defendants do not begin to justify the state-mandated disclaimer. *Id*. Nor is there any reason to believe that the State's new disclaimer would have its desired effect in reducing voter confusion. If anything, given the distorting effects of the disclaimer language and the chilling effect on Plaintiffs' public information campaigns, voter confusion could well *increase*. The Defendants' feeble justification does not meet the rational basis standard, let alone that of a compelling state interest. Certainly, it is insufficient to support dismissal of this substantial First Amendment claim at the pleadings stage.

In addition, the compelled-disclaimer provision is extremely broad and is not narrowly tailored to serve the State's asserted interest. Section 2-19-145 applies to *any* public communication regarding voter registration status, including newspaper articles and social media platforms such as Twitter or Instagram. It would apparently apply to *any message* by Plaintiffs

to communicate with prospective voters about voter registration, regardless of how simple the message may be, even messages simply encouraging people to register and vote, which presents none of the potential dangers that the State cites. Count III easily meets the plausibility standard under *Iqbal/Twombly* and Defendants' motion to dismiss it should be denied.

> **D.** **Count IV Alleges a Valid Claim that the Law Impermissibly Burdens Plaintiffs' First and Fourteenth Amendment Rights to Free Speech and Association.**

Count IV of the Complaint alleges that the Law improperly burdens Plaintiffs' First and Fourteenth Amendment rights by imposing unjustified restrictions on their voter registration activities. As noted above, this claim should be evaluated under the framework developed in two Supreme Court decisions involving the validity of state laws relating to elections and voting, *Anderson v. Celebrezze*, 460 U.S. at 789, and *Burdick v. Takushi*, 504 U.S. at 434. This is indeed how other courts faced with state restrictions on voter registration activity have approached the issue. *See Project Vote*, 455 F. Supp. 2d at 701 (applying *Anderson-Burdick* framework in analysis of Ohio restrictions on participation of compensated workers in voter registration activities); *Cobb*, 447 F. Supp. 2d at 1331 (applying *Anderson-Burdick* framework to Florida law imposing restrictions on activities of organizations engaged in voter registration); *Browning*, 575 F. Supp. 2d at 1319 (accepting that state's restrictions on plaintiffs' delivery of voter registration applications should be evaluated as an election regulation under the *Anderson-Burdick* standard); *Ass'n of Cmty. Orgs. for Reform Now v. Cox*, No. 1:06-CV-1891-JTC, 2006 WL 6866680, at \*4 (N.D. Ga. Sept. 28, 2006) (applying *Anderson-Burdick* framework to analysis of Georgia regulation on third-party voter registration groups' collection of voter registration applications).

Under the *Anderson–Burdick* framework, courts apply a flexible standard of review, depending on the strength of the state's interests and the extent of the burden imposed on the

Plaintiffs' rights. The Court must first assess the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789. The Court then must weigh that asserted injury against "the precise interests put forward by the State as justifications for the burden imposed by its rule," examining not only "the legitimacy and strength of each of those interests" but also "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* If the burden imposed by the state regulation is severe, the Court should apply strict scrutiny, under which the State will have to demonstrate that the Law is narrowly drawn to advance a compelling state interest. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 668 (1966). If the burden is substantial, but not severe, the Court must weigh the relative strength of the State's interests and the burden imposed on Plaintiffs' rights. *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). If the restriction does not even impose a substantial burden on the plaintiffs' rights, then a rational basis test may be appropriate. *MacDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807 (1969).

Here, the Law imposes severe burdens on Plaintiffs' ability to engage in their constitutionally-protected voter registration activity. The requirements of Section 2-2-142, including the required advance notice to the state of any voter registration activity and the requirement that all volunteers first undergo state-mandated training, make it difficult if not impossible for Plaintiffs to engage in voter registration opportunities on short notice or without substantial advance planning, and will inevitably decrease the extent of the voter registration that Plaintiffs can do. The civil penalties authorized by Section 2-2-143 for the submission of "incomplete" applications are an existential threat to organizations that operate on limited budgets, and penalize large-scale voter registration efforts, regardless of how careful they may

28

be, by imposing penalties on the absolute number of "incomplete" applications regardless of how low an error rate they may have, which can have a devastating impact on organizations such as Plaintiffs' which conduct year-round, state-wide voter registration activities. The penalties also unfairly penalize Plaintiffs for submitting "incomplete" applications even though, as the Complaint alleges, under state law Plaintiffs are required to submit any application form that they receive, with limited exceptions, "incomplete" or not. The disclaimer mandated by Section 2-19-145 will undermine the credibility of Plaintiffs' message as they reach out to potential voters, and will force Plaintiffs to alter their many and diverse forms of communication concerning "voter registration status," imposing additional costs on Plaintiffs' efforts to reach voters. Indeed, Plaintiffs aver in their Complaint that, as a result of the Law's unnecessary barriers, they will have to significantly curtail or halt voter registration altogether. Compl. ¶¶ 19, 21, 23, 24–25. All of these allegations must be accepted as true for purposes of this Motion.

