IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE STATE CONFERENCE ) <br> OF THE N.A.A.C.P., DEMOCRACY ) <br> NASHVILLE-DEMOCRATIC ) <br> COMMUNITIES, THE EQUITY ) <br> ALLIANCE, and ANDREW ) <br> GOODMAN FOUNDATION, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TRE HARGETT, in his official capacity ) <br> as Secretary of State of the State of ) <br> Tennessee, MARK GOINS, in his ) <br> official capacity as Coordinator of ) <br> Elections for the State of Tennessee, ) <br> HERBERT SLATERY III, in his official ) <br> Capacity as Attorney General of the State ) <br> of Tennessee, the STATE ELECTION ) <br> COMMISSION, and DONNA ) <br> BARRETT, JUDY BLACKBURN, ) <br> GREG DUCKETT, MIKE ) <br> MCDONALD, JIMMY WALLACE, ) <br> TOM WHEELER, and KENT ) <br> YOUNCE, in their official capacities as ) <br> members of the State Election ) <br> Commission, ) <br> ) <br> Defendants. ) | Case No. 3:19-CV-00365 <br> Judge Aleta A. Trauger |

### REPLY IN SUPPORT OF THE MOTION TO DISMISS

In their response to the Motion to Dismiss, Plaintiffs complain that the training requirements, advance notice requirement, the disclaimer requirement, and the penalties for submitting incomplete voter registration applications will force Plaintiffs "to cut back substantially or terminate their voter registration activity" in favor of "activities that are planned and organized well in advance." (DE 31, p. 10). Plaintiffs neglect that individuals and organizations who take on the task of collecting voter registration forms are taking on an important responsibility. When

1

a person or group accepts a registration form from an individual, they become the middle-man to make sure that application is turned in to the appropriate election official to be processed so the applicant can vote. The consequences of failing to do so properly are dire. Voter registration organizations that mail forms late may disenfranchise voters. As may registration drives that do not follow the rules that are required of any Tennessee citizen. For example, if a prospective voter turns in an incomplete form that is insufficient to register them to vote, they might believe that they are properly registered. Rather than allow a voter registration organization to negligently disenfranchise a prospective voter, the Act requires training and penalizes organizations that repeatedly fail to comply with rules designed to ensure that voter registration is done properly.

Plaintiffs then raise a host of hypotheticals testing the ordinary meaning of words as simple as "incomplete," "paid," and "unpaid." (DE 31, p. 11).[1] They argue that they are unsure of whether a communication that urges people to register to vote would constitute a communication about "voter registration status." But these hypotheticals are insufficient—almost all statutes are "susceptible to clever hypotheticals testing its reach." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 251 (6th Cir. 2018). Requiring perfect clarity is not the constitutional test. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). And if Plaintiffs require assistance, they can avail themselves of the trainings required by the Act or participate in the rulemaking process. Pub. Ch. 250, §§ 1-2.

Plaintiffs also assert that the vagueness standard should be different because the Act purportedly chills conduct protected by the First Amendment. How so? A factual disclaimer is not political speech and does not require strict scrutiny. *Discount Tobacco City & Lottery, Inc. v, U.S.*, 674 F.3d 509, 554 (6th Cir. 2012). Further, the Act does not implicate protected speech or

---

[1] For the record, "incomplete" as used by the Act means "any application that lacks the applicant's name, residential address, date of birth, declaration of eligibility, or signature. Pub. Ch. 250, § 2.

2

association. It permits Tennessee citizens to band together, register to vote, and vote on issues important to them the same way as before the Act. It merely requires that voter registration organizations—that assume the great responsibility of serving as a middle-man for voter registration forms—undergo training and ensure that they obey Tennessee law. Plaintiffs, who cannot vote, lack standing to assert the right to vote, and as the Act does not implicate protected speech or association, strict scrutiny is not the applicable constitutional test.

Plaintiffs strain to apply *Meyer v. Grant*, 486 U.S. 414 (1988), and *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182 (1999), to avail themselves of strict scrutiny review, which is typically strict in theory, fatal in fact. (DE 31, p. 9, 10). But *Meyer* and *Buckley* simply do not apply here. As noted by the Supreme Court in *Buckley v. Am. Const. Law Found., Inc.*, for *Meyer* to apply, the restrictions in question must significantly inhibit communication with voters against proposed political change." 525 U.S. 182, 192 (1999). In *Meyer*, the Supreme Court struck down a law forbidding payment of circulators of initiative proposals. The Supreme Court found that circulating such a petition "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Meyer*, 486 U.S. at 421.

Here, the Act does not inhibit communication or a discussion of a political issue—it does not exist in the sphere of political association and speech but in voter registration and election regulation. Collecting a voter registration form in this context is neither speech nor association in the same way that signing a petition seeking pollical change is. *Meyer* and *Buckley* thus do not apply, and neither does strict scrutiny

Plaintiffs also attempt to use their Response to flesh out the Complaint's missing detail on their First Amendment claims. (DE 31, p. 37). But their Response is not an amendment to the Complaint. The Complaint is tested upon its face, and the face of the Complaint fails to specify

3

that the First Amendment rights allegedly violated are "protected speech" and "associational conduct" as they now argue. (DE 31, p. 37). Counts II and IV of the Complaint do not define the First Amendment rights infringed.[2] They should be dismissed as failing to satisfy the *Twombly* pleading standard.

There has been no threatened enforcement of the Act, nor have Plaintiffs identified an imminent harm. The Act could not possibly chill any First Amendment right available to (or plead adequately by) Plaintiffs, and thus the Complaint is neither ripe nor justiciable. Plaintiffs are jumping the gun until they see precisely how the Act will be enforced and what will be included in the promulgated rules.

For these reasons, as well as the reasons explained in greater detail by the initial motion to dismiss, Plaintiffs' Complaint should be dismissed.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

JANET M. KLEINFELTER
Deputy Attorney General

/s/Alexander S. Rieger
ALEXANDER S. RIEGER
KELLEY. L. GROOVER
Assistant Attorneys General
Public Interest Division
War Memorial Bldg, 3rd Floor
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
alex.rieger@ag.tn.gov

---

[2] While Count IV uses the term "in connection with the fundamental right to vote," (DE 1, p. 36), Plaintiffs, as organizations, do not enjoy that right and lack standing to assert a claim involving it. Should the Complaint actually refer to another unidentified right protected by the First Amendment, Plaintiffs have not plead so with specificity.

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing documents have been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

TAYLOR A. CATES
BURCH, PORTER, & JOHNSON, PLLC
130 N. Court Avenue
Memphis, TN 38103
(901) 524-5165
tacates@bpjlaw.com
wirvine@bpjlaw.com

JON GREENBAUM, EZRA D. ROSENBERG,
JULIE HOUK, POOJA CHAUDHURI
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

IRA M. FEINBERG
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3509
ira.feinberg@hoganlovells.com

DANIEL AYOADE YOON, BPR No. 028798
2004 8th Ave. S.
Nashville, TN 37204
(615) 541-5141
danielayoadeyoon@gmail.com

ALLISON M. RYAN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5600
allison.holt@hoganlovells.com

YAEL BROMBERG
BROMBERG LAW LLC
The Andrew Goodman Foundation
10 Mountainview Road
Upper Saddle River, NJ 07458
(202) 995-1808
yaelbromberglaw@gmail.com

on this 3rd day of June, 2019.

/s/Alexander S. Rieger
ALEXANDER S. RIEGER
Assistant Attorney General