IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE STATE CONFERENCE OF THE N.A.A.C.P., DEMOCRACY NASHVILLE-DEMOCRATIC COMMUNITIES, THE EQUITY ALLIANCE, and THE ANDREW GOODMAN FOUNDATION,<br><br>        Plaintiffs,<br><br>v.<br><br>TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, HERBERT SLATERY III, in his official capacity as Attorney General of the State of Tennessee, the STATE ELECTION COMMISSION, and DONNA BARRETT, JUDY BLACKBURN, GREG DUCKETT, MIKE MCDONALD, JIMMY WALLACE, TOM WHEELER, and KENT YOUNCE, in their official capacities as members of the State Election Commission,<br><br>        Defendants. | Case No. 3:19-cv-00365<br>Judge Aleta A. Trauger |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS ......... 2

   A.   The Complaint Is Justiciable .................................................................................... 2

   B.   Plaintiffs Are Likely To Prevail On Their Claims .................................................... 6

      1.   Count I—Vagueness ...................................................................................... 8

      2.   Counts II and IV—Burdens on First and Fourteenth Amendment Right to Engage in Expressive and Associational Activity ................................................................. 8

      3.   Count III—The Compelled Disclaimer ........................................................ 9

II.  THE EQUITIES FAVOR ISSUANCE OF THE INJUNCTION .......................................... 10

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ass'n of People with Disabilities v. Herrera*,
  690 F. Supp. 2d 1183 (D.N.M. 2010) ...................................................................................11

*Anderson v. Celebreeze*,
  460 U.S. 780 (1983)..................................................................................................................8

*Burdick v. Takushi*,
  504 U.S. 428 (1992)..................................................................................................................8

*Common Cause Ind. v. Lawson*,
  Nos. 18-2491 & 18-2492, 2019 WL 4022177 (7th Cir. Aug. 27, 2019) ...................................6

*Cooper v. Harris*,
  137 S. Ct. 1455 (2017)............................................................................................................11

*Green Party of Tenn. v. Hargett*,
  767 F.3d 533 (6th Cir. 2014) ....................................................................................................4

*League of Women Voters of Fla. v. Browning*,
  575 F. Supp. 2d 1298 (S.D. Fla. 2008) .....................................................................................7

*League of Women Voters of Fla. v. Cobb*,
  447 F. Supp. 2d 1314 (S.D. Fla. 2006) .................................................................................6, 7

*Libertarian Party of Ohio v. Blackwell*,
  462 F.3d 579 (6th Cir. 2006) ....................................................................................................9

*Nat'l Rifle Ass'n of Am. v. Magaw*,
  132 F.3d 272 (6th Cir. 1991) ....................................................................................................4

*Ne. Ohio Coalition for the Homeless v. Husted*,
  837 F. 3d 612 (6th Cir. 2016) ...................................................................................................5

*Obama for Am. v. Husted*,
  697 F. 3d 423 (6th Cir. 2012) .................................................................................................10

*Project Vote v. Blackwell*,
  455 F. Supp. 2d 694 (N.D. Ohio 2006)...........................................................................5, 6, 11

*Summers v. Smart*,
  65 F. Supp. 3d 556 (N.D. Ill. 2014) ........................................................................................11

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
   425 U.S. 748 (1976)............................................................................................................9

*Voting for Am. v. Steen*,
   732 F. 3d 382 (5th Cir. 2013) ............................................................................................6, 7

In their Opposition Brief ("Opp."), Defendants fail to offer any justification for the specific legislative choices that violate Plaintiffs' constitutional rights: not for the Legislature's choice to impose an array of unnecessary burdens on Plaintiffs' voter registration activities, not for its choice to single out "paid" employees for regulation, and not for its choice to threaten severe civil and criminal penalties for failure to meet those burdens. Instead, they rehash at length the same standing and ripeness arguments that they made in their motion to dismiss, and that Plaintiffs have twice demonstrated are baseless. On the merits, they pepper their brief with three principal arguments: (1) Defendants will not enforce the Law's civil sanctions until they promulgate regulations; (2) the Law does not implicate constitutionally protected conduct; and (3) if Plaintiffs want to avoid the Law, they should just stop collecting forms. None of these meritless arguments provides any reason to deny the relief Plaintiffs seek.

