# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE STATE CONFERENCE OF THE N.A.A.C.P., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, *et al.*, <br><br> *Defendants*. <br><br> ——————————————————— <br><br> LEAGUE OF WOMEN VOTERS OF TENNESSEE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee *et al.*, <br><br> *Defendants*. | Civil Nos. 3:19-cv-365; 3:19-cv-385 <br> Judge Aleta A. Trauger |

**LEAGUE OF WOMEN VOTERS OF TENNESSEE–PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiffs League of Women Voters of Tennessee, League of Women Voters Tennessee Education Fund (collectively, "the League"), American Muslim Advisory Council ("AMAC"), Mid-South Peace & Justice Center ("MSPJC"), Rock the Vote, Memphis Central Labor Council ("MCLC"), and HeadCount respectfully submit this memorandum in support of their motion under 42 U.S.C. § 1988 and other authority for an award of attorneys' fees, costs, and expenses.

## FACTUAL AND PROCEDURAL BACKGROUND

As the Court is aware, on April 29, 2019, the Tennessee General Assembly passed H.B. 1079 (hereinafter, the "Act"), which imposed a host of regulations on organizations that conducted voter registration activities within the state, including Plaintiffs. *See* Mem. Den. Mot. to Dismiss at 5, No. 19-cv-385, ECF No. 57.[1] On May 2, 2019, Governor Bill Lee signed the Act into law. *Id.* Because of the grave threat the Act posed to the voter registration activities of Plaintiffs and the right to vote of the people of Tennessee, including members of the Plaintiff organizations, just one week later on May 9, 2019, Plaintiffs brought suit challenging the Act as a violation of numerous provisions of the U.S. Constitution. As Plaintiffs also contended that the Act violated the National Voter Registration Act, they also sent a notice letter to Defendant Hargett which is a prerequisite to suit under the NVRA, *see* 52 U.S.C. § 20510(b), the same day. Another group of Plaintiffs, represented by other counsel, also sued challenging the Act under similar, but not identical, theories.

On June 21, 2019, Plaintiffs amended their Complaint, adding MCLC and HeadCount as parties. Am. Compl., No. 19-cv-385, ECF No. 37. Defendants moved to dismiss the Amended Complaint on July 5, 2019, Defs.' Mot. to Dismiss, No. 19-cv-385, ECF No. 39, which Plaintiffs opposed on July 19, 2019, Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 44. Upon receiving leave of the Court to file an oversized brief due to the complexity of the issues and the diverse factual circumstances of the numerous Plaintiff organizations, Plaintiffs sought a preliminary injunction on August 30, 2019, just over a month before the challenged enactment was to take effect. Mot. for Prelim. Inj., No. 19-cv-835, ECF No. 54.

---

[1] As much of the procedural history of this case occurred before the action filed by the instant Plaintiffs was consolidated with that filed by co-Plaintiffs under No. 19-cv-365, Plaintiffs indicate their original case number for clarity when referring to docket entries that pre-date consolidation.

2

On September 9, 2019, this Court denied Defendants' Motion to Dismiss as to all counts in a comprehensive opinion. Mem. Den. Mot. to Dismiss, No. 19-cv-385, ECF No. 57. The same day, Defendants filed their opposition to Plaintiffs' Motion for a Preliminary Injunction. Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj., No. 19-cv-385, ECF No. 59.

On September 12, 2019, this Court granted Plaintiffs' Motion for a Preliminary Injunction on all grounds in a robust opinion that made clear that Plaintiffs were likely to succeed on all of their claims and enjoined the operation of each of the challenged provisions. Opinion, No. 19-cv-385, ECF No. 60. As the preliminary injunction issued before the effective date of the Act, due to their success on this motion, Plaintiffs did not have to comply with the challenged provisions and were able to cease diverting time and resources toward compliance in anticipation of the law going into effect. Thereafter, counsel for the parties met and conferred to come to a proposed joint case management order, which was submitted to the Court prior to the November 4, 2019 case management conference. At the hearing, the Court heard from parties on the likely scope of discovery, scheduling, dispositive motions, and on the Court's own direction, consolidation. On November 5, 2019, the Court ordered that the case brought by the instant Plaintiffs (No. 19-cv-385) and the case brought by the NAACP-Tennessee Plaintiffs (No. 19-cv-365) were consolidated for all purposes, including trial, but that the Plaintiff groups would be permitted to file separate dispositive motions. Order, No. 19-cv-385, ECF No. 70.

