**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

TENNESSEE STATE CONFERENCE OF
THE N.A.A.C.P., et al.,

          Plaintiffs,

v.

TRE HARGETT, in his official capacity as
Secretary of State of the State of Tennessee, et
al.,

          Defendants.

Civil No. 3:19-cv-365
Hon. Aleta A. Trauger

**MEMORANDUM OF THE NAACP PLAINTIFFS IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................... 6

  A.    Plaintiffs Are the Prevailing Party and Entitled to Recover their Reasonable Attorneys' Fees and Litigation Expenses under Section 1988. ........................................................ 7

    1.    The Result Plaintiffs Obtained is Judicially Sanctioned Relief More Than Sufficient to Support Attorneys' Fees. ........................................................................ 7

    2.    Plaintiffs are Entitled to Recover Fees for Legal Services Performed After the Court Granted Preliminary Injunctive Relief ........................................................... 10

  B.    The Amount of Attorneys' Fees Sought is Reasonable Fee Request ........................... 11

    1.    The Hours Expended are Reasonable. ................................................................. 12

        i.    *Time and Labor* .................................................................................. 13

        ii.    *The Novelty and Difficulty of the Legal Issues* ............................... 14

        iii.    *Time Limitations Imposed by the Client or the Circumstances* ...................... 15

        iv.    *The Results Obtained* ......................................................................... 16

        v.    *The Experience, Reputation, and Ability of the Attorneys* ............................. 16

    2.    The Requested Hourly Rates are Reasonable. ...................................................... 17

  C.    The Litigation Expenses Sought by Plaintiffs Are Reasonable and Should Be Included in the Court's Fee Award. ............................................................................... 18

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Gen. Contractors of Tenn., Inc. v. Cnty of Shelby*,
  5 Fed. App'x 374 (6th Cir. 2001) .............................................7

*Barnes v. City of Cincinnati*,
  401 F.3d 729 (6th Cir. 2005) .............................................12

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989).............................................12

*Blum v. Stenson*,
  465 U.S. 886 (1984).............................................16

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001).............................................8

*Caudill v. Sears Transition Pay Plan*,
  No. 06-12866, 2011 WL 1595044 (E.D. Mich. Apr. 26, 2011) .............................................10

*Cramblit v. Fikse*,
  33 F.3d 633 (6th Cir. 1994) (per curiam).............................................11

*Farrar v. Hobby*,
  506 U.S. 103 (1992).............................................7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).............................................7, 13, 16

*Indep. Fed'n of Flight Attendants v. Zipes*,
  491 U.S. 754 (1989).............................................7

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir 1974) .............................................12, 13

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989).............................................11

*New Century Found. v. Robertson*,
  No. 3:18-CV-00839, 2019 WL 6492901 (M.D. Tenn. Dec. 3, 2019) .............................................17

*Northcross v. Bd. of Ed. of Memphis City Schools*,
  611 F.2d 624 (6th Cir. 1979) .............................................16

*Occupy Nashville v. Haslam*,
  No. 3:11-CV-01037, 2015 WL 4727097 (M.D. Tenn. Aug. 10, 2015) .......................... 8, 9, 17

*Ohio Right to Life Soc'y, Inc., v. Ohio Elections Comm'n*,
  590 F. App'x 597 (6th Cir. 2014) ......................................................... 18

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ....................................................................... 11

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ....................................................................... 10

*Planned Parenthood Sw. Ohio Region v. Dewine*,
  931 F.3d 530 (6th Cir. 2019) ......................................................... 7, 9, 11

*Reed v. Rhodes*,
  179 F.3d 453 (6th Cir. 1999) ............................................................ 12

*Sole v. Wyner*,
  551 U.S. 74 (2007) ......................................................................... 7

*Tanco v. Haslam*,
  No. 3:13-CV-01159, 2016 WL 1171058 (M.D. Tenn. Mar. 25, 2016) ................................ 17

*Thomas v. Long*,
  No. 3:17-CV-00005, 2020 WL 5530232 (M.D. Tenn. Sept. 15, 2020) ................................ 17

*Waldo v. Consumers Energy Co.*,
  726 F.3d 802 (6th Cir. 2013) ............................................................ 16

**Statutes**

42 U.S.C. § 1983 ................................................................................ 4, 18

42 U.S.C. § 1988 ................................................................................ *passim*

National Voter Registration Act of 1993 .......................................................... 4

T.C.A. §§ 2-2-142(a)-(b), (e)-(g), 2-2-143(a)-(f), and 2-19-145(a)-(f) ........................... 4

Third-Party Voter Registration Law ............................................................... 4

**Other Authorities**

First and Fourteenth Amendments .............................................................. 1, 3, 4

