# EXHIBIT 4-1

YAEL BROMBERG DECLARATION

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE STATE CONFERENCE OF THE N.A.A.C.P., DEMOCRACY NASHVILLE-DEMOCRATIC COMMUNITIES, THE EQUITY ALLIANCE, and THE ANDREW GOODMAN FOUNDATION,<br><br>        Plaintiffs,<br><br>v.<br><br>TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, HERBERT SLATERY III, in his official capacity as Attorney General of the State of Tennessee, the STATE ELECTION COMMISSION, and DONNA BARRETT, JUDY BLACKBURN, GREG DUCKETT, MIKE MCDONALD, JIMMY WALLACE, TOM WHEELER, and KENT YOUNCE, in their official capacities as members of the State Election Commission,<br><br>        Defendants. | Case No. 3:19-cv-00365<br><br>Judge Aleta A. Trauger<br><br>**DECLARATION OF YAEL BROMBERG, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS** |

YAEL BROMBERG, of full age, certifies as follows:

1. My name is Yael Bromberg. I am over the age of twenty-one (21) years of age and am fully competent to execute this Declaration. I have knowledge of the facts recited herein, which are true and correct, and are based on my personal knowledge and review of the records of Bromberg Law LLC, of which I am Principal (hereinafter, "the Firm").

1

2. I make this Declaration in support of the plaintiffs' request for counsel fees as the prevailing party in this matter.

3. I serve as Chief Counsel for Voting Rights to the Andrew Goodman Foundation (outside counsel). The Andrew Goodman Foundation (AGF) is a national, nonpartisan organization with the mission of making young voices and votes a powerful force in democracy. AGF's vision is for young people to become active, engaged citizens who ensure a just and sustainable future. AGF is a legacy organization whose namesake, Andrew Goodman, participated in Mississippi Freedom Summer, a voter registration project aimed at registering African Americans to vote in Mississippi. On his first day of arrival, he and his fellow civil rights advocates James Chaney and Michael Schwerner were kidnapped and murdered by members of the Ku Klux Klan who did not want Black Mississippians to have access to the ballot box and the right to vote.

4. Today, among other things, AGF supports Campuses across the country with training and mentorship, mini-grants for an activities budget to select institutions of higher learning, and other financial assistance to students in the form of modest stipends provided each semester. AGF is headquartered in New Jersey, and its national reach extends across the country, in part, through its Vote Everywhere initiative. Vote Everywhere is a national, nonpartisan civic engagement movement of student leaders and college and university partners, and it works in coordination with AGF headquarters. At present, AGF's Vote Everywhere programming is done on nearly 100 Campuses in 25 states and Washington, D.C., including in Tennessee at Tennessee State University – the largest and only state-funded historically Black university in Tennessee.

5. The work I personally performed in connection with this litigation included drafting and editing legal filings, developing litigation strategy, and reviewing pleadings and other key documents during the course of the litigation.

6. Throughout the litigation, I have had the privilege to work as co-counsel with Ezra D. Rosenberg, Jon Greenbaum, Julie Houk, and Pooja Chaudhuri of the Lawyers' Committee for Civil Rights Under Law; Ira M. Feinberg, Allison M. Ryan, Carolyn A. Delone, Madeline Gitomer, and Kyle Druding of Hogan Lovells US LLP; and local counsel Taylor A. Cates of Burch Porter & Johnson PLLC and Daniel Ayoade Yoon.

7. I am a member of the Bar of the States of New Jersey, New York, and the District of Columbia. I participated in this action pursuant to *pro hac vice* admission.

8. I am requesting that the Court award Bromberg Law LLC attorneys' fees in the sum of $11,704 for 30.8 hours of work dedicated to this matter, as set forth further below. This figure does not take into account hours of work which I marked down or excluded from the time entries because they felt excessive or extraneous. Certain time spent in consultation with other attorneys has also been reduced or eliminated as an exercise of billing discretion, as has hours dedicated to basic correspondences, reading opposition submissions, and time entries following the grant of preliminary injunction, including in relation to amending the complaint and stipulating dismissal. This figure does not include hours dedicated to preparing this fee application, responding to any forthcoming objections thereto, or related litigation.

