**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE**

| | |
|---|---|
| TENNESSEE STATE CONFERENCE OF THE N.A.A.C.P., *et al.*, | |
| *Plaintiffs*, | |
| v. | |
| TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee, *et al.*, | |
| *Defendants*. | Civil Nos. 3:19-cv-365, 3:19-cv-385 Hon. Aleta A. Trauger |
| _____ | |
| LEAGUE OF WOMEN VOTERS OF TENNESSEE, *et al.*, | |
| *Plaintiffs*, | |
| v. | |
| TRE HARGETT, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES

In their current Motions (LWV Mot. for Att'y Fees, D.E. 100; NAACP Mot. for Att'y Fees,

D.E. 103), Plaintiffs cumulatively seek $1,203,518.35 in fees and $9,202.53 in costs—all for a

case that effectively ended in mootness after a preliminary injunction. For the reasons set forth

below, however, Plaintiffs have failed to establish that they are the "prevailing part[ies]" under 42

U.S.C. § 1988(b), a necessary prerequisite for recovery of any fees and costs. Further, even

assuming prevailing party status, Plaintiffs' supporting documents reflect significant overstaffing,

vague (and in certain instances non-existent) descriptions of legal services provided, and billings

for unnecessary legal services and other non-compensable activities—all of which warrant significant reduction in the requested amounts.

## PROCEDURAL BACKGROUND.

On May 2, 2019, Plaintiffs Tennessee State Conference of the NAACP, Democracy Nashville-Democratic Communities, the Equity Alliance, and the Andrew Goodman Foundation (collectively "NAACP" or "NAACP Plaintiffs") brought suit challenging Pub. Ch. 250, which purported to regulate voter registration in Tennessee. (*See generally* NAACP Compl., D.E. 1) Defendants moved to dismiss NAACP's Complaint, (*see* NAACP Mot. to Dismiss, D.E. 21), and NAACP Plaintiffs sought a preliminary injunction, (*see* NAACP Mot. for Prelim. Inj., D.E. 39.) On September 9, 2019, this Court denied Defendants' Motion to Dismiss. (*See* NAACP Order denying Mot. to Dismiss, D.E. 48.) And on September 13, 2019, this Court granted NAACP Plaintiffs' Motion for a Preliminary Injunction. (NAACP Prelim. Inj. Order D.E. 54.)

On May 9, 2019, Plaintiffs the League of Women Voters of Tennessee, League of Women Voters Tennessee Education Fund, American Muslim Advisory Council, Mid-South Peace & Justice Center, and Rock the Vote (collectively "LWV" or "LWV Plaintiffs") also brought suit challenging Pub. Ch. 250. (*See* LWV Compl., D.E. 1). LWV Plaintiffs later amended their complaint to add the Memphis Central Labor Council and HeadCount as parties. (*See* LWV Am. Compl., D.E. 37). Defendants moved to dismiss LWV Plaintiffs' Amended Complaint, (*see* LWV Mot. to Dismiss, D.E. 39), and LWV Plaintiffs sought a preliminary injunction, (LWV Mot. for Prelim. Inj., D.E. 54). On September 9, 2019, this Court denied Defendants' Motion to Dismiss. (*See* LWV Order denying Mot. to Dismiss, D.E. 57). And on September 12, 2019, this Court

2

granted LWV Plaintiffs' Motion for a Preliminary Injunction. (*See* LWV Prelim. Inj. Order, D.E. 60.)

After a joint case management conference, the cases brought by LWV Plaintiffs and NAACP Plaintiffs were consolidated for all purposes, including trial. (LWV Order of Consolidation, D.E. 70; NAACP Order of Consolidation, D.E. 66.)

Several months later, on April 2, 2020, Governor Lee signed SB 2298/HB 2363 into law, which repealed and replaced the provisions of Pub. Ch. 250. *See HB 2363 Bill History*, Tenn. General Assembly http://wapp.capitol.tn.gov/apps/Billinfo/default.aspx?BillNumber=HB2363&ga=111 (last visited January 21, 2021). Defendants and Plaintiffs then conferred and, after agreeing that the new law rendered the instant actions moot, they filed a joint stipulation of dismissal. (*See* Stipulation of Dismissal, D.E. 97). This Court then dismissed the cases. (*See* Order of Dismissal, D.E. 98.) The instant fee motions followed.