At the appropriate time, the Court will be required to assess the "precise interests put forward by the State as justification for the burdens imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiffs' rights." *Burdick*, 504 U.S. at 434. The *Anderson-Burdick* test demands development of an appropriate factual record on both the extent of the burden imposed and the strength of the state interest, and is singularly inappropriate for resolution on a motion to dismiss. *See generally Hindel v. Husted*, 875 F.3d 344, 347, 349 (6th Cir. 2017) (holding that district court erred in making a fact-specific determination on the pleadings alone that plaintiffs' proposed reasonable accommodation under the Americans with Disabilities Act would fundamentally alter Ohio's voting system). Defendants have not cited a single case where such complex, fact-based issues were decided by way of a motion to dismiss.

Perhaps recognizing this absence of authority in their Motion to Dismiss, Defendants do not attempt to justify any of the burdens imposed by the Law with a precise explanation of even an asserted rational basis, let alone a legitimate or compelling state interest. Rather they limit their 12(b)(6) challenge to Count IV to two points, each of which has been addressed in connection with other claims above. First, they assert again that Plaintiffs, as organizations, do not have any right to vote and therefore do not have standing to assert the claims advanced here. Defs.' Mem. at 19. But as explained above, Plaintiffs' First Amendment speech and association rights are at issue here, and give them standing to challenge the burdens that the Law imposes on their voter registration activity. Second, Defendants argue that Plaintiffs "do not even define the First Amendment rights they claim they are deprived by the Act." *Id*. As discussed at length above, the detailed factual allegations of the Complaint, setting forth with specificity the activities, interactions, and conversations that Plaintiffs participate in have been consistently recognized as core First Amendment protected speech and associational conduct.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. If this Court should grant Defendants' Motion, in whole or in part, Plaintiffs request leave to file an Amended Complaint.

June 20, 2019                    Respectfully submitted,

                                 */s/ Ira M. Feinberg*

                                 IRA M. FEINBERG *
                                 HOGAN LOVELLS US LLP
                                 390 Madison Avenue
                                 New York, NY 10017
                                 (212) 918-3000
                                 ira.feinberg@hoganlovells.com

                                 TAYLOR A. CATES, BPR No. 20006
                                 BURCH, PORTER, & JOHNSON, PLLC
                                 130 N. Court Avenue
                                 Memphis, TN 38103
                                 (901) 524-5165
                                 tacates@bpjlaw.com

                                 JON GREENBAUM *
                                 EZRA D. ROSENBERG *
                                 JULIE HOUK *
                                 POOJA CHAUDHURI *
                                 LAWYERS' COMMITTEE FOR CIVIL
                                 RIGHTS UNDER LAW
                                 1500 K Street, NW, Ste. 900
                                 Washington, D.C. 20005
                                 (202) 662-8600
                                 erosenberg@lawyerscommittee.org
                                 pchaudhuri@lawyerscommittee.org

                                 ALLISON M. RYAN *
                                 HOGAN LOVELLS US LLP
                                 555 Thirteenth Street, NW
                                 Washington, DC  20004-1109
                                 (202) 637-5600
                                 allison.holt@hoganlovells.com

                                 YAEL BROMBERG *
                                 BROMBERG LAW LLC
                                 The Andrew Goodman Foundation
                                 10 Mountainview Road
                                 Upper Saddle River, NJ 07458
                                 (202) 995-1808
                                 yaelbromberglaw@gmail.com

DANIEL AYOADE YOON, BPR No.
028798
2004 8th Ave S
Nashville, TN 37204
(615) 541-5141
danielayoadeyoon@gmail.com

\* Admitted to appear *pro hac vice*

*Counsel for the Tennessee State Conference of the N.A.A.C.P., Democracy Nashville– Democratic Communities, The Equity Alliance, and The Andrew Goodman Foundation*

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss has been served via the Court's electronic case filing system to:

ALEXANDER S. RIEGER
Tennessee Attorney General's Office
Assistant Attorney General
Public Interest Division
War Memorial Building, 3rd Floor
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
alex.rieger@ag.tn.gov

on this 20th day of June, 2019.

*/s/ Ira M. Feinberg*
IRA M. FEINBERG
HOGAN LOVELLS US LLP