Notwithstanding Defendants' declarations, the Law is still effective as of October 1, including the criminal penalties and the mandatory disclaimer requirement which were unaddressed by Defendants. Their present "intent" not to impose civil penalties does not have the force of an order from this Court. Equally important, Defendants' concession that the Law cannot be implemented without regulatory clarification underscores the fundamental vagueness of its provisions and demonstrates the need for immediate injunctive relief. In fact, the regulatory process—which has not begun despite Defendants' argument that there is an immediate need for the Law—will serve to extend the period of uncertainty during which Plaintiffs' constitutional rights are irreparably chilled.

Moreover, Defendants' cavalier attitude toward Plaintiffs' constitutional rights substantiates Plaintiffs' fears. Indeed, at one point, Defendants argue that they do not need even a rational basis for infringing on Plaintiffs' First Amendment rights. But the overwhelming

1

authority, even that relied upon by Defendants, expressly acknowledges that Plaintiffs' activities—which go well beyond the collection of forms—implicate fundamental First Amendment rights and burdens on those rights must be substantially justified. To suggest, as Defendants do, that the remedy is for Plaintiffs to stop engaging in that protected activity heightens the need for an immediate injunction. Defendants should not be allowed to use the club of a vague, overbroad, unnecessarily burdensome, and unjustified law to stop voter registration activity in its tracks.

## I. PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. The Complaint Is Justiciable.

Defendants rest their Opposition, in part, on eight boilerplate declarations from Coordinator Goins and the members of the State Board of Elections, to the effect that they do not "intend" to impose civil penalties on or refer for criminal prosecution any person or organization violating the Law for at least five months, during which time they will attempt to promulgate regulations to implement the Law. In short, Defendants acknowledge that the Law as drafted is not ready for prime time: they cannot enforce it consistently with the Constitution without further clarification, thus buttressing the need for preliminary relief.

Moreover, Defendants ignore that the Law is effective by its own terms as of October 1. Although the Law gives the State Board the discretion whether to impose civil penalties for violation of Section 2-2-143(c)(3), the State Board does not have any power to decide whether a person should be prosecuted criminally for violation of Section 2-2-142 (the pre-registration and training requirements) or Section 2-19-145 (the compelled disclosure requirements). And, even as to civil penalties, the Board members' "intent" not to recommend the imposition of civil penalties does not contain the iron-clad guarantee that this Court's order would. The immediate threat to Plaintiffs remains the same. Why should Plaintiffs be subject to this threat while

2

Defendants spend months figuring out what this ill-conceived Law means and how it is intended to work?

Second, Defendants have already had more than four months to promulgate regulations, and apparently have not even begun the process.[1] During this time, as set forth in their detailed declarations, Plaintiffs have been injured by the uncertainty that is the hallmark of the Law: who is covered; what is covered; what is prohibited; whether they will be able to effectively recruit volunteers; whether they are risking their very existence in light of the penalties. Adding another five months or more to the mix, coupled with no guarantee against the enforcement of any of the provisions of the Law, including those subjecting Plaintiffs to criminal penalties or the mandatory disclaimer requirements, simply extends this period of injury.

Third, the promulgation of regulations will not cure the injuries claimed by Plaintiffs. Regulations cannot eliminate the statutorily-imposed compelled disclosure requirement of Section 2-19-145. Indeed, the Law does not even grant the State Board authority to promulgate regulations implementing that requirement. Regulations also cannot eliminate the singling out of "paid" persons and organizations that employ them as the only group of people governed by the Law. Nor can regulations eliminate the Law's severe criminal and civil penalties.