With the case management order entered by the Court and schedule set, the two Plaintiff groups coordinated in order not to duplicate discovery efforts and began to proceed to discovery, submitting interrogatories and requests for production to the state, and propounding Rule 45 subpoenas to county elections officials who handle voter registration records directly. On December 5, 2019, in compliance with the Court's schedule to amend pleadings, Plaintiffs moved

to file an amended complaint, adding the National Voter Registration Act claims of which they had provided notice to the state in May 2019. The Court granted the motion the same day. Order, No. 19-cv-365, ECF No. 74. Defendants answered on December 19, 2019. Throughout December 2019, and January and February 2020, Plaintiffs continued to pursue discovery, including responding to motions to quash filed in this Court and in the other federal districts in Tennessee.

On February 14, 2020, Defendants Hargett and Goins jointly wrote a letter to the Tennessee General Assembly urging passage of SB 2298/HB2363, which would repeal each of the challenged provisions and implement other procedures related to voter registration. In the letter, Defendants Hargett and Goins indicated the Act had been challenged in federal court and, "[t]he federal court issued a preliminary injunction against some of the provisions in [the Act]." Ex. 1 at 1. Defendants Hargett and Goins stated that "SB 2298/HB2363 is being brought to provide reasonable protections within the confines of the federal court's ruling." *Id.* The bill repealing the challenged provisions of the Act passed the House as amended on March 9, 2020, and the Senate on March 19, 2020. *See HB2363 Bill History*, Tenn. General Assembly http://wapp.capitol.tn.gov/apps/Billinfo/default.aspx?BillNumber=HB2363&ga=111 (last visited Dec. 12, 2020). The Governor signed the new law on April 2, 2020, and it went into effect immediately, *id.* – repealing all the provisions challenged by Plaintiffs.

Beginning in May 2020, Plaintiffs conferred with Defendants regarding the impact of the new law on the current case, but did not continue to pursue their discovery requests and told all third-party subpoena recipients that they could hold off on responding to the subpoenas. Due to the disruptive impacts of the COVID-19 pandemic, Defendants did not respond to Plaintiffs overtures to resolve the case throughout the spring and summer. In September 2020, Plaintiffs proposed a stipulation for voluntary dismissal to Defendants. In mid-October 2020, Defendants

responded to Plaintiffs, and the parties agreed upon the stipulation for voluntary dismissal, which was then filed with this Court on October 26, 2020. Stipulation of Voluntary Dismissal, No. 19-cv-365, ECF No. 97. This Court ordered the dismissal that day. Order, No. 19-cv-365, ECF No. 98. This motion for fees, and that of the other Plaintiff group, now follow.

## ARGUMENT

This Court is empowered to award reasonable attorneys' fees and expenses to prevailing parties in civil-rights actions brought under 42 U.S.C. § 1983, under which Plaintiffs pursued their claims in this case. *See* 42 U.S.C. § 1988(b). Prevailing parties are those who have "been awarded some relief by the court," namely a judgment that caused a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603, 604 (2001). Plaintiffs here meet that definition through the preliminary injunction obtained and preserved throughout the pendency of the litigation. Accordingly, absent "special circumstances" that would render such an award "unjust," a prevailing party under 42 U.S.C. § 1988 "must" be awarded attorneys' fees and expenses. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760–61 (1989) (holding that "in absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal quotation marks omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435.

There is good reason for awarding fully compensatory fees to prevailing plaintiffs in civil-rights lawsuits: the award of fully compensatory fees is necessary to ensure adequate access to the justice system. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id*. at 429 (quoting H.R. Rep. No. 94-1558, at 1 (1976)); *see*

*also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010) ("Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights."). The continued vitality of such access requires that the attorneys who risk undertaking these cases be fully compensated for their services. As a result, a reasonable fee under § 1988 is "one that grants the successful civil-rights plaintiff a 'fully compensatory fee,' comparable to what 'is traditional with attorneys compensated by a fee-paying client.'" *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (internal citations omitted).

This Court has substantial discretion in determining the reasonable fee. "It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).