Federal Rules of Civil Procedure Rule 41(a)(1)(A)(ii) ............................................ 5

House Bill 1079 .................................................................................. 4

iii

Local Rule 54.01 .................................................................................................................................2

Senate Bill 971 .................................................................................................................................4

Case 3:19-cv-00365   Document 103-1   Filed 12/21/20   Page 5 of 25 PageID #: 1474

**INTRODUCTION**

Plaintiffs filed suit on behalf of third-party organizations that register Tennesseans to vote, challenging the constitutionality of voter registration restrictions the Tennessee General Assembly enacted in May 2019. Under that law, Defendants threatened civic and community groups with harsh civil and criminal penalties for their efforts to register voters. Plaintiffs argued the law violated their fundamental rights guaranteed by the First and Fourteenth Amendments, including freedom of speech, freedom of association, and the right to due process.

After considering the parties' positions, this Court enjoined Defendants from enforcing the new law and concluded that Plaintiffs were very likely to succeed on the merits of their claims. In its opinion granting preliminary injunctive relief, the Court found that Plaintiffs had "demonstrated a strong likelihood of success on the merits[,]" crediting their claims "that the registration and training requirements for voter registration drives are substantively unconstitutional" as well as their constitutional challenge to the "the vagueness of the scope and the nature of their requirements." ECF No. 53 at 29. Defendants complied with the Court's order, and never appealed the ruling. Consequently, the contested provisions of the law never took effect. Moreover, in direct response to the Court's ruling, the General Assembly repealed the law's challenged provisions in its next legislative session and replaced them with a statute that provides Plaintiffs all the relief they set out to achieve in this litigation.

Plaintiffs are indisputably the prevailing parties in this case. They obtained emergency preliminary injunctions that protected the rights of Tennessee advocacy organizations to register to vote all Tennesseans, and in particular African Americans and other minorities and students, without fear of criminal reprisal. In securing these victories, they obtained relief that enjoined Tennessee's onerous voter registration scheme and ensured that Tennessee organizations could

1

freely register new voters during future elections, including the 2020 primary and general elections, thereby helping to secure the franchise for voters who had historically been excluded. Citing Plaintiffs' successes in this litigation, Tennessee repealed the challenged provisions of its third-party registration law in April 2020.

As the prevailing parties in this case, Plaintiffs are entitled to an award of their reasonable attorneys' fees and litigation expenses under 42 U.S.C. § 1988. Plaintiffs now submit the detailed specification and itemization of those fees and expenses pursuant to Local Rule 54.01, and move the Court for an award of those attorneys' fees and litigation expenses against Defendants in their official capacities.

The successful representation of Plaintiffs in this high-profile and critical case took considerable time and effort. Plaintiffs were represented by counsel from Hogan Lovells US LLP; Lawyers' Committee under Civil Rights Under Law; Burch, Porter & Johnson, PLLC; and Bromberg Law PLLC. The litigation demanded significant efforts of counsel to conduct the expansive factual investigation and legal analysis necessary to develop a complaint and motion for preliminary injunction. Counsel took special care to avoid duplication of work, coordinating tasks as the litigation progressed and omitting fees from this petition where there was arguably a degree of overlap in work product. The work in this case had to be performed in short order given that the Law was originally slated to take effect October 1, 2019. Expedited proceedings in the litigation were necessary given that voter registration activities conducted ahead of the 2020 election cycle would have been significantly undermined if the Law had taken effect. The chilling effects of the Law on constitutionally-protected speech activity only underscored the need for this case to be filed and litigated without delay.

Together, Plaintiffs' counsel are seeking reimbursement for 1,599.23 hours of time expended in this litigation, amounting to an award of $724,415.50. This amount of time is reasonable and was necessary to the success of the litigation. This conclusion is supported by the declarations of counsel requesting this award of fees and further bolstered by an affidavit from a prominent Nashville attorney filed in support of this motion. Further, detailed descriptions contained in counsel's time entries (which are offered for the Court's consideration pursuant to the contemporaneously filed motion for leave to file under seal) demonstrate the reasonableness of the time for which Plaintiffs are seeking compensation. As explained below, Plaintiffs' Counsel is not requesting compensation for a significant number of hours that were worked and that would also be compensable under applicable law, resulting in a request 35% hours fewer than the hours actually worked on this important matter.

Additionally, Plaintiffs' Counsel seek reimbursement for $5,274.04 in costs and reimbursable expenses. This amount excludes thousands of dollars for costs like Lexis and Westlaw expenses, travel costs, and other expenses related to the case—for which Plaintiffs are not seeking reimbursement in the exercise of billing judgement.