9. For the Court's convenience, I have broken down the 30.8 hours claimed into discrete segments of the case:

| Dates | Principal Activity in Case | Hours |
| --- | --- | --- |
| 4/19/2020 – 8/13/2019 | Obtaining Preliminary Relief | 30.8 |

| 12/1/2020 – 3/2/2020 | Amending the Complaint | N/A |
|---|---|---|
| 3/3/2020 – 10/27/2020 | Stipulation of Dismissal | N/A |
| Current | Fee Application | N/A |
| **Total Hours Billed** | | **30.8** |

10. It is submitted that the attorneys' fees requested by the Firm are reasonable based upon the following information, which addresses the applicable criteria found in RPC 1.5(a) to determine the reasonableness of the fee.

11. Addressing RPC 1.5(a)(1) and (2), the dates, time, and nature of the 30.8 hours of Firm services for which the Firm requests compensation are set forth in the attached **Exhibit A**. I respectfully submit that each of the entries is sufficiently detailed. I note by way of explanation that some entries may not reveal the subjects of communication because doing otherwise would reveal privileged information, and because doing otherwise would reveal protected work product information.

12. I have exercised appropriate billing discretion and judgment as required by Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) and other applicable law, by either eliminating or reducing a number of time entries where such reduction or elimination was appropriate.

13. Addressing RPC 1.5(a)(7), I received my J.D. from Rutgers School of Law in 2011 and my undergraduate degrees in 2005 from Douglass College, the women's college of New Jersey. During law school, I received the prestigious Kinoy/Stavis Fellowship and was placed in the Rutgers Constitutional Litigation Clinic for two years, where I worked exclusively on constitutional matters, including election law and voting rights litigation and projects. Thereafter, I clerked for approximately 2.5 years with the Honorable Dickinson R. Debevoise in the United States District Court for the District of New Jersey. Upon completing my clerkship, I accepted a position in Washington, D.C. to work in the

national headquarters of Common Cause, a seminal national good government organization with state chapters across the country. At Common Cause, I assisted in managing the litigation docket and pursuing actions in state courts and federal courts, including organizing amicus submissions to the United States Supreme Court on pressing constitutional matters. Thereafter, I taught and supervised litigation for two years in the Georgetown Law Civil Rights Clinic and Voting Rights Institute alongside Professor of Law and Clinical Director Aderson B. Francois. As a component of my fellowship with Georgetown Law, I received an LLM in Advocacy with distinction. Upon completion of my term with Georgetown Law, I began my private practice where I primarily focus on civil rights, free speech, election law, and voting rights matters. I am also of counsel to Weissman & Mintz, LLC, a New Jersey law firm representing unions and nonprofit organizations in the state.

14. I serve as Chief Counsel for Voting Rights (outside counsel) with The Andrew Goodman Foundation, a national nonpartisan organization dedicated to making youth voices and votes a powerful force in democracy. This includes pursuing youth voting rights litigation nationally, including in state and federal cases in Florida, New York, Wisconsin, and before the United States Supreme Court.

15. Among the election law cases where I have been co-counsel or otherwise directly engaged are:

    - Garcia v. Abbott, No. 19-1389 (U.S. Oct. 22, 2020) – co-counsel on amicus brief in support of petition for writ of certiorari, on behalf of The Andrew Goodman Foundation, Equal Citizens, and Common Cause. The amicus brief informs the Court of the Twenty-Sixth Amendment interests in the case and recommends a standard of review.
        o Leading national election law scholar Rick Hasen posted about this "important amicus brief," and that he has "followed closely the work of Yael Bromberg on the scope of the 26th Amendment." Rick Hasen,

5

Election Law Blog (Oct. 23, 2020), *available at*: https://electionlawblog.org/?p=117330.