## ARGUMENT

Plaintiffs sought to permanently enjoin several newly enacted Tennessee laws. They also asked this Court to declare those laws unconstitutional. In addition to this lasting relief, Plaintiffs also sought a preliminary injunction that preserved the status quo at the time they filed their suits. After Plaintiffs obtained that limited relief, Tennessee's General Assembly repealed the challenged laws. The parties then agreed that the case was moot and filed a stipulation of voluntary dismissal. Now, despite the limited nature of their success, Plaintiffs seek to portray themselves as prevailing parties and have asked this court for well over $1 million in attorney's fees. But as the Sixth Circuit has recognized, "the preliminary nature of [that] relief—together with the requirement that a prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely catalyze the defendant to voluntary action—will generally counsel against fees in the context of preliminary injunctions." *See McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir.

2010) (cleaned up). That reasoning militates against an award of fees here and this Court should reject Plaintiffs' request. Yet even if this Court concludes that Plaintiffs are prevailing parties and are thus entitled to recover fees, this Court should reduce Plaintiffs' fee awards to account for significant overstaffing, unnecessary legal work, vague time entries, and other non-compensable activities.

## I.      Plaintiffs Are Not Entitled to Recover Their Attorney's Fees.

There "is no common law right to attorney's fees." *McQueary*, 614 F.3d at 596. Instead, "[o]ur legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless of whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). For that reason, courts do not award fees—even to the winner—absent "explicit statutory authority." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001). Congress created that "explicit statutory authority" when it enacted 42 U.S.C. § 1988. That statute "empower[s] the courts to grant fees to parties who win § 1983 actions." *Id.*

But not every victory confers prevailing-party status. Instead, to determine whether a party has attained that status, courts engage in a "case-specific inquiry." *See Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019) (citing *McQueary*, 614 F.3d at 597–98). And in doing so, courts "look for a court-ordered, material, [and] enduring change in the legal relationship between the parties." *Id.* These three requirements are not self-explanatory. For the change to be "court-ordered," the preliminary injunction "must have caused it; it can't stem from [defendants'] voluntary modification of [their] conduct." *Id.* Next, for the change to have been "material," it must have "directly benefited plaintiffs by altering how [the defendants] treated them." *Id.* And finally, for the change to have been "enduring," it must have been "irrevocable, meaning it must have provided plaintiffs with everything they asked for." *Id.* The relief obtained by Plaintiffs here—a

preliminary injunction preserving the status quo that was followed by voluntary legislative action—falls far short of these requirements.

### A. Plaintiffs are not prevailing parties.

Plaintiffs challenged several newly enacted Tennessee laws that, had they taken effect, would allegedly have violated their rights under the First and Fourteenth Amendments. (*See generally* NAACP Compl., D.E. 1; LWV Compl., D.E. 1; LWV Am. Compl., D.E. 37.) In their complaints, Plaintiffs sought both preliminary and permanent injunctive relief as well as declarations that the challenged laws were unconstitutional. (*See* NAACP Compl., D.E. 1, PageID# 37–38; LWV Am. Compl., D.E. 37, PageID# 280–81.) And after they filed their complaints, Plaintiffs filed motions for preliminary injunctions. (*See generally* NAACP Mot. for Prelim. Inj., D.E. 39; LWV Mot. for Prelim. Inj., D.E. 54.) This Court granted Plaintiffs' requests for preliminary injunctive relief, concluding that they were likely to succeed on the merits of their claims. (*See* NAACP Prelim. Inj. Order, D.E. 54, PageID# 687; LWV Prelim Inj. Order, D.E. 60, PageID# 672.) By issuing these preliminary injunctions, this Court temporarily prevented the challenged laws from going into effect and preserved the status quo during the litigation. Not long after this Court issued the injunction, however, the Tennessee General Assembly repealed the challenged provisions. The parties agreed that this legislative action effectively mooted Plaintiffs claims and filed a stipulation for voluntary dismissal. (*See* Stipulation of Dismissal, D.E. 97). This Court ordered dismissal that same day. (*See* Order of Dismissal, D.E. 98.)

This relief—a preliminary injunction preserving the status quo followed by voluntary legislative changes—does not render Plaintiffs prevailing parties under Section 1988. The Sixth Circuit's opinion in *McQueary* is instructive. There, the plaintiff brought a constitutional challenge to three newly enacted Kentucky statutes, all of which acted to prevent protests at

military funerals. *See* 614 F.3d at 596. The plaintiff sought to have the statutes declared facially unconstitutional and to enjoin their enforcement. *See id.* The district court granted a preliminary injunction, finding it was "likely that the provisions were constitutionally overbroad." *See id.* Not long after that, the Kentucky legislature repealed the challenged laws, thus mooting the plaintiff's claims. *Id.* The district court then denied the plaintiff's motion for attorney's fees.