Defendants further argue that Plaintiffs lack standing because they have not set forth facts indicating that they "intentionally" or "unintentionally" plan on violating the Law. Opp. 9–10.

---

[1] The Law provides that the Coordinator of Elections "may adopt policies or procedures to effectuate the provisions of" Section 2-2-142, *see* Section 2-2-142(e), and "may promulgate rules and procedures to implement the provisions of" Section 2-2-143, *see* Section 2-2-143(f). Defendants declare that they "cannot begin the rulemaking process" to adopt clarifying rules and procedures until the effective date of the Law. *See, e.g.*, Goins Decl. ¶ 7, Dkt. 41-1. Unsurprisingly, they cite no law for this illogical proposition. It begs common sense that agencies charged with implementing regulations for a new law would be prohibited from immediately beginning the process to promulgate regulations so as to be effective on the new law's effective date.

3

This is untrue. Contrary to Defendants' assertions, not only have Plaintiffs averred to their having collected thousands of forms in the past, but their declarations are also replete with examples of how, despite their best efforts, they may inadvertently violate the Law.[2]

Moreover, it is not only the sanctions that may be imposed on them for *violating* the Law that give Plaintiffs standing; it is also the burdens imposed on Plaintiffs if they *comply* with the Law that provide them with standing. This is particularly so when, as here, the challenged statute, if complied with, will chill activity protected by the First Amendment. *See, e.g.*, *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1991) ("Parties not yet affected by the actual enforcement of the statute are allowed to challenge actions under the First Amendment in order to ensure that an overbroad statute does not act to 'chill' the exercise of free speech and expression, a constitutionally protected right.") (quotation omitted). Plaintiffs have "articulated a factual showing of perceptible harm resulting from the state's regulations," *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 544 (6th Cir. 2014) (quotation omitted), and therefore have standing.

Defendants further argue that Plaintiffs have no standing to allege a loss of the right to vote, because organizations cannot vote. Opp. 20. This argument has been categorically rejected by the courts. *See Ne. Ohio Coalition for the Homeless v. Husted*, 837 F. 3d 612, 624 (6th Cir.

---

[2] *See, e.g.*, Sweet-Love Decl. ¶¶ 44, 45, 50, Dkt. 39-2 (erring on side of caution to turn in forms; not possible for local units to know how many applications they might collect at events; collection of hundreds of application forms and registration of thousands of voters); Franklin Decl. ¶¶ 50–52, 54, Dkt. 39-3 (may not be able to provide notice to state regarding impromptu canvassing; unable to know if Law applies to certain activities; may not be able to verify that members of other organizations have completed training); Oliver Decl. ¶¶ 52, 54, 57, 60, Dkt. 39-4 (cannot give advance notice to state; uncertainty as to applicability of law to activities; collection of 35,000 application forms); Goodman Decl. ¶¶ 43, 55, Dkt. 39-5 (difficulties in ascertaining whether forms are "incomplete"; no capacity to monitor all peer-to-peer messages for purposes of compelled disclosure requirement).

4

2016) (organization had standing to challenge law placing new requirements on provisional and absentee ballot voters). As the court explained in *Project Vote v. Blackwell*:

> [T]he Court is satisfied that participation in voter registration implicates a number of both expressive and associational rights which are protected by the First Amendment. These rights belong to—and may be invoked by—not just the voters seeking to register, but by third parties who encourage participation in the political process through increasing voter registration rolls.

455 F. Supp. 2d 694, 700 (N.D. Ohio 2006). The rest of Defendants' arguments against standing can be given short shrift. Neither Plaintiffs' conducting of their own training nor the availability of internet training, Opp. 9, alleviates Plaintiffs' injury. As Plaintiffs' declarations make clear, the state-imposed training interferes with Plaintiffs' culture of volunteerism, central to their ability to register voters on a large scale and on short notice, and elderly volunteers may have difficulty with internet training. Sweet-Love Decl. ¶ 42, Dkt. 39-2; Oliver Decl. ¶ 52, Dkt. 39-4.