### I. Plaintiffs Are Prevailing Parties Under 42 U.S.C. § 1988 Because They Obtained Material, Enduring, Court-Ordered Relief that They Preserved Throughout the Case and to the Present Day.

In an action to enforce a provision of 42 U.S.C. § 1983, the court "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" of bringing the action. 42 U.S.C. § 1988(b). In defining who qualifies as a prevailing party, the Supreme Court has held that this encompasses a party "who has been awarded some relief by the court"—specifically, when "enforceable judgments on the merits and court-ordered consent decrees create [a] 'material alteration of the legal relationship of the parties.'" *Buckhannon Bd.*, 532 U.S. at 603, 604. Because Plaintiffs obtained a preliminary injunction enjoining all of the provisions of the law they challenged, preserved that ruling during the litigation, and dismissed this case only after the Tennessee Legislature repealed the challenged provisions due to the injunction, they are prevailing parties for the whole of this case.

### A. The Court's Preliminary Injunction Provided Plaintiffs Full, Affirmative Relief which Created a Material, Enduring Change Between the Parties.

When a plaintiff receives a preliminary injunction but the case does not proceed to a final judgment on the merits, the Sixth Circuit has required a "contextual and case-specific inquiry" to determine whether the plaintiff qualifies as a prevailing party. *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010). Recently, the Sixth Circuit has more closely described the elements meriting prevailing-party status in the preliminary-injunction context: when there is a "court-ordered, material, enduring change in the legal relationship between the parties." *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). In terms of materiality, the change "must have directly benefited plaintiffs by altering how [the defendant] treated them," and in terms of endurance, it "must have been irrevocable." *Id.*

Plaintiffs meet these requirements. The Court's preliminary injunction was court-ordered relief recognizing Plaintiffs' likelihood of success on the merits, afforded all of the relief requested by enjoining all challenged aspects of the law going into a major election cycle, and created enduring relief which was never overturned and which caused the challenged provisions to be repealed by the Tennessee Legislature, at the behest of the Defendants. Several cases from the Sixth Circuit, this Court, and others involving similar voting rights issues affirm the propriety of prevailing-party status here, including in cases where legislative or third-party action ultimately moots a claim with a preliminary injunction still in effect.

In *Planned Parenthood S.W. Ohio Region v. DeWine* ("*PPSWO*"), the plaintiff challenged an Ohio statute regulating a drug used for medical induction of abortion and obtained a preliminary injunction against the law as to certain circumstances. 931 F.3d 530 (6th Cir. 2019). Before any final merits ruling, however, actions by the non-party FDA "mooted the dispute." *Id.* at 534.

Despite the fact that the plaintiff did not achieve all the relief it sought and its win was mooted by the FDA's action, the court affirmed prevailing party status because the plaintiff "succeeded on a significant issue such that it achieved some benefit," did so based on likelihood of success on the merits, and achieved "a lasting change in the legal relationship between the parties." *Id.* at 542.

Other courts have awarded prevailing party status and fees to plaintiffs in similar cases where they obtained preliminary relief that lasted until legislative changes removed at least some of the challenged provisions. In *Thomas v. Long*, this Court held that prevailing party status was merited where "injunctive relief remained substantially in effect for as long as it was needed—that is, until Chapter 438 changed the law in the plaintiffs' favor." No. 3:17-CV-00005, 2020 WL 5530232, at *8 (M.D. Tenn. Sept. 15, 2020). And in a case challenging a similar restrictive voter registration drive law to the one here, the court awarded attorneys' fees where it had granted a preliminary injunction but the case was later mooted by the legislature repealing the previous restrictions and enacting new ones, even though the plaintiffs then challenged the new restrictions. *League of Women Voters of Fla. v. Browning* ("*LWV Fla.*"), No. 06-21265-CIV, 2008 WL 5733166, at *1 (S.D. Fla. Dec. 4, 2008), *report and recommendation adopted as modified*, 2009 WL 701107 (S.D. Fla. Mar. 16, 2009). It explained that "the preliminary injunction remained in effect until it was mooted and was never overturned" and that this created a "material change in the legal relationship" between the parties and that the amended law "addressed many of the legal flaws alleged by the plaintiffs." *Id.* at *6–*7. Similarly, in *Michigan State A. Philip Randolph Institute v. Johnson* ("*Michigan APRI*"), the plaintiffs won a preliminary injunction against a law eliminating straight ticket voting—an order that remained in effect for the 2016–2017 election cycles until Michigan passed a referendum in 2018 restoring straight ticket voting resulting in dismissal of the lawsuit as moot. No. 16-CV-11844, 2019 WL 2314861, at *1 (E.D. Mich. May