## BACKGROUND

When Plaintiffs challenged the constitutionality of Tennessee's third-party voter registration law under the First and Fourteenth Amendments, they contended with particularly complicated legal claims and were forced to clear several practical hurdles. First, it involved an issue of first impression, requiring the interpretation of a newly enacted Tennessee law—which was the first law of its kind because of its broad restrictions on voter registration and harsh penalties—on issues not previously addressed by this Court or any other. Second, it required a detailed analysis of the complex State regulatory scheme governing Tennessee elections and that

scheme's relationship to the federal statutory and constitutional claims advanced by Plaintiffs. Third, Plaintiffs were required to prepare and litigate the case on an expedited basis, because (i) the Law was set to take effect on October 1, 2019, and would have substantially jeopardized Plaintiffs' third-party voter registration activity in connection with the 2020 election cycle, including the February 3, 2020 registration deadline, and (ii) the Law had an immediate deterrent effect, causing Plaintiffs to immediately delay or forego certain voter registration efforts out of concern for exposure to civil or criminal liability when the state began to enforce the law in October. The case required immediate attention: Plaintiffs' counsel had to conduct their factual and legal investigations, assess the strength of the case, develop legal arguments, file suit, and litigate Plaintiffs' request for preliminary injunction on an expedited and emergency basis.

On May 2, 2019, Governor Bill Lee signed into law House Bill 1079 / Senate Bill 971 (the "Third-Party Voter Registration Law," or simply, the "Law"), which was codified at Tennessee Code Annotated Sections 2-2-142(a)-(b) and (e)-(g), Sections 2-2-143(a)-(f), and Sections 2-19-145(a)-(f). Plaintiffs Tennessee State Conference of the NAACP, Democracy Nashville-Democratic Communities, The Equity Alliance, and The Andrew Goodman Foundation ("the NAACP Plaintiffs") immediately challenged the Law under 42 U.S.C. § 1983 filing the instant suit on the same day the Law was signed, alleging that the statute violated the First and Fourteenth Amendments.[1] After the parties thoroughly briefed the issues, this Court granted that the NAACP Plaintiffs' motion for a preliminary injunction on September 13, 2019.[2]

---

[1] A separate suit under 42 U.S.C. § 1983 followed a week later on May 9, 2019, this one brought by League of Women Voters of Tennessee and other plaintiffs. The League of Women Voters suit similarly alleged that that the Law violated the First and Fourteenth Amendments. Plaintiffs in both cases later amended their complaints to add allegations that the challenged provisions also violated the National Voter Registration Act of 1993, 52 U.S.C. § 20507(a)(2) and (b)(1). After this Court granted the motions of both sets of Plaintiffs' for a preliminary injunction, the Court consolidated the two cases.

[2] The Court similarly granted the motion for a preliminary injunction brought by the League of Women Voters of Tennessee and other Plaintiffs on September 12, 2019.

That preliminary injunction has remained in effect at all times, and Tennessee never enforced the challenged provisions of the Law.

In the 2020 legislative session, the General Assembly considered legislation that sought to repeal all the provisions of the law the NAACP Plaintiffs challenged in their suit. The bill's House sponsor repeatedly touted that the new bill was "within the confines of the court's ruling," directly acknowledging the effect of the preliminary injunctions this Court entered in September 2019. *See* Tennessee House Elections & Campaign Finance Subcommittee Meeting (February 19, 2020). During floor debate, Representative Tim Rudd stated that his bill repealed each of the provisions that this Court determined were likely unconstitutional: "Any of the judge's judicial ruling that she did not uphold, this bill replaces that." House Floor Session, 56th Legislative Day (March 9, 2020). And when one legislator asked whether the bill "eliminates all provisions that have been struck down judicially," the legislation's drafter answered "Yes, as far as I know, within the Judge's judicial ruling, this new legislation is put in place . . .". *Id.* H.B. 2363, 56th Leg. (Tenn. 2020), substituted for S.B. 2298 (March 19, 2020).[3] The Governor signed the bill into law on April 2, 2020, repealing each of the Law's provisions that Plaintiffs challenged in these cases.

Understanding that they had accomplished the results they sought in bringing these cases, Plaintiffs entered into a stipulation with defendants in which Plaintiffs agreed voluntarily to dismiss their action without prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, ECF No. 97, on the understanding that the dismissal was without prejudice to the right of Plaintiffs to seek an award of attorneys' fees under 42 U.S.C. § 1988. This Court entered that stipulation and order on October 26, 2020, allowing Plaintiffs until December 21,

---

[3] https://publications.tnsosfiles.com/acts/111/pub/pc0654.pdf

2020 to file their applications for attorneys' fees and costs, and giving Defendants until January 21, 2021 to respond to Plaintiffs' applications. ECF No. 98.