- Andrew Goodman Foundation et al. v Dutchess County Board of Elections et al., __ N.Y.S.2d __ (Sup. Ct. 2020), subseq. history (App. Div. 2d Dep't 2020) – co-counsel on behalf of organizational and individual plaintiffs including the University President, to secure for the first time an on-campus polling place for the 2020 general election, following a twenty-year history of student voter suppression in the county.
- Central Jersey Progressive Democrats v. Flynn, MER-L-732-19 (N.J. Super. 2020) – sole counsel achieving precedential preliminary and permanent relief on behalf of organizational and individual plaintiffs to run for county committee party office free of sex and gender discrimination.
- Andrew Goodman Foundation v. Bostelmann, No. 19-cv-955 (W.D. Wis. 2019) – co-counsel on behalf of organizational plaintiff challenging the most restrictive student voter identification law in the nation.
- League of Women Voters of Florida, Inc. v. Deztner, No. 4:18-cv-00251 (N.D. Fla. 2018) – supported litigation amending the complaint and securing permanent relief in a successful challenge to the State of Florida's ban on situating polling places on-campuses during the early voting period.
- One Wisconsin Institute, Inc. et al v. Thomsen, No. 16-3083 (7th Cir. 2016) – lead counsel in amicus brief on behalf of Common Cause in youth voting rights challenge to various Wisconsin election laws.
- Rutgers University Student Assembly et al. v. Middlesex County Bd of Elections, (App. Div. 2014) – co-counsel in amicus brief on behalf of Common Cause challenging New Jersey's 21-day advance voter registration requirement.

16. My recent legal scholarship on the Twenty-Sixth Amendment has been dubbed a groundbreaking study and legal call to arms. Yael Bromberg, *Youth Voting Rights and the Unfulfilled Promise of the Twenty-Sixth Amendment*, 21 U. Penn. J. Const. L. 1105, 1138 (2019). The article was ranked top 10 election law downloads within an applicable time period upon publication on SSRN, and top 10 downloads in various SSRN e-Journals related to constitutional interpretation, election law and voting rights, and political institutions. Citations to the work include:

- Texas Democratic Party v. Abbott, No. 20-50407, __ F.2d __ (5th Cir. June 4, 2020).
- Pls.' Motion for Preliminary Injunction, *The Andrew Goodman Foundation v Bostelmann* (W.D. Wisc. Jan. 22, 2020).

6

Case 3:19-cv-00365   Document 103-5   Filed 12/21/20   Page 7 of 11 PageID #: 1567

- RL Hasen, L Litman, *Thin and Thick Conceptions of the Nineteenth Amendment Right to Vote and Congress's Power to Enforce it*, Georgetown L. J. (2020).
- RL Hasen, *Three Pathologies of American Voting Rights Illuminated by the COVID-19 Pandemic, and How to Treat and Cure them*, UC Irvine School of Law Research Paper (2020).
- CW Dunn et al., *Legal Theories to Compel Vote-by-Mail in Federal Court*, 11 Calif. L. Rev. Online 166 (2020).
- Clement, Kristina, "More than Free Speech: Politics, Higher Education, and the First Amendment." Dissertation, Georgia State University, 2020.