In considering the district court's denial of the plaintiff's fee request, the Sixth Circuit stopped short of creating a bright-line rule against fee awards for plaintiffs who obtain only a preliminary injunction. Instead, the court concluded that a "contextual and case-specific inquiry" should be performed. That inquiry, the court explained, will determine whether the case presents an "occasional exception" to the general rule that "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *See id.* at 604. And while the court declined to set out a bright-line rule, it recognized that "the 'preliminary' nature of the relief—together with the requirement that a prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely 'catalyze' the defendant to voluntary action—will generally counsel against fees in the context of preliminary injunctions." *Id.* at 601.

On remand, the district court applied the guiding principles set out by the Sixth Circuit. The court began by acknowledging the Sixth Circuit's rejection of a per se rule that plaintiffs who receive preliminary injunctions without more cannot be prevailing parties. *See McQueary v. Conway*, No. 06-CV-24-KKC, 2012 WL 3149344, at *2 (E.D. Ky. Aug. 1, 2012). The court further noted that the Sixth Circuit "indicated that there should be an exception where the preliminary injunction winner 'receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time.'" *See id.* (quoting *McQueary*, 614 F.3d

at 599). To determine whether the plaintiff had "received everything [he] asked for," the court compared the plaintiff's requested relief with the preliminary injunction he ultimately obtained. *See id.* at \*2. In his complaint, the plaintiff had sought both preliminary- and permanent-injunctive relief. *Id.* Yet while the plaintiff did receive a preliminary injunction, the State legislature mooted his claims by voluntarily repealing the challenged provisions. *See id.* As a result, the plaintiff's request for permanent injunctive relief was "never granted." *Id.* Because "Section 1988 requires lasting relief, not the temporary fleeting success that an injunction effective only while the case is pending represents," *see McQueary*, 614 F.3d at 597 (citing *Sole*, 551 U.S. at 83), the district court denied the plaintiffs' request for attorney's fees. That denial of fees was upheld by the Sixth Circuit in a second appeal. *See McQueary v. Conway*, 508 F. App'x 522, 524 (6th Cir. 2012).

The Sixth Circuit's instructions in *McQueary* confirm that Plaintiffs are not entitled to recover their attorney's fees. Like the plaintiff in *McQueary*, Plaintiffs here sought not only preliminary-injunctive relief, but also permanent and declaratory relief. And just like the plaintiff there, Plaintiffs here obtained only a preliminary injunction—their other requests for relief were mooted by the State legislature. This means that Plaintiffs' request for a permanent injunction, like the plaintiff's request in *McQueary*, was "never granted." *See McQueary*, 2012 WL 3149344, at \*2. This is fatal to Plaintiffs' request for attorney's fees. *See McQueary*, 508 F. App'x at 524 (upholding the district court's denial of fees and noting that while the plaintiff sought permanent injunctive relief, the "preliminary injunction itself did not ultimately provide him with [that] relief").

This Court recently followed the Sixth Circuit's guidance in denying a request for attorney's fees. In *Jones v. Haynes*, plaintiffs filed suit against the Tennessee Registry of Election finance, alleging violations of their First and Fourteenth Amendment rights. *See* 350 F.Supp.3d

691, 693 (M.D. Tenn. 2018).  The plaintiffs sought declaratory and injunctive relief.  *See id.*  This Court granted a preliminary injunction, barring the State from enforcing the challenged provisions. *See id.* at 694.  But shortly after the injunction was issued, the challenged provisions were amended.  *See id.*  As a result, this Court dismissed the case as moot and dissolved the preliminary injunction.  *See id.*  The plaintiffs then sought to recover their attorney's fees.  In denying the plaintiffs' motion, Judge Crenshaw aptly explained that "[w]hen a plaintiff is successful because the defendant voluntarily elected to change course, even if the litigation was the catalyst for the change, the plaintiff did not prevail."  *Id.* at 695 (citing *Buckhannon*, 532 U.S. at 605).  Further, because "[t]he court-ordered change in the legal relationship between the parties must be enduring and irrevocable" to render a plaintiff the prevailing party, *see id.* (citing *McQueary*, 614 F.3d at 597), "a preliminary injunction does not establish prevailing party status if it is reversed, dissolved, or otherwise undone by the final decision in the same case because Section 1988 requires lasting relief, not the temporary, fleeting success that an injunction represents," *id.*  Because the plaintiffs' "lasting relief" came from "Tennessee's General Assembly, not from any court," this Court correctly concluded that they were not prevailing parties entitled to recover fees under Section 1988.  *See id.* at 695, 697.