Defendants' argument that Plaintiff AGF, on its on-line voter registration look-up site, may refer voters to the Secretary of State website, Opp. 10–11, does not address Plaintiffs' claim as to the actual requirements of Section 2-19-145(c), which requires an affirmative disclaimer for lookup websites. Further, Defendants are silent as to Plaintiffs' standing to challenge the broader disclaimer provisions of Section 2-19-145(a), which is the principal focus of this case. Plaintiffs, in their declarations, lay out various concrete injuries caused by the compelled disclaimer—having to expend additional resources to purchase new merchandise, prepare new written materials, revise or forgo text messages, and redo their websites—which are more than sufficient to give them standing. Sweet-Love Decl. ¶ 53, Dkt. 39-2; Oliver Decl. ¶¶ 68–69, Dkt. 39-4; Franklin Decl. ¶ 58, Dkt. 39-3; Goodman Decl. ¶¶ 51, 53, Dkt. 39-5.

Finally, as Defendants concede, their ripeness defense rises and falls with their standing defense, and thus little more need be said, except to note that their argument that "Plaintiffs' choice to alter their conduct now is just that—their choice," Opp. 11–12, has been repeatedly rejected,

5

most recently by the Seventh Circuit, which analogized a similar claim to a claim that physicians' work in response to a flu outbreak was "voluntary":

> The additional work is certainly done willingly or "voluntarily" but it is not self-inflicted—it is caused by the outbreak. . . . [T]he Organizations have shown that Act 442 will likely create more work for them. This is sufficient not only for causation but for the redressability element of standing, since without Act 442 there will be less drain on their resources.

*Common Cause Ind. v. Lawson*, Nos. 18-2491 & 18-2492, 2019 WL 4022177, at *9 (7th Cir. Aug. 27, 2019).

### B. Plaintiffs Are Likely To Prevail On Their Claims.

Defendants argue that the Law does not affect Plaintiffs' First Amendment rights, because their "activities that are potentially expressive (and thus possibly constitutionally protected) are not burdened by the Act." Opp 11–12. This is not the law. "The interactive nature of voter registration drives is obvious: they convey the message that participation in the political process through voting is important to a democratic society." *Project Vote*, 455 F. Supp. 2d at 706 (ruling that law requiring personal mailing of collected forms implicated First Amendment rights). "Because the collection and submission of voter registration drives is intertwined with speech and association, the question is not whether Plaintiffs' conduct comes within the protections of the First Amendment, but whether Defendants have regulated such conduct in a permissible way." *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1334 (S.D. Fla. 2006) (ruling that law imposing stiff penalties on failure to deliver registration forms violated First Amendment rights). These principles are recognized in the cases cited by Defendants as well. *See Voting for Am., Inc. v. Steen*, 732 F. 3d 382, 389–90 (5th Cir. 2013) (observing that "voter registration drives involve core protected speech" including urging citizens to register, distributing forms, helping applicants fill out forms, and asking for information); *League of Women Voters of Fla. v.*

6

*Browning*, 575 F. Supp. 2d 1298, 1321 (S.D. Fla. 2008) ("Undoubtedly, Plaintiffs' interactions with prospective voters in connection with their solicitation of voter registration applications constitutes constitutionally protected activity.").[3] As set forth in detail in Plaintiffs' declarations, the collection of voter registration forms in Plaintiffs' voter registration activities is inextricably connected with interactive political communication and association.[4]