31, 2019). The district court held that the plaintiffs were prevailing parties based on their preliminary injunction win, because the ruling "was never reversed on the merits" and the plaintiffs did not receive "an unfavorable outcome in the end." *Id.* at *2.

Even in cases where a preliminary injunction provides a benefit for only a finite amount of time and legislative action moots the case without affording the full relief ultimately sought, this Court has found the relief sufficiently material and enduring to merit prevailing party status. In *Occupy Nashville v. Haslam*, this Court granted a temporary restraining order and converted it into a preliminary injunction, preventing police from arresting protestors who occupied the legislative plaza overnight. No. 3:11-CV-01037, 2015 WL 4727097 (M.D. Tenn. Aug. 10, 2015). Several months after granting relief, Tennessee enacted a new statute with different restrictions and the Department of General Services withdrew the challenged policy. *Id.* at *3. In holding that this preliminary relief sufficed to make the plaintiffs prevailing parties, the Court held that the "TRO and the Preliminary Injunction directly benefitted the plaintiffs and the other protesters, who resumed the protests without fear of arrest," and this "gave the plaintiffs the immediate relief that they sought: the right to continue protesting on Legislative Plaza" which they continued "for months thereafter." *Id.* at *7.

Here, there can be no doubt that the preliminary injunction was court-ordered and entered based on a "strong likelihood of success on the merits." Order, No. 19-cv-385, ECF No. 61 at 1; *see also Miller*, 936 F.3d at 448; *PPSWO*, 931 F.3d at 538–39. This Court found that, among other things, Plaintiffs were likely to succeed as to their challenges against each of the six provisions they challenged based on several different claims and legal doctrines. Opinion, No. 19-cv-385, ECF No. 60 at 42 (holding that "in light of the Act's burdens and the availability of alternative methods for pursuing its objectives, the court concludes not only that the plaintiffs are likely to

9

Case 3:19-cv-00365   Document 100-1   Filed 12/21/20   Page 9 of 19 PageID #: 1242

succeed on their claims under *Meyer*, *Buckley*, and the caselaw governing compelled speech, but also that they would be likely to succeed under the *Anderson-Burdick* balancing framework").

Moreover, this ruling "directly benefited plaintiffs by altering how [the defendant] treated them." *Miller*, 936 F.3d at 448. If the Act had been allowed to take effect, Plaintiff voter registration organizations faced an "attack [on] their limited resources from all sides," with "compliance costs for what might be an already cash-strapped organization," harm to their "ability to recruit qualified volunteers and registration workers," and a risk that their "already-depleted resources may be drained by fines." Opinion, No. 19-cv-385, ECF No. 60 at 41. The preliminary injunction allowed Plaintiffs to continue providing their full range of voter registration services without fear of legal consequences such as criminal or civil penalties, similar to how the *Occupy Nashville* injunction prevented arrests of the plaintiff's members while in effect. 2015 WL 4727097, at *7. And like the *Michigan APRI* plaintiffs, the preliminary injunction enjoined the law leading into a key federal election cycle, 2019 WL 2314861, at *1—a key reason Plaintiffs sought preliminary relief in this case. *See* Opinion, No. 19-cv-385, ECF No. 60 at 43. Because the preliminary injunction prevented the Defendants from enforcing any of the challenged provisions, it altered their treatment of Plaintiffs.