## ARGUMENT

Plaintiffs' successful actions seeking injunctive relief mean they are the prevailing parties in this case involving significant constitutional issues of first impression. In order to bring this action, Plaintiffs and their counsel first had to perform extensive factual and legal research, including: investigating the legislative history of the newly-enacted Law; assessing its impact on Plaintiffs' members, operations, and organizational missions; interviewing witnesses; evaluating complex constitutional issues of first impression; and drafting the complaints, motion for preliminary injunction, and legal briefing. Counsel for Plaintiffs devoted more than 1,599.23 hours in their concentrated efforts on this case in the relatively brief period before the Court granted the preliminary injunctions. To be clear: these hours are not the total number of hours worked by counsel in this case. As described in the declarations of Allison Holt Ryan and Ezra Rosenberg, Plaintiffs' counsel have not sought reimbursement for more than 890 hours worked on this matter, including all time spent amending the complaint in this matter, time spent on the instant fee petition, and additional time excised in counsel's billing discretion. *See* Holt Ryan Decl. ¶ 21; Rosenberg Decl. ¶ 43.

The amount of time for which Plaintiffs seek fees is reasonable, and none of it is unnecessary or duplicative. This conclusion is supported by the declarations of counsel for Plaintiffs, the supporting declaration of independent Nashville counsel Wallace Dietz who has more than 30 years of experience in the Nashville market in similar complex litigation, and the detailed descriptions in time entries filed with this motion.

6

**A. Plaintiffs Are the Prevailing Parties and Entitled to Recover their Reasonable Attorneys' Fees and Litigation Expenses under Section 1988.**

Plaintiffs are the prevailing party in this action and are therefore entitled to the award of attorneys' fees and litigation expenses under 42 U.S.C. § 1988. Under that provision of federal law, "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Associated Gen. Contractors of Tenn., Inc. v. Cnty of Shelby*, 5 Fed. App'x 374, 377 (6th Cir. 2001) (defining such relief to include a "judgment, an injunction, or a consent decree") (*citing Horner v. Ky. High Sch. Athletic Ass'n*, 206 F.3d 685, 697–98 (6th Cir. 2000)). Plaintiffs obtained injunctive relief in this case in September 2019, which prompted Tennessee to repeal all the Law's provisions challenged by Plaintiffs, and markedly changed the legal relationship between Plaintiffs and Defendants. A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Absent "special circumstances" that would render such an award "unjust," a prevailing party under 42 U.S.C. § 1988 "must" be awarded attorneys' fees and expenses. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760-61 (1989) (holding that "in absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff") (emphasis in original) (citation omitted).

   1. *The Result Plaintiffs Obtained is Judicially Sanctioned Relief More Than Sufficient to Support Attorneys' Fees.*

The preliminary injunction obtained by Plaintiffs materially altered the relationship between Plaintiffs and the State. This change is the "touchstone" of the analysis required in the prevailing-party analysis. *Sole v. Wyner*, 551 U.S. 74, 75 (2007); *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019) (noting that this test, rather than the

7

"catalyst" theory based on defendants' voluntary corrective action, determines prevailing-party status). Under this framework, Plaintiffs are prevailing parties because the injunctive relief this Court issued in September 2019 "materially changed the relationship between the parties."— specifically, after the Law was enjoined, Plaintiffs were able to engage in constitutionally-protected voter registration activities, and the State could not subject them to civil and criminal penalties for violating the Law. And the preliminary injunction Plaintiffs obtained "turned at least in part on the district court's assessment of the merits." *Id.* (citing *McQueary v. Conway*, 614 F.3d 591, 598–99 (6th Cir. 2010)). The fact that plaintiffs' injunctive relief was preliminary rather than permanent does not change the analysis; in this case, "[t]he relief entered by the court was 'preliminary' in name but not in substance." *Occupy Nashville v. Haslam*, No. 3:11-CV-01037, 2015 WL 4727097, at *8 (M.D. Tenn. Aug. 10, 2015) ("[I]n evaluating whether a plaintiff who obtains Rule 65 relief should be considered a 'prevailing party,' the court should not elevate form over substance.").

Here, when this Court granted Plaintiffs preliminary injunctive relief, Plaintiffs secured a substantial victory. Not only was the state enjoined from enforcing the third-party voter registration law, the law did not take effect on the originally scheduled date of October 1, 2019— indeed, ***never took effect***. As a result, Plaintiffs were able to register thousands of Tennesseans to vote without risking civil or criminal penalties. To recover attorneys' fees, the relief a prevailing party receives must be "judicially sanctioned." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). In this case, "the Preliminary Injunction directly benefitted the plaintiffs" and other organizations engaged in voter registration activities because "[t]he entry of injunctive relief by the court" "gave the plaintiffs the immediate

relief that they sought:" the ability to freely continue voter registration, including during the 2020 election cycle. *See Occupy Nashville*, 2015 WL 4727097, at *7.