17. My recent speaking engagements on the topic of voting rights, election law, and democracy law include:

- Accredited Session Speaker, *Youth Voting Rights, Election Protection, and the Twenty-Sixth Amendment*, D.C. Bar Association 2020 Conference: 100 years of the 19th Amendment (Oct. 20, 2020).
- Accredited Seminar Speaker, *Twenty-Sixth Amendment*, Vermont Bar Association Annual Meeting (Oct. 9, 2020).
- Speaker, *Lifting our voices: Importance of 2020 Elections, 2020 Census & Gender Equity*, NJ Hispanic Bar Association: 2020 Women's Empowerment Leadership & Law Conference (June 25, 2020).
- Speaker, *What Happens Next? A post-election analysis*, Georgetown Law Students for Democratic Reform (Nov. 6, 2020) (all co-panelists are current and former commissioners of the Federal Elections Commission and the U.S. Commission of Civil Rights).
- Invited Speaker, District of Columbia Commission on Human Rights (forthcoming in January 2021).
- Panelist, The Andrew Goodman Foundation's *Take Your Power Back Weekend*, National Civic Leadership virtual conference with athletes, celebrities, organizers, and experts (Aug. 2020).
- Tedx Talk, *Youth Power, Youth Voting, & The Twenty-Sixth Amendment* (Feb. 2020).
- Invited Speaker, *Student Rights Under Attack: The 26th Amendment and You*, Duke University Sanford School of Public Policy (Feb. 2020).
- Keynote Speaker, The Andrew Goodman Foundation's *National Civic Leadership Training* (2019).
- Three-time panelist, annual American Promise's National Citizenship Leadership Conference, Washington, D.C. (2016-2020).
- Panelist, *Whose Speech? A Post-Charlottesville Discussion*, Georgetown Law (March 2018).

- Discussant on Panel moderated by Ari Berman, *Tuning In and Turning Out: Millennials are active but not voting; what's stopping them and how can we make their voices count?* George Washington University, Washington, D.C. (2016).

18. I provide ongoing news commentary and presentations on the topic of constitutional law: Wisconsin Public Radio; Slate (which called the scholarship a "groundbreaking study"); The Hill; Washington Post; University Business Magazine; Story of America; Pacifica Radio; etc.

19. In January 2021, I will begin teaching an upper-level skills seminar at Rutgers Law that I have designed, entitled "Election Law and the Political Process."

20. In light of my prior experience with election law and constitutional law, my familiarity with these areas of law allowed me to efficiently focus on the discrete areas of law involved here.

21. Addressing RPC 1.5(a)(3), I respectfully request an award of $380.00 per hour of my professional time. This rate is admittedly much lower than hourly rates normally charged by an attorney with my years of experience, and takes into account the special knowledge of election and constitutional law that was helpful to successfully and efficiently litigate a case like this.

22. Bromberg Law LLC engages in this action on a pro bono basis with the understanding that it retains the right to petition the court for recovery of its fees and costs in the event that plaintiffs prevailed in their claims.

23. Addressing RPC 1.5(a)(4), Plaintiffs have obtained all the relief sought in this case. In September 2019, the Court granted preliminary relief. The Court found that, "[t]here is simply no basis in the record for concluding that the Act will provide much benefit to Tennesseans, and even less reason to think that any benefit will come close to outweighing the harms to Tennesseans (and non-Tennesseans) who merely wish to

exercise their core constitutional rights of participating in the political process by encouraging voter registration."

24. The effect of the Court's ruling was to prevent the challenged law from being implemented just weeks before it was intended to.

25. The Court's ruling had significant impact in Tennessee, where good faith voter registration organizations and their associated volunteers and staff could continue to engage in third party voter registration free from fear and intimidation. Little did we know that just six months after the Court's grant of preliminary injunction relief, a pandemic would sweep the globe, and critical voter registration efforts leading up to a seminal presidential election would face new unprecedented challenges. Had the Court not granted preliminary relief in September 2019, there is little wonder what the voter registration rates in Tennessee would look like in October 2020.

26. The Court's ruling likely has significant impact beyond Tennessee as well, as a similar law in Texas was proposed but failed to be enacted during the pendency of this litigation.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, that I am subject to punishment.

*Yael Bromberg* (signature)

Dated: December 21, 2020

# Exhibit A to Declaration of Yael Bromberg

## Bromberg Law LLC Attorney Hours
**FILED UNDER SEAL**