Plaintiffs fail to meaningfully engage with the Sixth Circuit's guidance in *McQueary* or with this Court's recent decision in *Jones*.  Instead, they insist that the temporary injunction here is the sort of "court-ordered, material, and enduring change" that merits an award of attorney's fees.  (*See* LWV Mot. for Att'y Fees, D.E. 100-1, PageID# 1240; *see also* NAACP Mot. for Att'y Fees, D.E. 103-1, PageID# 1481–83.)  But the ultimate change here—the State's permanent inability to enforce the challenged provisions—was not "court-ordered."  *See Miller*, 936 F.3d at 448 (explaining that for a change to be "court-ordered," the preliminary injunction "must have

caused it; it can't stem from [defendants'] voluntary modification of [their] conduct"). And the change that *was* court-ordered—the State's temporary inability to enforce the challenged provisions—was not "enduring." *See id.* (noting that for the change to have been "enduring," it must have been "irrevocable, meaning it must have provided plaintiffs with everything they asked for"). In other words, while Plaintiffs did ultimately receive what they "sought to achieve by the lawsuit," they received it through the General Assembly's "voluntary change in conduct" which "lacks the necessary judicial *imprimatur* on the change." *Buckhannon*, 532 U.S. at 605; *see also Jones*, 350 F.Supp.3d at 695 (denying a motion for attorney's fees where the plaintiffs' "lasting relief—in the form of a legislative amendment to [the challenged provisions]—came from the Tennessee General Assembly, not from any court"). Plaintiffs, then, are not prevailing parties and their requests for attorney's fees should be denied.

### 1. This Court's decision in *Occupy Nashville* is distinguishable.

Attempting to escape this conclusion, Plaintiffs point to this Court's award of attorney's fees in *Occupy Nashville v. Haslam*, No. 3:11-cv-01037, 2015 WL 4727097, at *1 (M.D. Tenn. Aug. 10, 2015). There, Plaintiffs argue, this Court awarded attorney's fees where the plaintiffs received nothing more than a preliminary injunction. (*See* NAACP Mot. for Att'y Fees, D.E. 103-1, PageID# 1482.) The injunction here—like the one in *Occupy Nashville*—Plaintiffs contend, was "preliminary in name but not in substance." (*See id.* (quoting *Occupy Nashville*, 2015 WL 4727097, at *8 (internal quotation marks omitted))). But *Occupy Nashville* is distinguishable.

*First*, the injunction in *Occupy Nashville*—in stark contrast to the injunction here—did grant the plaintiffs all the relief they requested. Plaintiffs there "sought and obtained immediate relief to protest at a specific place (the Legislative Plaza) at a specific point in time (i.e., to continue their ongoing protests into November 2011 and thereafter)." *Occupy Nashville*, 2015 WL

4727097, at *7 n.4. Those plaintiffs got what they wanted from the preliminary injunction. *See id.* at *7 (observing that "[t]he entry of injunctive relief by the court (through the TRO and the Preliminary Injunction) gave the plaintiffs the immediate relief that they sought: the right to continue protesting on Legislative Plaza."). Here, though, Plaintiffs sought declaratory relief as well as preliminary and permanent injunctive relief. (*See* NAACP Am. Compl., D.E. 75, PageID# 1003–04; LWV Second Am. Compl., D.E. 73, PageID# 954–55.) Yet they received only a preliminary injunction from this Court that preserved the status quo during the litigation—the lasting relief they received came from the General Assembly. And again, relief granted by the legislature, even when it gives plaintiffs everything they want, does not render those plaintiffs prevailing parties under Section 1988. *See Buckhannon*, 532 U.S. at 605; *see also McQueary*, 508 F. App'x at 524 (upholding the district court's denial of fees and noting that while the plaintiff sought permanent injunctive relief, the "preliminary injunction itself did not ultimately provide him with [that] relief").

*Second*, in *Occupy Nashville*, this Court awarded fees because it viewed "the plaintiffs as having prevailed on their official capacity claims." 2015 WL 4727097, at *7. A fact that was bolstered by the defendants "agree[ment] to the TRO" and "to the Preliminary Injunction, which effectively converted the TRO into an indefinite injunction." *See id.* Not so here. Defendants did not agree to any injunction. Rather, after this Court issued its preliminary injunction, the General Assembly repealed the challenged provisions. Without any agreement from Defendants, Plaintiffs' preliminary injunction here is easily distinguished from the injunction in *Occupy Nashville* and is not the sort of "unambiguous indication of probable success on the merits" that might justify an award of fees. *See McQueary*, 614 F.3d at 598 (quoting *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002)).