---

[3] Both *Steen* and *Browning* concerned regulations applicable only to activities after the voter registration forms were filled out. The specific provision of Texas law at issue in *Steen* regulated "volunteer deputy registrars" (VDRs), whose only task was to collect, review, issue receipts, and deliver forms, and it was only this conduct that the Fifth Circuit panel majority held not "inherently expressive." *Steen*, 732 F. 3d at 389. The Court explained, "[w]ith an appropriate division of labor and organizational forethought, no participant in the drive need suffer a detriment of the ability to urge, advocate, interact, or persuade." *Id.* at 390. In contrast, Tennessee's Law is not limited to regulating only the tasks undertaken by Texas's VDRs. Similarly, the court in *Browning* dealt with a statute that had been amended by the legislature in direct response to the injunction issued in *League of Women Voters of Florida v. Cobb*, which had enjoined the prior law for singling out for regulation a group of non-partisan organizations without justification and because the civil sanctions were too severe. 447 F. Supp. 2d at 1339–40. As the *Browning* Court noted, the amended law did "not place any restrictions" on "interactions with prospective voters," and did not "place any restrictions on who is eligible to participate in voter registration drives." 575 F. Supp. 2d at 1321–22. The Law here, of course, does place restrictions on "paid" workers, and does place preconditions on interactions with prospective voters. Plaintiffs disagree with any implication in *Steen* or *Browning* that collection activities can always be isolated from interactive solicitation activities, but in any event, the record in this case demonstrates overwhelmingly that Plaintiffs' expressive activities are inextricably intertwined with their collection of voter registration forms.

[4] *See, e.g.*, Sweet-Love Decl. ¶¶ 15, 21, Dkt. 39-2 ("volunteers and workers . . . knock on people's doors to ask if they are registered to vote and talk to them about the importance of political engagement"; "[v]oter registration is not just about handing someone a form—it facilitates these important conversations about policies and issues that impact the members of our community and happens in tandem with education efforts on general rights and issue advocacy"); Franklin Decl. ¶ 15, Dkt. 39-3 ("During these conversations with the potential applicant, we discussed the importance of voting and involvement in the political process."); Oliver Decl. ¶ 16, Dkt. 39-4 ("We organize our own events around issues that the community cares about, and at these events, we set up voter registration tables. Alternatively, our community partners, including churches across the state, invite us to talk about the importance of voter registration and to help register attendees to vote."); Goodman Decl. ¶¶ 16, 38, Dkt. 39-5 (AGF Ambassadors are involved in "voter registration, voter education, and civic engagement efforts" and "organize a range of voter registration activities including voter registration drives at high-impact events such as freshman orientation or football games, and invite other students to participate as volunteers").

7

### 1. Count I—Vagueness

Defendants' entire response to Plaintiffs' vagueness argument is to list the words and phrases challenged by Plaintiffs as if the fact that the words can be defined in isolation is sufficient to withstand a claim that the words or phrases are vague in context of the Law. Opp. 12–16. Of course, Plaintiffs can use the word "incomplete" in a sentence, but, as explained in Plaintiffs' opening brief, when defined by the word "lacks" and in light of statements by the Law's own sponsors, there is a substantial question as to whether "incomplete" means missing items entirely or containing inaccurate information. Mem. in Support of Plaintiffs' Mot. for Preliminary Injunction ("Mem.") at 21–23, Dkt. 39-1. And as Plaintiffs have already demonstrated at length, *id.* at 18–24, the scope of the statute's terms, in context, is extraordinarily unclear and leaves far too much room for arbitrary and discriminatory enforcement.

### 2. Counts II and IV—Burdens on First and Fourteenth Amendment Right to Engage in Expressive and Associational Activity

Contrary to Defendants' arguments, Opp. 16, 20, Plaintiffs have already explained the basis for their standing, because they both rely on "paid" participants and have members who are "paid" participants (depending on how the term "paid" is construed), Mem. 17–18, and have comprehensively identified the nature of their constitutional rights that are threatened by the Law, *see id.* 16–17, 20–21, 24–32 (explaining scrutiny required by *Anderson v. Celebreeze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992)).