Finally, Plaintiffs also achieved enduring relief because the preliminary injunction enjoined each aspect of the law they challenged, and the order was never altered or overturned. Unlike the plaintiff in *PPSWO* who was deemed a prevailing party even though it achieved some significant relief but not all of the relief it sought through the preliminary injunction, 931 F.3d at 542, the order here provided Plaintiffs full relief. Opinion, No. 19-cv-385, ECF No. 60 at 45. Moreover, the "preliminary injunction "remained in effect at all times, and the challenged provisions of the law were never enforced." Order of Voluntary Dismissal, No. 19-cv- 365, ECF

No. 98 at 2. And even though Plaintiffs ultimately dismissed this case, they did so only because—in response to this Court's preliminary injunction—the Tennessee Legislature, acting at the behest of the Defendants, enacted a new law that repealed each of the challenged provisions, thereby preserving Plaintiffs' preliminary injunction victory. *See id.* at 1. In proposing the bills that repealed the challenged provisions, Defendants Hargett and Goins cited this Court's preliminary injunction and explained that the new bills repealing them and introducing less onerous provisions was "being brought to provide reasonable protections within the confines of the federal court's ruling." Ex. 1 at 1.

Even where legislation ultimately did not preserve the full relief a plaintiff received, *see Occupy Nashville*, 2015 WL 4727097, at *3, or introduced new, related objectionable provisions, *see LWV Fla.*, 2008 WL 5733166, at *7, courts have found that relief was sufficiently enduring. Here, the endurance of the victory was not partial or qualified. As in *Thomas*, this Court's injunctive relief remained in effect "for as long as it was needed—that is, until [House Bill 1079/Senate Bull 971] changed the law in the plaintiffs' favor" by removing each of the challenged provisions. 2020 WL 5530232, at *8.

Because Plaintiffs obtained court-ordered, material, enduring relief, they are prevailing parties. *Miller*, 936 F.3d at 448.

### B. Plaintiffs are Prevailing Parties for the Entirety of the Case Because Their Post-Preliminary Injunction Efforts Related to Maintaining the Relief Granted and Succeeded in Doing So.

Not only should the Plaintiffs be deemed prevailing parties for the period leading to the preliminary injunction, they should properly be considered prevailing parties for purposes of the case as a whole. The post-preliminary injunction fees sought here are specific to preserving the

preliminary injunction claims granted by the Court by preparing to win on summary judgment or at trial. In similar matters, courts have awarded fees for the entirety of the case.

For example, in *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008), the district court granted a preliminary injunction against a city ordinance, after which the city passed a "revised ordinance which . . . corrected all of the alleged constitutional infirmities of the challenged ordinance." *Id.* at 228. The Third Circuit affirmed the district court's decision to award fees for "the full duration of the proceedings" even after the preliminary injunction and despite the court lifting that ruling and closing the case due to the new legislation. *Id.* at 236. It explained that "[a]t the end of the proceedings, plaintiffs had achieved precisely what they sought on an enduring basis, and that success was a result of plaintiffs' efforts and court-enforced victories rather than defendant's voluntary actions." *Id.* at 236. This was in part because they continued to litigate the case to "enforce[e] the injunction." *Id.* at 237. In approving full fees, the Third Circuit observed that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 236 (quoting *Hensley*, 461 U.S. at 435).

And while this Court did not award post-preliminary injunction fees in *Occupy Nashville*, it limited the fees sought because the plaintiffs failed to show that their post-preliminary injunction work "was specific to the terms of the Preliminary Injunction or the substance of" the claims on which the Court ordered relief. 2015 WL 4727097, at *8. Thus, in denying that portion of their fees, the Court explained that its reasons were "contextual and case-specific." *Id.* at *9.

Here, as in *People Against Police Violence* and as demonstrated in the submitted billing records, all of the work after the preliminary injunction for which Plaintiffs seek fees directly relates preserving that ruling by achieving ultimate success on the merits. 520 F.3d at 237. And as in that case, Plaintiffs obtaining and preserving that ruling led to a full legislative repeal of the

challenged provisions, ensuring victory on "an enduring basis." Unlike in *Occupy Nashville*, Plaintiffs did not have any unsuccessful claims and they have not sought fees for post-preliminary injunction work relating to unrelated issues. As such, the Court should not limit its fee award to the pre-preliminary injunction period.