Attorneys' fees are proper when plaintiffs obtain a preliminary injunction that "represents an unambiguous indication of probable success on the merits.'" *DeWine*, 931 F.3d at 539. In this case, the Court left little doubt in granting injunctive relief that the preliminary injunction Plaintiffs obtained was based on the merits. The Court recognized that "plaintiffs ha[d] demonstrated a strong likelihood of success" on their constitutional claims based on the law's registration and training requirements. ECF No. 53 at 29. Moreover, the Court acknowledged Plaintiffs had "also demonstrated a strong likelihood of success on the merits" of their claims founded on the unconstitutional vagueness of the law's scope and the ambiguous nature of its requirements. *Id.*

After the Court granted Plaintiffs injunctive relief, that "relief never expired"; nor was it "reversed, dissolved, or otherwise undone by the final decision in the same case." *DeWine* at 539–40 (rejecting defendant's argument that a preliminary injunction was revoked upon voluntary dismissal of case where the district court never revoked or vacated the injunction). This unambiguous indication of Plaintiffs' probable success on the merits was not challenged on appeal by Defendants and the injunction remained in force, never undone by any order of this Court. In fact, Defendants acquiesced to this Court's preliminary injunction ruling, and the State enacted legislation repealing the Law's challenged provisions and its associated penalties in its next legislative session. *See* House Floor Session, 56th Legislative Day (March 9, 2020). During floor debate on the repeal legislation, the bill's sponsor stated, when discussing this Court's ruling, that "of the bill we passed last year …[w]e have repealed the parts she did not uphold, and this bill replaces that legislation." *Id.*

9

2. *Plaintiffs are Entitled to Recover Fees for Legal Services Performed After the Court Granted Preliminary Injunctive Relief.*

Plaintiffs seek a reasonable fee award that takes into account the significant legal services Plaintiffs had to perform after the Court granted Plaintiffs' motion for a preliminary injunction. Litigation in this case continued apace after September 13, 2019. Indeed, a fully compensatory fee award should account for the substantial work Plaintiffs performed to ready this case for the next phase of litigation, discovery, in anticipation of a possible summary judgment motion or, if necessary, trial.

In particular, Plaintiffs devoted significant time and effort to the discovery process, both against Defendants and from numerous non-parties believed to possess relevant documents and communications. In this case, Plaintiffs' "'marshaling of evidence was an arduous and time consuming task[,]' as the parties here battled over discovery and the production of documents and information." *Caudill v. Sears Transition Pay Plan*, No. 06-12866, 2011 WL 1595044, at *19 (E.D. Mich. Apr. 26, 2011) (quoting *Paschal v. Flagstar Bank*, 297 F.3d 431, 436 (6th Cir. 2002)). That effort should be accounted for in the Court's award of attorneys' fees.

A fully compensatory fee award in this case, which will advance the overriding purpose of the civil-rights statutes: promoting adequate access to our federal justice system. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010) ("Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights."). Protecting this access requires that the attorneys who take on the risk of these cases are fairly and fully compensated for their services. In keeping with that statutory design, a reasonable fee under § 1988 is "one that grants the successful civil rights plaintiff a 'fully compensatory fee,' comparable to what 'is traditional with attorneys compensated by a fee-paying client.'" *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (internal citations omitted).

### B. The Amount of Attorneys' Fees Sought is Reasonable.

Once a court has determined that a plaintiff is entitled to reasonable attorneys' fees and expenses as "a prevailing party under § 1988, it must then determine what is a 'reasonable' attorney's fee." *Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 1994) (per curiam). The "first step" for the court in determining a reasonable fee award is calculating "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *DeWine*, 931 F.3d at 543. Known as the "lodestar," this figure is accompanied by a "strong presumption" that the lodestar represents a reasonable fee. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986).

Plaintiffs seek a lodestar in the amount of $724,415.50 which is based upon a total of 1,599.23 hours, billed at hourly rates ranging from $185 to $700. The chart below reflects all timekeepers for which we seek a fee award, along with the hours billed for each timekeeper, the rate sought for that timekeeper, and the total award sought.