### 2. The remaining cases Plaintiffs rely on are distinguishable, noncontrolling, or both.

In addition to *Occupy Nashville*, Plaintiffs rely on several other cases that they insist support an award of attorney's fees here. These cases, though, are distinguishable, noncontrolling, or both.

*First*, Plaintiffs point to *Planned Parenthood S.W. Ohio Region v. DeWine*, 931 F.3d 530 (6th Cir. 2019). In that case, Plaintiffs explain, the Sixth Circuit upheld a prevailing-party fee award where the plaintiffs obtained a preliminary injunction but, before a final merits ruling, the case was mooted by a non-party's actions. (*See* LWV Mot. for Att'y Fees, D.E. 100-1, PageID# 1240–41.) But while these facts initially appear similar to the facts here, Plaintiffs decline to mention that the injunction in *DeWine* "precluded enforcement of the [challenged] statute in certain circumstances throughout almost 12 years of litigation" and was "twice affirmed" by the Sixth Circuit. *Planned Parenthood Sw. Ohio Region v. DeWine*, 931 F.3d 530, 539 (6th Cir. 2019), *cert. denied sub nom. Yost v. Planned Parenthood Sw. Ohio Region*, 141 S. Ct. 189 (2020). So while the Sixth Circuit did conclude that a preliminary injunction was sufficient to render those plaintiffs prevailing parties, the necessary "contextual and case-specific inquiry," *see McQueary*, 614 F.3d at 601, confirms that the facts here are distinguishable and do not support a fee award.

*Second*, Plaintiffs rely on *League of Women Voters of Fla. v. Browning*, No. 06-21265-CIV, 2008 WL 5733166, at *1 (S.D. Fla. Dec. 4, 2008), *report and recommendation adopted as modified*, 2009 WL 701107 (S.D. Fla. Mar. 16, 2009), an unpublished, out-of-circuit, district-court ruling. Plaintiffs point out that there, the court awarded attorney's fees "where it had granted a preliminary injunction but the case was later mooted by the legislature repealing the previous restrictions." (*See* LWV Mot. for Att'y Fees, D.E. 100-1, PageID# 1241.) But while Plaintiffs correctly describe that court's decision, it should not persuade this Court here. The cited decision

is from the Southern District of Florida, so it is not controlling.  Not only that, but it was issued in 2008—years before the Sixth Circuit issued its controlling guidance in *McQueary*.  And in the years since, no other court—not even the Southern District of Florida itself—has cited it in determining prevailing-party status.

*Third*, Plaintiffs attempt to draw a favorable comparison to *Michigan State A. Philip Randolph Institute v. Johnson*, No. 16-CV-11844, 2019 WL 2314861, at *1 (E.D. Mich. May 31, 2019).  They claim that there, the district court awarded attorney's fees to plaintiffs who received a preliminary injunction, "because the ruling 'was never reversed on the merits' and the plaintiffs did not receive 'an unfavorable outcome in the end.'"  (*See* LWV Mot. for Att'y Fees, D.E. 100-1, PageID# 1241–42 (quoting *Michigan State*, 2019 WL 2314861, at *2)).  But what Plaintiffs leave out is that the plaintiffs in that case "went on to win on the merits of their claims, obtaining both a favorable judgment and an Order permanently enjoining [the challenged provisions]."  *Michigan State*, 2019 WL 2314861, at *2.  In other words, it was not "a case where [the] Plaintiffs obtained a preliminary injunction, and nothing more."  *Id.* (citing *McQueary*, 614 F.3d at 604).

*Fourth*, Plaintiffs cite to *Thomas v. Long*, No. 3:17-cv-00005, 2020 WL 5530232, at *1 (M.D. Tenn. Sept. 15, 2020).  In that case, this Court concluded that the plaintiffs had attained prevailing-party status where "injunctive relief remained substantially in effect for as long as it was needed."  *See id.* at *8.  But like *Michigan State*, this was not a case where the plaintiffs "obtained a preliminary injunction, and nothing more."  *See McQueary*, 614 F.3d at 604.  Instead, the plaintiffs in *Thomas* received a permanent injunction that became moot on appeal—a far cry from the situation here.[1]

---

[1] What's more, the fee award in *Thomas* has been appealed—a fact that Plaintiffs do not acknowledge—and is currently awaiting the Sixth Circuit's resolution.  *See Thomas v. Haslam*, No. 20-6188.