Beyond that, Defendants make no attempt to justify the Law's burdens as required to meet the *Anderson/Burdick* standards. They do not offer any explanation for subjecting only "paid" individuals and organizations employing them to the Law's requirements (indeed, they say that they do not have to provide a "rational basis" for singling them out); they offer no explanation for the draconian level of the civil penalties, which can be imposed in every county in the state or for

8

the need for the specific pre-registration and training requirements. More important, they do not explain why this combination of prohibitions and requirements is justified. *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 595 (6th Cir. 2006) (reversing district court's judgment when "combination" of voting laws "imposes a severe burden," even if, when "[v]iewed individually," separate "requirements may only impose a reasonable burden on constitutional rights").

### 3. Count III—The Compelled Disclaimer

Defendants argue that "a factual disclaimer is not political speech and does not require strict scrutiny," relying on the wholly inapplicable *Discount Tobacco City & Lottery, Inc.*, 674 F.3d 509 (6th Cir. 2012), a commercial speech case. Opp. 14, 17. This argument is frivolous. Commercial speech jurisprudence concerns government regulations on commercial activity such as advertising or consumer products. Commercial speech is "speech which does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976). As discussed above, the statements about voter registration and voting are core political speech.

Unable to meet the applicable strict scrutiny standard, Defendants purport to offer a rational basis for the disclosure requirement: that it is meant to safeguard against voters thinking that they are registered to vote because they relied on information from a voter registration organization. Opp. 18–19. But rational basis is not the applicable standard here, and Defendants' asserted rationale cannot justify the broad sweep of the Law or address the overbreadth problems of this provision—which, on its face is unconnected with any individual's status or submission of a voter registration application—exacerbated by the threat of criminal prosecution.

9

## II. THE EQUITIES FAVOR ISSUANCE OF THE INJUNCTION.

The balance of the equities in this case is governed by the standard set out in *Obama for America v. Husted*, which recognizes that an impermissible "restriction on the fundamental right to vote" per se "constitutes irreparable injury." 697 F. 3d 423, 436 (6th Cir. 2012). Nowhere do Defendants challenge the facts laid out in Plaintiffs' declarations as to the severity and irreparability of their injuries. Instead, Defendants cynically argue that if Plaintiffs wish to avoid further harm, they should just stop collecting registration forms. Opp. 22. But the Law does not apply only to the collection of forms. It applies to "voter registration drives." As discussed above, the solicitation of registrants and the collection of their forms are part of the same interactive process. Defendants' end-game appears to be to make it so difficult for third-party organizations to conduct voter registration activities that they will simply opt out of doing so. That is hardly a defense to Plaintiffs' application request for an injunction.

As to the public interest, Defendants argue that the issuance of an injunction would be "an affront to [Tennessee's] sovereignty." Opp. 24. However, the authority of this Court under the Supremacy Clause to preliminarily enjoin potentially unconstitutional action by a state is settled, including in voting rights cases. *See, e.g.*, *Cooper v. Harris,* 137 S. Ct. 1455, 1465–66 (2017) (affirming district court's voiding of North Carolina redistricting plan).

Defendants refuse to acknowledge the full impact of the Law on Plaintiffs' voter registration activities. They contend that the Law "merely" requires Plaintiffs to "undergo training and ensure that they obey Tennessee law," causing only "minimal inconvenience to voter registration drives that collect voter registration forms." Opp. 24. But the Law does much more than that. It threatens Plaintiffs with criminal prosecution (a threat which is not diminished simply because the present members of the State Board say they do not intend to refer matters); threatens

10

Plaintiffs with severe civil sanctions (at best delayed for a few months); has a chilling effect on Plaintiffs' present planning for registration activities, including having to decide whether to reduce or even terminate their voter registration efforts; and will raise serious obstacles to last-minute registration efforts. Mem. 37–39. *See Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1219–20 (D.N.M. 2010) (court "must address the burdens the law poses collectively," as it cannot properly "parse out" the requirements that "in the aggregate impose an undue burden on the Plaintiffs' First Amendment rights"); *Summers v. Smart*, 65 F. Supp. 3d 556, 565 (N.D. Ill. 2014) ("[i]n the aggregate" the "challenged provisions are more than mere neutral ballot-administration efforts").