## II. The Attorneys' Fees Sought Are Reasonable.

The first step in determining a reasonable fee is to calculate the "lodestar" by multiplying (i) the number of hours reasonably expended on the litigation by (ii) a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888 (1984). A strong presumption exists that the lodestar represents a reasonable fee. *Blanchard*, 489 U.S. at 95. Reasonable attorneys' fees should compensate the work of paralegals and law clerks, in addition to the work of attorneys. *See Jenkins by Agyei*, 491 U.S. at 285–86; *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008) (attorneys' fees "embrace[s] the fees of paralegals as well as attorneys" (citing *Jenkins by Agyei*, 491 U.S. at 285)). Attached as Exhibit 2 is a chart reflecting the number of hours worked by Plaintiffs' counsel and paralegals for which compensation is sought, their requested hourly rates, and the resulting requested "loadstar" fee of $479,102.85. The details of Plaintiffs' hours are reflected in the attached declarations of Theresa Lee (Exhibit 3), Thomas Castelli (Exhibit 4), Danielle Lang (Exhibit 5), Michelle Kanter Cohen (Exhibit 6), and William Harbison (Exhibit 7).

### A. The Hours Expended are Reasonable.

In determining the lodestar under Section 1988, the first question is whether the hours spent are reasonable. *See Hensley*, 461 U.S. at 433. Plaintiffs bear the burden of establishing the reasonableness of the hours claimed by submitting adequate documentation of the hours worked. *Id.* at 437. Plaintiffs submit the billing records for each of their attorneys, thus adequately documenting the need for, and reasonableness of, the hours charged. Moreover, Plaintiffs have decided not to seek an award of fees for over 200 hours worked, as in the exercise of their

13

professional discretion, Plaintiffs do not seek fees for hours spent on certain administrative tasks, travel, getting up to speed, and for attorneys who only did limited work on this matter. *See* Lee Decl. ¶¶ 13–14, 16–17; Castelli Decl. ¶ 11; Lang Decl. ¶¶ 15–16; Kanter Cohen Decl. ¶¶ 22–25; Harbison Decl. ¶ 11. The requested hours are particularly reasonable because Plaintiffs' counsel have exercised billing judgment reductions, and all attorneys have excluded hours that could have been billed. Counsel have made reductions of their time in accordance with the same careful review of billing records that they perform before sending a bill to a fee-paying client. Plaintiffs have also not sought reimbursement for the time of each attorney who participated in team strategy and management calls or meetings, instead seeking compensation only for certain participants as documented in the attached Declarations, conscious of the Court's direction that fee awards for "hours that are excessive, redundant, or otherwise unnecessary" should not be granted. *Id.* at 434.

As the Court is certainly aware, this case involved complex constitutional questions as related to numerous distinct provisions of state law. Litigating this case required the investment of a significant number of attorney and paralegal hours. This is not surprising given the complexity of voting rights cases. The magnitude and strategic nature of this case demanded frequent interaction among counsel and justify the reasonableness of the hours sought. *See, e.g.*, *Glover v. Johnson*, 138 F.3d 229, 252–53 (6th Cir. 1998) (holding that reasonable consultation among counsel is properly compensable); *see also Perdue*, 559 U.S. at 553 (explaining that the complexity of a case is a factor that should be "fully reflected in the number of billable hours").

With seven Plaintiff organizations, each with wide-ranging factual circumstances, in addition to numerous complex constitutional claims, it was necessarily reasonable for a team of attorneys to work on this case. Indeed, courts have recognized the "use of more than one attorney in multiple party litigation . . . as both desirable and common." *A.J. by L.B. v. Kierst*, 56 F.3d 849,

863 (8th Cir. 1995); *see also Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Catlett v. Mo. Highway & Transp. Comm'n*, 828 F.2d 1260, 1271 (8th Cir. 1987); *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985); *Johnson v. Univ. College*, 706 F.2d 1205, 1208 (11th Cir. 1983), *cert. denied*, 464 U.S. 994 (1983); *Reynolds v. Coomey*, 567 F.2d 1166, 1167 (1st Cir. 1978). Moreover, Plaintiffs have already reduced their claimed lodestar by not claiming the time of all participating attorneys on meetings and calls, even though such coordinated strategy was necessary to the case. *See supra* at 14.

Additionally, though the relief sought by Plaintiffs became permanent through a new legislative enactment, this did not come until after denial of the motion to dismiss, the grant of the preliminary injunction, the case management conference, and significant discovery, including propounding subpoenas on and meeting and conferring with 13 counties. As the Ninth Circuit has explained, there is no incentive to over-lawyer a case like this:

> It must . . . be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This disinclination to spend unnecessary time on a case is particularly true of already over-extended attorneys at non-profit organizations and firm attorneys working on a pro bono basis. And, as described, in an effort to reduce the sum of attorneys' fees requested, Plaintiffs' counsel has reduced the number of hours for which they are requesting compensation.