### Fee Request

| Name | Role | Hours | Rate | Total |
|------|------|-------|------|-------|
| Feinberg | Senior Partner | 211.7 | $700 | $148,190 |
| Holt Ryan | Junior Partner | 53.4 | $500 | $26,700. |
| Gitomer | Senior Associate | 239.5 | $450 | $107,775 |
| Druding | Mid-level Associate | 66.3 | $400 | $26,520. |
| Charlet | Junior Associate | 212.3 | $350 | $77,640. |
| Golden | Junior Associate | 106.8 | $350 | $32,040. |
| Balthazar | Paralegal | 27.7 | $225 | $5,540.0 |
| Rosenberg | Co-Director, Voting Rights Project | 158.4 | $700 | $110,880.00 |
| Chaudhuri | Associate Counsel, Voting Rights Project | 437.13 | $400 | $174,852.00 |

11

| Cates | Partner | 21.6 | $395 | $8,532.00 |
|---|---|---|---|---|
| Irvine | Associate | 32.3 | $240 | $7,752.00 |
| Bartlett | Paralegal | 1.3 | $185 | $240.50 |
| Bromberg | Chief Counsel for Voting Rights | 30.8 | $380 | $11,704.00 |
| *Total* | | 1,599.23 | - | $724,415.50 |

The billing summaries evidencing the time spent by each attorney, the general subject matter of the time expenditures, and the hourly rates are attached to the declarations of Allison Holt Ryan (Ex. 1-1) (Hogan Lovells claim) and Ezra Rosenberg (Ex. 2-1) (Lawyers' Committee's claim); Taylor Cates (Ex. 3-1); and Yael Bromberg (Ex. 4-1).

### 1. *The Hours Expended are Reasonable.*

When a court determines the lodestar under Section 1988, the first question it asks is whether a plaintiff has established that the hours its attorneys spent on the case are reasonable. *See Hensley*, 461 U.S. at 433. A plaintiff can carry this burden by submitting sufficient documentation of the hours counsel worked. *Id.* at 437.

After the Fifth Circuit first articulated 12 factors that guide courts in determining the reasonableness of attorneys' fees awards in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714 (5th Cir 1974),[4] the Supreme Court endorsed these factors in *Blanchard v. Bergeron*, 489 U.S. 87 (1989). The Sixth Circuit has adopted these standards as well. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005).

---

[4] The twelve Johnson factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Georgia Highway Express, Inc.*, 488 F.2d at 717–19.

In this case, several of the *Johnson* factors weigh in favor of the reasonableness of the Plaintiffs' fee claim: the results obtained, the novelty and difficulty of the case, the time and labor required, time limitations, and the experience and reputation of counsel. Each factor confirms that Plaintiffs seek reasonable fees in this case.

Moreover, a leading Nashville attorney, Wallace Dietz, has reviewed the facts and circumstances of the litigation, from its initial stages to the filing of the instant motion, in connection with his review of the reasonableness of the time spent by Plaintiffs' counsel in this matter. Ex. 5-1, Dietz Decl. ¶¶ 5-16. Based upon his background and experience, as well as his review of the materials described in his declaration, Mr. Dietz opines that the time expended by Plaintiffs' counsel on the matter was reasonable under the circumstances. *Id.* ¶¶ 15-16.

       *i.*   *Time and Labor*

*Johnson* leaves no doubt that the "hours claimed or spent on a case . . . are a necessary ingredient to be considered," *Georgia Highway Express, Inc.*, 488 F.2d at 717. In fact, these elements are viewed as "the most useful starting point for determining the amount of a reasonable fee." *Hensley*, 461 U.S. at 433. In seeking an award of fees, attorneys are under an obligation to exercise "billing judgment." *Id.* at 434. In exercising billing judgment, counsel should exclude time devoted to unsuccessful claims, apportion time shared by more than one client and/or case, and should generally avoid billing time that is not fairly attributable to success in the case at hand. Plaintiffs have done so here.

The hours spent by Plaintiffs' Counsel in this case are reasonable, given Plaintiffs' substantial efforts to secure excellent results in this case. Beginning in April 2019, Plaintiffs conducted legal research and undertook an extensive review of the law's legislative history. Plaintiffs drafted, revised, and reviewed the original and amended complaints; the motion and

13

memorandum in support of a preliminary injunction and supporting declarations and exhibits; and the brief in opposition to Defendants' motion to dismiss. In addition, Plaintiffs engaged in affirmative and third-party discovery as the case progressed, terminating this work when it became clear that the challenged provisions of the Law would be repealed.