At bottom, the Sixth Circuit has been clear: to be considered a prevailing party, a Plaintiff must obtain "a court-ordered, material, enduring change in the legal relationship between the parties." *See Miller*, 936 F.3d at 448. Here, there was a court-ordered change and perhaps a legislatively-created enduring change, but there was not a court-ordered, enduring change. By seeking to recover fees based on a preliminary injunction followed by voluntary legislative action, Plaintiffs essentially ask this Court to apply the "catalyst" theory for fee recovery—the theory that a party "prevails if the lawsuit achieves the desired result through a voluntary change in the defendant's behavior." *See Dubuc*, 312 F.3d at 754 n.8. That theory, though, has been expressly rejected by the Supreme Court. *See Buckhannon*, 532 U.S. at 605 (rejecting the catalyst theory as a basis for fee recovery and recognizing that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change"); *see also Dubuc*, 312 F.3d at 754 n.8 (noting that the "catalyst theory has been clearly rejected as a basis for awarding attorney's fees"). All of this means that Plaintiffs are not prevailing parties for purposes of Section 1988. And it follows that their requests for attorney's fees should be denied.

## II.    Plaintiffs' Requests For Attorney's Fees and Costs Should Be Reduced.

Even if the Court determines that Plaintiffs are prevailing parties, their fee requests still should be reduced. Pursuant to 42 U.S.C. § 1988(b), a "court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Section 1988 was designed to induce representation of meritorious civil rights actions, not to "produce windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 526, 565 (1986)).

Plaintiffs, as fee applicants, "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. "The court should then exclude excessive, redundant, or otherwise unnecessary hours." *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (citations omitted).

Application of these guidelines here shows that Plaintiffs' fee requests must be substantially reduced. As noted in Exhibits A and B[2] attached to this response, these cases have been overstaffed since their inception, and Plaintiffs' counsel have block billed for unknown and vague activities that cannot be reviewed, for attempting to find party-plaintiffs even before litigation had commenced, and for activities that were unnecessary and failed to advance the litigation.

### A.     Plaintiffs' Legal Teams were Significantly Overstaffed.

Plaintiffs' entries reveal that these cases have been overstaffed since its inception. The LWV Plaintiffs, for example, retained 15 attorneys. (*See generally* Ex. 2 to LWV Mot. for Att'y Fees, D.E. 100-3.) And the NAACP Plaintiffs were similarly excessive: they retained a total of 11 attorneys, including three partners, six associates, a Chief Counsel, and a Co-Director of Voting Rights. (*See* NAACP Mem. in Supp. of Mot. for Att'y Fees, D.E. 103-1, PageID# 1485–86.) Even after the cases were consolidated, Plaintiffs' fee entries reflect little attempt to coordinate efforts and reduce this overstaffing. Instead, Plaintiffs used this case as a trough to bill as much as they could. To confirm Plaintiffs' overstaffing of this case, consider *Michigan A. Phillip Randolph Institute v. Johnson*, a case favorably cited by Plaintiffs. There, "[m]ost of the work was completed

---

[2] As the NAACP Plaintiffs filed their fee entries under seal, Exhibit B will likewise be filed under seal.

by two attorneys." *Michigan A. Phillip Randolph Inst. v. Johnson*, No. 16-cv-11844, 2019 WL 2314861, at *9 (E.D. Mich. May 31, 2019). And outside of those two attorneys, "the most the Court awarded to any individual was $2,660." *Id.* Here, by contrast, only Plaintiffs' smallest fee requests for attorneys' work are even close to the $2,660 awarded by the court in *Michigan A. Phillip Randolph Institute*—the vast majority are far higher. Indeed, due to the overlarge legal teams attached to both cases, a great deal of time was billed for communication with one another as opposed to performing necessary legal work. *See* Exhibits A and B.

The purpose of Section 1988's attorney's fees provision is to induce representation in civil rights cases, not to create a windfall for attorneys. For that reason, Plaintiffs are "not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job." *See Kentucky Restaurant Concepts, Inc. v. City of Louisville*, 117 Fed. App'x. 415 (6th Cir. 2004). Indeed, one must wonder if any Tennessee clients in a typical civil rights case would be willing to pay for teams of 15 or 11 attorneys if § 1988 did not exist— 1.2 million dollars for a preliminary injunction alone implies a steep price for a permanent one. Plaintiffs' entries reflect significant overbilling due to overstaffing, and any fee award should be reduced by half for that reason alone.