Finally, Defendants stress the need for immediate implementation of the Law, because of the alleged potential harm to prospective voters who rely on organizations like Plaintiffs to deliver their applications in a timely fashion. Opp. 24. But at the same time, Defendants admit that the Law is not ready for implementation for at least five months, and they have not taken the first steps to clarify it. Despite their ostensible concern for voters' rights, Defendants never explain why the specific provisions of the Law challenged by Plaintiffs are necessary to protect those rights. *See Project Vote*, 455 F. Supp. 2d at 705–06 ("Although the State has articulated certain legitimate interests when considered in the abstract, the Court fails to find that the direct return provision serves *any* of them."). [5]

Indeed, nowhere do Defendants explain why it is necessary to implement a law immediately that singles out, without any justification, "paid" individuals and organizations who employ them for regulation; why the equities favor the immediate implementation of a specific,

---

[5] The primary example Defendants give for the need for the Law is to ensure the "timely" delivery of forms so they are not "late." Opp. 24. But Plaintiffs are not challenging the requirement in the Law that forms be delivered within ten days of collection.

11

unnecessary, and burdensome pre-registration and training regimen that will impede the registration of the very persons whose interests Defendants purport to protect; and why Plaintiffs should be subject to the chilling effect of threatened criminal sanctions and potentially bankrupting civil penalties that have forced them to consider stopping the very activity that Defendants acknowledge is in the public good.

## CONCLUSION

This Court should grant Plaintiffs' motion and enjoin Defendants from enforcing the challenged provisions of the Law pending a final ruling on the merits.

Dated: September 6, 2019

Respectfully submitted,

*/s/ Taylor A. Cates*
TAYLOR A. CATES, BPR No. 20006
WILLIAM D. IRVINE JR., BPR No. 35193
BURCH, PORTER, & JOHNSON, PLLC
130 N. Court Avenue
Memphis, TN 38103
(901) 524-5165
tacates@bpjlaw.com
wirvine@bpjlaw.com

JON GREENBAUM*
EZRA D. ROSENBERG*
JULIE HOUK*
POOJA CHAUDHURI*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

IRA M. FEINBERG*
HOGAN LOVELLS US LLP
390 Madison Avenue

New York, NY 10017
(212) 918-3509
ira.feinberg@hoganlovells.com

ALLISON M. RYAN*
CAROLYN A. DELONE**
KYLE M. DRUDING**
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5600
allison.holt@hoganlovells.com
carrie.delone@hoganlovells.com
kyle.druding@hoganlovells.com

YAEL BROMBERG*
BROMBERG LAW LLC
The Andrew Goodman Foundation
10 Mountainview Road
Upper Saddle River, NJ 07458
(201) 995-1808
yaelbromberglaw@gmail.com

DANIEL AYOADE YOON, BPR No. 028798
2004 8th Ave S
Nashville, TN 37204
(615) 541-5141
danielayoadeyoon@gmail.com

*admitted pro hac vice
**pro hac vice pending

*Counsel for the Tennessee State Conference of the N.A.A.C.P., Democracy Nashville– Democratic Communities, the Equity Alliance, and the Andrew Goodman Foundation*

13

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a copy of the foregoing document has been served via the Court's CM/ECF electronic case filing system to:

ALEXANDER S. RIEGER
Tennessee Attorney General's Office
Assistant Attorney General
Public Interest Division
War Memorial Building, 3rd Floor
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
alex.rieger@ag.tn.gov

KELLEY L. GROOVER
Tennessee Attorney General's Office
Assistant Attorney General
Public Interest Division
War Memorial Building, 3rd Floor
P.O. Box 20207
Nashville, TN 37202
(615) 741-2408
kelley.groover@ag.tn.gov

This 6th day of September, 2019.

/s/ *Taylor A. Cates*
TAYLOR A. CATES