Additionally, Doug Johnston of the Nashville-based firm Barrett Johnston Martin & Garrison, LLC, who has practiced in Nashville since 1977 and has extensive experience in civil

15

rights litigation, has reviewed the requested hours and finds them to be reasonable given the nature and scope of this case. Johnston Decl. ¶¶ 6–7, 10–11 (attached as Ex. 8).

### B. The Requested Hourly Rates Are Reasonable.

The second lodestar prong is that the requested hourly rates are reasonable. *See Hensley*, 461 U.S. at 433. Whether an hourly rate is reasonable should be considered with reference to "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. "A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, i.e., 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Jenkins by Agyei*, 491 U.S. at 286 (quoting *Blum*, 465 U.S. at 896 n.11).

Pro bono law firm counsel, Sherrard Roe Voigt & Harbison, PLC ("SRVH"), is a Nashville-based law firm. The actual fees charged by SRVH in the ordinary course and paid by their fee-paying clients are certainly reasonable. *See id*. at 286 (prevailing civil rights plaintiffs entitled to "fully compensatory fee,' comparable to what 'is traditional with attorneys compensated by a fee-paying client'" (internal citations omitted)). "[N]ormal billing rates usually 'provide an efficient and fair short cut for determining the market rate.'" *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). Additionally, Mr. Johnston, who has practiced in Nashville for over 40 years, has reviewed the billing rates for each of Plaintiffs' counsel and finds them "imminently reasonable." Johnston Decl. ¶ 9.

Further demonstrating the reasonableness of the fees sought here, Plaintiffs intentionally use SRVH's ordinary billing rates for all of their attorneys, rather than pursue higher rates for attorneys with specialized expertise based in large out-of-state cities. *See, e.g.*, *Miller v. Davis*, 267 F. Supp. 3d 961, 995–96 (E.D. Ky. 2017), *aff'd sub nom*. *Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) ("[I]f the out-of-town counsel is a 'specialist,' a higher hourly rate may be permitted[.]"

(citing *Hadix*, 65 F.3d at 535)); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). The use of SRVH's billing rates makes the fees sought by Plaintiffs particularly reasonable as numerous attorneys are voting rights specialists. *See, e.g.*, Lee Decl. ¶¶ 4–8; Lang Decl. ¶¶ 3–4, 11–12; Kanter Cohen Decl. ¶¶ 9–16. Federal courts have rated voting rights cases among the most complex tried by federal courts. According to a district court time study conducted by the Federal Judicial Center measuring the complexity and time needed to handle matters by the district courts, voting rights cases were among the top five most complex cases and were given a weight of 3.86 compared to 1.0 for an "average" case. *2003–2004 District Court Case-Weighting Study*, Federal Judicial Center, 5, Tbl. 1 (2005), https://www.fjc.gov/sites/default/files/2012/CaseWts0.pdf.

Finally, these rates sought are consistent with hourly rates awarded in other cases to attorneys with similar years of legal experience. Attorneys Harbison and Dewey Branstetter are law firm partners who have practiced in Nashville for decades. *See* Harbison Decl. ¶¶ 4–5, 7. And Attorneys Brannon, Castelli, Sherman, Kanter Cohen, Rosborough, Lee, Lakin, and Lang have extensive years of legal experience and specialization that warrant compensation at a partner level. *See* Lee Decl. ¶¶ 5-8; Castelli Decl. ¶¶ 6–7; Lang Decl. ¶ 11; Kanter Cohen Decl. ¶¶ 9–16. Their requested rates ranging from $400 to $700 per hour are exceedingly reasonable. The other counsel who have fewer years of experience are well-credentialed and practiced associate attorneys and their requested rates reflect their respective levels of experience. *See, e.g.*, *Hanson v. McBride*, 3:18-CV-00524, 2020 WL 5893825, at *8 (M.D. Tenn. Oct. 2, 2020) ("$475 is within the realm of what is ordinary and reasonable for experienced litigation counsel in this district."); *Howard v.*