In this case, Plaintiffs have excluded from their request certain services rendered, exercising the sort of billing judgment this Court and the Sixth Circuit have endorsed. Plaintiffs' Counsel carefully reviewed the billing entries. Exs. 1-4. Plaintiffs' approach is a prudent exercise of "embed[ing]" a reduction in fees in a fee petition. *See DeWine*, 931 F.3d at 543–44 (6th Cir. 2019). And as noted in the declarations of Allison Holt Ryan and Ezra Rosenberg, Plaintiffs have significantly reduced their fee petition to exclude time that was duplicative, arguably excessive, or insufficiently documented. Specifically, Plaintiffs have not sought a fee award for any time spent on preparing the amended complaint or the instant fee petition,  Ex. 1-1 ¶¶ 2, 22; Ex. 2-1 ¶ 10, in addition to deleting hundreds of hours of the time actually spent on the complaint, preliminary injunction, and responding to Defendants' motion to dismiss. Ex. 1-1 ¶¶ 15-16; Ex. 2-1 ¶ 10, 21-27. In total, Plaintiffs have eliminated more than 890 hours from their fee request, resulting in a reduction of at least 35%. *See* Ex. 1-1 ¶ 21; Ex. 2-2 ¶  43. And these cuts do not even take into account the large rate reduction (for example, more than 40% below Hogan Lovells' standard rates), that Plaintiffs applied to this case. Ex. 1-1 ¶¶ 21-23; Ex. 2-1 ¶ 32, 38, 41-44.

### ii.    The Novelty and Difficulty of the Legal Issues

This case involved newly-enacted state legislation on a matter of first impression; Plaintiffs had to conduct extensive, multi-jurisdictional research and comparative analyses to develop their legal arguments. Plaintiffs performed comprehensive legal research as they crafted

their claims alleging why the Law was unconstitutional. This research and analysis assumed particular importance given that they were largely unaided by precedent on point in this jurisdiction or elsewhere. Plaintiffs were also forced to canvas the intricate legislative history in order to develop their claims. Given the Legislature's haste in enacting the Law, the pre-enactment materials Plaintiffs analyzed were especially important to their ultimate success—but the legislative history was also cumbersome.

In addition, Plaintiffs were forced to contend with what this Court rightly recognized as "a complex and punitive regulatory scheme." ECF No. 53. The Law at issue was difficult to follow, vague, and overbroad. The analysis of the Law itself required a significant amount of time, as did the possible ramifications that it could (and did) have on Plaintiffs and others similarly situated. Plaintiffs' counsel performed necessary reviews of the statutory language and its position within the larger legal framework, crafted memoranda describing their findings, and coordinated their legal strategy based on these reviews. In particular, Plaintiffs spent a considerable amount of time developing and refining constitutional legal theories based on multiple lines of Supreme Court precedent. Plaintiffs also conducted a fair amount of research on jurisdictional issues of standing and ripeness, in particular, the merits of these arguments in the context of pre-enforcement challenges. This legal analysis was part and parcel to Plaintiffs' successful motion for a preliminary injunction.

### iii. Time Limitations Imposed by the Client or the Circumstances

Because the Law was due to the take effect on October 1, 2019, and Plaintiffs' voter registration activities were already being impacted by the law, Plaintiffs' counsel worked under significant time pressure. As the Court observed, "[t]he nature of elections, moreover, is that time is of the essence." ECF No. 53. When the Court entered the preliminary injunctions in this

case, it acknowledged that in 2020 "multiple election days are approaching, including a presidential primary in March and a general election encompassing numerous offices later in that year." *Id.* Yet the presidential primary was not the only urgent election-related deadline Plaintiffs had to consider, because "[i]t is not uncommon in Tennessee for the voters of a community to have multiple opportunities to go to the polls in a year, between primaries, general elections, runoffs, and special elections." *Id.*

*iv.*     *The Results Obtained*

Plaintiffs achieved significant success in this litigation by obtaining preliminary injunctive relief, which benefited civic engagement organizations that conduct voter registration in Tennessee and the Tennesseans they helped register to vote, free from the shadow of criminal sanction. Plaintiffs also set out all they set to achieve when the General Assembly enacted, and Governor Lee signed, legislation ***repealing the precise provisions challenged in this case***. This success is without a doubt one of the most salient factors in determining the reasonableness of Plaintiffs' fee application. On this point, Sixth Circuit precedent holds that when "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013).

*v.*     *The Experience, Reputation, and Ability of the Attorneys*

The Plaintiffs' litigation team was led by experienced attorneys, including Ira Feinberg, Allison Holt Ryan, and Ezra Rosenberg, all of whom have many years of complex litigation experience, including in voting rights or other civil rights and constitutional matters. *See* Ex. 1-1 ¶ 6; Ex. 2-1 ¶ 14. Counsel for Plaintiffs have substantial experience in analyzing and briefing voting rights issues in state and federal courts, and have litigated dozens of such cases as counsel and *amici* in the federal district courts, the federal courts of appeal, and the Supreme Court of the

16

United States. The Plaintiffs' team was also staffed by several attorneys with fewer years of litigation experience, but each of these attorneys also hold impressive credentials and brought their multiple years of legal practice to bear. *See* Ex. 1-1 ¶¶ 11-14; Ex. 2-1 ¶¶ 29-31.