### B. Many of Plaintiffs' Time Entries are Too Vague to Meaningfully Review.

Attorneys seeking fees "have an obligation to 'maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended.'" *Smith v. Service Master Corp.*, 592 Fed. App'x. 363, 371 (6th Cir. 2014) (quoting *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)). "Although Plaintiffs' counsel 'is not required to record in great detail how every minute of his [or her] time was expended,' 'at least counsel should identify the general subject matter of [ ] time expenditures,'" *Id.* (quoting *Hensley*,

461 U.S. at 437 n.12; *see also Wooldridge,* 898 F.2d at 1177; *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 (N.D. Ohio 1997)).

Here, many of Plaintiffs' fee entries are simply unreviewable, as noted on Exhibits A and B, attached to this response. For example: On May 3, 2019, Sophia Lakin billed .71 hours for "Team call." (*See* Ex. 3 to LWV Mot. for Att'y Fees, D.E. 100-4, PageID# 1282.) On August 26, 2019, Sarah Brannon billed .17 hours for "emails with co-counsel." (*See id.* at PageID# 1291.) On October 16, 2019 Molly Danahy billed .4 hours to "Review appellate deadlines," which is not only vague, but also unusual since no appeal was taken in this matter. (*See* Ex. 5 to LWV Mot. for Att'y Fees, D.E. 100-6, PageID# 1332.)

These examples are not isolated. Indeed, as reflected in Exhibits A and B, Plaintiffs' fee applications are replete with unreviewable and vague entries that give little to no insight as to whether the activity billed for was necessary to the litigation. Plaintiffs, then, have failed in their "obligation to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended." *Smith*, 592 Fed. App'x. at 371 (cleaned up). Plaintiffs' fee award should be reduced accordingly.

**C.    The Fee Entries Impermissibly Include Time for Vetting Potential Plaintiffs and other Non-Compensable Pre-Litigation Activities.**

The fee entries reveal that Plaintiffs unnecessarily billed time for vetting potential plaintiffs, as noted in Exhibits A and B, attached to this response. 42 U.S.C. § 1988 should not be read to allow Plaintiffs to bill for vetting potential plaintiffs and work done prior to agreeing to represent an actual client. *See, e.g.*, *Gratz v. Bollinger*, 353 F.Supp.2d 929, 944 (E.D. Mich. 2005) (noting that "the Court does not believe that § 1988 contemplates an award of fees related to an attorney's search for clients who will serve as model plaintiffs"); *Kelly v. Corrigan*, 890 F.Supp.2d

778, 786 (E.D. Mich. 2012) ("[t]he subject matter of the work done prior to agreeing to represent an actual client may be relevant to the litigation ultimately initiated but, relying on the 'paying client' factor from *Perdue*, it is not something that should be included in the attorney fee award under § 1988.").

For example, both NAACP and LWV Plaintiffs billed considerable amounts of time for tasks such as "review potential client background materials," "draft emails re potential clients," and even multiple meetings with organizations to drum up clients before the law had passed. As noted in the attached Exhibits A and B, Plaintiffs impermissibly billed time for vetting and recruiting potential plaintiffs. They also billed time prior to the inception of their engagement as counsel for Plaintiffs. Their fee award should be reduced accordingly.

### D. The Fee Entries Include Unnecessary Legal Activities.

The fee entries also include billing for unnecessary legal activities, as noted in Exhibits A and B. For example, both parties billed hours related to reviewing and drafting press releases for circulation. No activities of this nature were necessary to litigate the actual constitutional claims. *See, e.g.*, *Greater Los Angeles Council on Deafness v. Cmty. Television of S. Cal.*, 813 F.2d 217, 221 (9th Cir. 1987) (affirming denial of fees for time spent on publicity); *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995) (same); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994) ("The legitimate goals of litigation are almost always attained in the courtroom, not in the media.").

In more examples of unnecessary legal activity, Plaintiffs billed for finalizing an opposition letter to the legislature before the challenged bill was enacted, drafting an opposition letter for a Tennessee legislator against the bill, and sending an opposition letter on behalf of local partner organizations. Plaintiffs even billed for drafting a veto letter on behalf of their local partners.

Asking Tennessee taxpayers to foot the bill for Plaintiffs' political lobbying is unacceptable. These examples of unnecessary legal activity are common throughout the fee entries. *See* Exhibits A and B. Accordingly, any fee award should be reduced.