*Tennessee*, 3:16-CV-2829, 2018 WL 10151080, at *5 (M.D. Tenn. Dec. 14, 2018) (awarding rate of $400 to law firm associate, and rates between $450–$600 an hour to law firm partners)[2]; *Siddle v. Crants*, No. 3:09-CV-00175, 2013 WL 1245678, at *19–25 (M.D. Tenn. Mar. 26, 2013) (finding rates of $400, $490, $550, and $575 per hour to be reasonable for partners)[3]; *Deshotels v. Davidson Cty. Election Comm'n*, No. 3:03-cv-1152 (M.D. Tenn. Sept. 28, 2004) (Campbell, J.), ECF No. 46 & 47 (finding hourly rate of $400 to be "reasonable" and "in accordance with prevailing market rates in Nashville" more than fifteen years ago).[4]

### III. Plaintiffs Are Entitled to Non-Taxable Expenses.

In addition to specific statutory costs available pursuant to 28 U.S.C. § 1920, Plaintiffs' counsel are entitled to an award of expenses for costs that would normally be billed to fee-paying clients. 42 U.S.C. § 1988(b). "Section 1988 permits district courts to award those incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (internal citation omitted); *see also Segovia v. Montgomery Cty., Tenn.*, 593 F. App'x 488, 490 (6th Cir. 2014) (awarding compensation for documented expenses). "Recoverable out-of-pocket expenses are those incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Waldo*, 726 F.3d at 827 (internal quotation marks omitted).

Plaintiffs seek $3,928.49 in necessary litigation expenses. *See* Lee Decl. ¶¶ 19–20 & Attachments 2–3. All have already been paid in their entirety. And all were reasonable and

---

[2] With these rates being reasonable in December 2018, adjusting for inflation, rates of $414 for an associate, and $466 to $621, are reasonable today. *See Consumer Price Index Inflation Calculator,* U.S. Bureau of Labor Statistics, http://www.bls.gov/data/inflation_calculator.htm. (last visited Dec. 17, 2020).

[3] With these rates being reasonable in March 2013, rates of $447, $548, $615, and $643 are reasonable seven years later, simply due to adjustment for inflation. *See id*.

[4] Adjusted for inflation, this would be a reasonable rate of $545 per hour today. *See id.*

18

necessary. *See* Lee Decl. ¶ 21  These expenses are also reasonable in light of the fact that counsel have waived reimbursement for other expenses that are also awardable, such as phone charges, photocopying, Lexis and Westlaw charges, and postage. *See id*.

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court award them attorneys' fees in the amount of $479,102.85 and expenses in the amount of $3,928.49.

Dated: December 21, 2020

Respectfully submitted,

*/s/ Theresa J. Lee*
Theresa J. Lee\*
Sophia Lin Lakin\*
Davin M. Rosborough\*
Dale E. Ho\*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
dho@aclu.org

Sarah Brannon\*, \*\*
American Civil Liberties Union Foundation
915 15th Street, 6th Floor
Washington, DC 20005
Tel.: (202) 544-1681
sbrannon@aclu.org
\*\* not admitted in DC; DC practice limited to federal court only

William H. Harbison, BPR#7012
C. Dewey Branstetter, Jr. BPR#9367
Hunter C. Branstetter, BPR#32004
Sherrard Roe Voigt & Harbison
150 3rd Avenue South, Suite 1100
Nashville, TN 37301
Tel.: (615) 742-4200
bharbison@srvhlaw.com
dbranstetter@srvhlaw.com
hbranstetter@srvhlaw.com

Thomas H. Castelli, BPR#024849
Legal Director
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Tel.: 615-320-7142
tcastelli@aclu-tn.org

Danielle Lang\*
Molly Danahy\*
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel.: (202) 736-2200
dlang@campaignlegal.org
mdanahy@campaignlegal.org

Michelle Kanter Cohen\*
Cecilia Aguilera\*
Jon Sherman\*
Fair Elections Center
1825 K Street NW, Suite 450
Washington, DC 20006
Tel.: (202) 331-0114
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org
jsherman@fairelectionscenter.org

*Attorneys for League of Women Voters of Tennessee Plaintiffs*
\*admitted *pro hac vice*

19