2. *The Requested Hourly Rates are Reasonable.*

After the initial lodestar analysis, a court's next step is assessing whether the requested hourly rates are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Reasonable hourly rates to be used in the lodestar calculation are "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). *See also Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979) ("In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney.").

Here, the requested rates are reasonable in the Nashville market for cases in federal court concerning complex issues, including constitutional issues. As described in the affidavit of Wallace Dietz, the hourly rates sought by Plaintiffs' counsel are less than or equal to the prevailing hourly rates for complex litigation in this Court. *See* Ex. 5-1 ¶¶ 11-12. Based upon his background, experience, and review of the materials described in his declaration, Mr. Dietz also opines that the hourly rates claimed by Plaintiffs' counsel are reasonable and within the range of rates charged attorneys of like experience and skill in the Nashville legal market. Ex. 5-1 ¶¶ 14-16.

Moreover, the rates sought by Plaintiffs are commensurate (taking into account the passage of time) with rates approved by this Court in other complex civil rights litigation. *See*

*Thomas v. Long*, No. 3:17-CV-00005, 2020 WL 5530232, at *5 (M.D. Tenn. Sept. 15, 2020) (granting attorneys' fees in petition seeking rates ranging from $215 to $600 per hour); *Tanco v. Haslam*, No. 3:13-CV-01159, 2016 WL 1171058, at *3 (M.D. Tenn. Mar. 25, 2016) (finding counsel for plaintiffs' requested hourly rates between $225 and $575 to be "reasonable for attorneys of comparable quality and experience in the Nashville area").

### C. The Litigation Expenses Sought by Plaintiffs Are Reasonable and Should Be Included in the Court's Fee Award.

The prevailing party in a Section 1983 claim is also entitled to an award of its litigation expenses. The Sixth Circuit has recognized that Section 1988 permits the award of "those incidental and necessary expenses incurred in furnishing effective and competent representation." *Ohio Right to Life Soc'y, Inc., v. Ohio Elections Comm'n*, 590 F. App'x 597, 605 (6th Cir. 2014).

Plaintiffs seek $5,274.04  in litigation expenses, as detailed in the declarations of Allison Holt Ryan (Ex. 1-1) and Ezra Rosenberg (Ex. 2-1). These expenses include payments for court fees, travel expenses, and legal research. As explained in the attached declarations, the legal expenses are reasonable and were necessary to effectively prosecute Plaintiffs' claims in this matter. Moreover, counsel has excluded more than ten thousand dollars in litigation expenses from this request in the exercise of billing judgment. Ex. 1-1 ¶ 30.

### CONCLUSION

As the prevailing parties, Plaintiffs are entitled to recover their attorneys' fees and litigation expenses under 42 U.S.C. § 1988. The amounts sought by Plaintiffs are reasonable and reflect the success on the merits achieved and the time reasonably expended by Plaintiffs' counsel to obtain this result. Accordingly, Plaintiffs respectfully ask the Court to grant Plaintiffs an award of all the time and expenses claimed in this motion. In sum, the total sought for

18

Plaintiffs' attorneys' fees and litigation expenses is $729,689.54. This sum represents

$724,415.50 in attorneys' fees and $5,274.04 in litigation expenses.

Dated: December 21, 2020

Respectfully submitted,

/s/ Taylor Cates

Taylor A. Cates, BPR No. 20006
Burch, Porter & Johnson, PLLC
130 N. Court Avenue
Memphis, TN 38103
(901) 524-5165
tcates@bpjlaw.com

Ira M. Feinberg*
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3509
irafeinberg@hoganlovells.com

Allison M. Ryan*
Madeline Gitomer*
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
allison.ryan@hoganlovells.com
madeline.gitomer@hoganlovells.com

Ezra D. Rosenberg*
Pooja Chaudhuri*
Lawyers' Committee for Civil Rights Under
Law
1500 K Street, NW, Suite 900
Washington, D.C. 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
nehaudhuri@lawyerscommittee.org

Yael Bromberg*
Bromberg Law LLC
The Andrew Goodman Foundation

10 Mountainview Road
Upper Saddle River, NJ 07458
(201) 995-1808
yaelbromberglaw@gmail.com

Attorneys for Plaintiffs Tennessee State
Conference of the NAACP, Democracy
Nashville-Democratic Communities, The
Equity Alliance, and The Andrew Goodman
Foundation

*admitted *pro hac vice*