**E. Even if Plaintiffs are Considered Prevailing Parties, the Lodestar Should be Reduced by at Least 50%.**

Given the significant overstaffing, vague and unreviewable fee entries, billing for vetting potential plaintiffs and legal activity before representation, and unnecessary legal action, a significant fee reduction is warranted.

In fee-application disputes where problems such as the ones here require a reduction to the lodestar, courts have typically applied across-the-board reductions as a fair and expeditious solution to determining the sum total of reasonable fees. *See, e.g.*, *Auto Alliance Int'l, Inc. v. U.S. Customs Serv.,* 155 Fed. App'x. 226, 228 (6th Cir.2005) (citing *Coulter v. Tennessee,* 805 F.2d 146, 152 (6th Cir.1986) (holding that a district court may apply an across-the-board reduction based on "excessive or duplicative hours" and approving a 50% across-the-board reduction where "duplication of effort is a serious problem")).

At minimum, a 50% reduction to the lodestar is warranted here. The case has not been leanly staffed; Plaintiffs retained more than double the counsel necessary to litigate this matter fully. Counsel billed a great deal of time vetting potential plaintiffs and performing legal activities before actually having a plaintiff to represent. Plaintiffs underwent needless and excessive legal actions that were entirely irrelevant and unnecessary to the litigation. And many of their fee entries are so vague as to be unreviewable.

Given these pervasive issues, a 50% reduction is warranted and consistent with decisions of other district courts in this Circuit. *See, e.g.*, *Jaimes v. Toledo Metropolitan Housing Authority*, 715 F.Supp. 843, 848 (N.D. Ohio, 1989) (reducing excessive post-trial briefing and reply brief

hours by 50%); *Howe v. City of Akron*, 2016 WL 916701 (N.D. Ohio, 2016) (holding that a 50% reduction is not entirely unwarranted for excessive billing, overstaffing, and vague entries, but ordering a 35% reduction in hours coupled with a downward modification of hourly rate). Plaintiffs' fee requests should thus be reduced by half if they are even considered prevailing parties.

## CONCLUSION

For the reasons stated, Plaintiffs' motion for attorney's fees should be denied or, alternatively, be reduced by at least 50% of the lodestar.

Respectfully submitted,


HERBERT H. SLATERY III
Attorney General and Reporter

JANET M. KLEINFELTER
Deputy Attorney General

*/s/Alexander S. Rieger*
ALEXANDER S. RIEGER (BPR No. 029362)
KELLEY L. GROOVER (BPR No. 034738)
MATTHEW D. CLOUTIER (BPR No. 036710)
Assistant Attorneys General
Public Interest Division
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-2408
Alex.Rieger@ag.tn.gov

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing documents have been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

SOPHIA LIN LAKIN
THERESA J. LEE
DALE E. HO
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004

SARAH BRANNON
DAVID ROSBOROUGH
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, 6th Floor
Washington, DC 20005

THOMAS H. CASTELLI
MANDY FLOYD
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212

DANIELLE LANG
URJA MITTAL
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005

WILLIAM H. HARBISON
C. DEWEY BRANSTETTER
HUNTER C. BRANSTETTER
SHERRARD ROE VOIGHT & HARBISON
150 3rd Avenue South, Suite 1100
Nashville, TN 37301

MICHELLE KANTER COHEN
JON SHERMAN
FAIR ELECTIONS CENTER
1825 K Street NW, Suite 450
Washington, DC 20006

20

TAYLOR A. CATES
BURCH, PORTER, & JOHNSON, PLLC
130 N. Court Avenue
Memphis, TN 38103
(901) 524-5165
tacates@bpjlaw.com
wirvine@bpjlaw.com

JON GREENBAUM
EZRA D. ROSENBERG
JULIE HOUK
POOJA CHAUDHURI
LAWYERS'COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Ste. 900
Washington, D.C. 20005
(202) 662-8600
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommittee.org

IRA M. FEINBERG
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3509
ira.feinberg@hoganlovells.com

ALLISON M. RYAN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
(202) 637-5600
allison.holt@hoganlovells.com

YAEL BROMBERG
BROMBERG LAW LLC
The Andrew Goodman Foundation
10 Mountainview Road
Upper Saddle River, NJ 07458
(202) 995-1808
yaelbromberglaw@gmail.com

DANIEL AYOADE YOON, BPR No. 028798
2004 8th Ave S
Nashville, TN 37204
(615) 541-5141
danielayoadeyoon@gmail.com

on this 21st day of January, 2021.

/s/Alexander S. Rieger
ALEXANDER S. RIEGER
Assistant Attorney General
